Scanned Jan 20, 2010

## CCA Scanning Cover Sheet



2391415

CaseNumber: WR-71,030-02
EventDate: 11/30/2009
Style 1: Lopez, Artemio Gonzalo
Style 2:
Event code: WRIT RECEIVED

EventID: 2391415
Applicant first name: Artemio Gonzalo
Applicant last name: Lopez
Offense:
Offense code:
Trial court case number: CR-2377-05-A(1)
Trial court name: 92nd District Court
Trial court number: 321080092
County: Hidalgo
Trial court ID: 391
Event map code: FILING
Event description: Application for Writ of Habeas Corpus - 11.07
Event description code: WRIT
Remarks:

☐ Document Scanned                          ☐ Created or
                                            ☐ Appended

Scanned by          date        Image ID

Comment

Scanned Jan 20, 2010

APPLICANT: <u>ARTEMIO GONZALO LOPEZ</u>          APPLICATION NO. <u>WR-71,030-02</u>

## APPLICATION FOR 11.07 WRIT OF HABEAS CORPUS

### ACTION TAKEN

**DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT
WITHOUT HEARING.**

_____          1/20/10
**JUDGE**                                          **DATE**

Scanned Jan 20, 2010

71,030-02

# C L E R K ' S   R E C O R D
## VOL. 1 OF 1

---

Trial Court Cause No. CR-2377-05-A
Writ No. CR-2377-05-A(1)
CCA WRIT No. WR-

In the 92nd District Court
of Hidalgo County, Texas,
Honorable Ricardo P. Rodriguez, Judge Presiding

---

EX PARTE:
GONZALO ARTEMIO LOPEZ
APPLICANT

---

Appealed to the Court of Criminal Appeals of Texas
at Austin, Texas

---

| Attorney for Appellant (PRO-SE) | Attorney for Appellee |
|---|---|
| Gonzalo Artemio Lopez<br>TDCJ# 1349716<br>Telford Unit<br>3899 State Hwy. 98<br>New Boston, Texas 75770 | Hon. Rene Guerra<br>State Bar# 08578200<br>Hidalgo County Courthouse<br>100 N. Closner-3rd Floor<br>Edinburg, Texas 78539<br>Ph. (956) 318-2300 |

---

Delivered to the Court of Criminal Appeals of Texas,
at Austin, Texas on the 23rd day of November, 2009.

LAURA HINOJOSA
DISTRICT CLERK
HIDALGO COUNTY, TEXAS

BY: _____
Alexandra Gomez
Criminal Appeals Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 30 2009

Louise Pearson, Clerk

---

Appellate Court Cause No.
Filed in the Court of Criminal Appeals of Texas at
Austin, Texas on this __ day of _____, 2009.

LOUISE PEARSON, CLERK
BY: _____

Case 5:13-cv-00167   Document 15-8   Filed on 01/29/14 in TXSD   Page 4 of 79

Scanned Jan 20, 2010

CAPTION------------------------------------------------------------ 001

APPLICATION FOR A WRIT OF HABEAS CORPUS SEEKING RELIEF FROM FINAL

FELONY CONVICTION UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07- 002

STATE'S RESPONSE TO APPLICATION FOR A WRIT OF HABEAS CORPUS

SEEKING RELIEF FROM  FINAL FELONY CONVICTION UNDER CODE OF CRIMINAL

PROCEDURE, ARTICLE 11.07------------------------------------------- 037

WRIT DOCKET------------------------------------------------------- 075

REQUEST FOR COURT APPOINTED COUNSEL------------------------------- 078

MOTION FOR BENCH WARRANT------------------------------------------ 080

ORDER DESIGNATING ISSUES------------------------------------------ 081

LETTER TO COURT OF CRIMINAL APPEALS------------------------------- 084

RETURN RECEIPTS ON HON. MONICA GALVAN AND HON. ROGELIO GARZA------ 085

RETURN RECEIPTS ON COURT OF CRIMINAL APPEALS AND APPLICANT-------- 086

AFFIDAVIT OF COURT-APPOINTED TRIAL COUNSEL IN RESPONSE TO

APPLICANT'S ARTICLE 11.07 POST-CONVICTION WRIT OF HABEAS CORPUS--- 087

RECEIPT OF ACKNOWLEDGMENT FROM STATE------------------------------ 091

AFFIDAVIT OF COURT APPOINTED TRIAL COUNSEL IN RESPONSE TO

APPLICANT'S ARTICLE 11.07 POST-CONVICTION WRIT OF HABEAS CORPUS--- 092

SECOND APPLICATION FOR A WRIT OF HABEAS CORPUS SEEKING RELIEF FROM

FINAL FELONY CONVICTION UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE

11.07 FILED OCTOBER 27, 2009-------------------------------------- 094

RECEIPT OF ACKNOWLEDGMENT FROM STATE ON RECEIPT OF SECOND WRIT---- 105

Scanned Jan 20, 2010

CR-2377-05-A(1)          I     N     D     E     X          PAGE 2
                              VOL. 1 OF 1

APPLICANT'S RESPONSE TO AFFIDAVITS BY COURT APPOINTED COUNSELS WHO

RESPONDED TO COURT ORDER REGARDING APPLICANT'S 11.07 WRIT OF HABEAS

CORPUS------------------------------------------------------------ 106

COVER LETTER FROM STATE TO APPEALS CLERK------------------------- 111

STATE'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO APPLICATION FOR A

WRIT OF HABEAS CORPUS SEEKING RELIEF FROM FINAL FELONY CONVICTION

UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07------------------- 112

FINDINGS OF FACT, CONCLUSIONS OF LAW, RECOMMENDATION AND ORDER---- 132

CERTIFICATE------------------------------------------------------ 138

APPLICATION FOR POSTCONVICTION WRIT OF
HABEAS CORPUS
HIDALGO COUNTY TEXAS
92nd DISTRICT COURT

EX PARTE
GONZALO ARTEMIO LOPEZ
APPLICANT

TRIAL COURT WRIT NO. CR-2377-05-A(1)

CLERK'S SUMMARY SHEET

APPLICANTS NAME: GONZALO ARTEMIO LOPEZ

OFFENSE: CT. 1-CAPITAL MURDER-CT. 2-AGGRAVATED KIDNAPPING

CAUSE NO. CR-2377-05-A

SENTENCE: CT.1-LIFE TDCJ-CT.2 FIFTEEN (15) YEARS TDCJ

TYPE OF PLEA: NOT GUILTY

TRIAL DATE: FEBRUARY 17, 2006

JUDGE'S NAME:  NOE GONZALEZ

APPEAL NO(S):

CITATION TO OPINION:_____S.W.2d_____

HEARING HELD:

FINDINGS & CONCLUSIONS FILED: YES

RECOMMENDATION: DENIED

JUDGE'S NAME: RICARDO P. RODRIGUEZ

**Scanned Jan 20, 2010**

The State of Texas

County of Hidalgo

In the 92nd  District Court of Hidalgo County, Texas

the Honorable Ricardo P.  Rodriguez  , Judge Presiding, the

following proceedings were held and the following instructments and

other papers were filed in this cause, to wit:


Trial Court No. CR-2377-05-A(1)


EX PARTE:
GONZALO ARTEMIO LOPEZ
APPLICANT

IN THE 92nd DISTRICT COURT

OF

HIDALGO COUNTY, TEXAS


001

Scanned  Jan 20, 2010

Case No. CR-2377-05-A (H) FILED

(The Clerk of the convicting court will fill this line in.)

AT_____ O'CLOCK_____M

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS JUL 08 2009

**APPLICATION FOR A WRIT OF HABEAS CORPUS** PERLA HINOJOSA, CLERK
**SEEKING RELIEF FROM FINAL FELONY CONVICTION** District Courts, Hidalgo County
**UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07** By_____ Deputy

NAME:  Gonzalo Artemio Lopez

DATE OF BIRTH:  2-10-76
PLACE OF CONFINEMENT:  Telfort Unit TDCJ

TDCJ-CID NUMBER:  1349716  SID NUMBER:

(1)  This application concerns (check all that apply):

☒x  a conviction  ☐  parole

☐  a sentence  ☐  mandatory supervision

☐  time credit  ☐  out-of-time appeal or petition for
discretionary review

(2)  What district court entered the judgment of the conviction you want relief from?
(Include the court number and county.)

92nd District Court of Hidalgo County, Texas

(3)  What was the case number in the trial court?

CR-2377-05-A

(4)  What was the name of the trial judge?

Noe Gonzalez

Revised: March 5, 2007

1

Scanned  Jan 20, 2010

(5)   Were you represented by counsel?  If yes, provide the attorney's name:

Rogelio Garza, and Monica Marie Galvan

(6)   What was the date that the judgment was entered?

2-17-06

(7)   For what offense were you convicted and what was the sentence?

Capital murder, life in TDCJ

(8)   If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

Count One, capital muerder, life sentence

Count Two, aggravated kidnapping, 15 years sentence

(9)   What was the plea you entered? (Check one.)

☐ guilty-open plea          ☐ guilty-plea bargain
x☒ not guilty               ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

_____

_____

(10)  What kind of trial did you have?

☐ no jury                    ☐ jury for guilt and punishment

x☒ jury for guilt, judge for punishment

(11)  Did you testify at trial?  If yes, at what phase of the trial did you testify?

No

(12)  Did you appeal from the judgment of conviction?

x☒ yes                       ☐ no

2

Scanned  Jan 20, 2010

If you did appeal, answer the following questions:

    **(A)**    What court of appeals did you appeal to?  <u>13th Court of Appeals</u>

    **(B)**    What was the case number?  <u>13-06-341-CR</u>

    **(C)**    Were you represented by counsel on appeal? If yes, provide the attorney's name:

    <u>Oscar Rene Flores</u>

    **(D)**    What was the decision and the date of the decision? <u>Affirmed, 10-23-08</u>

**(13)**    Did you file a petition for discretionary review in the Court of Criminal Appeals?

    ☐ yes        x☒ no

If you did file a petition for discretionary review, answer the following questions:

    **(A)**    What was the case number?  _____

    **(B)**    What was the decision and the date of the decision? _____

**(14)**    Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

    ☐ yes        x☒ no

If you answered yes, answer the following questions:

    **(A)**    What was the Court of Criminal Appeals' writ number?_____

    **(B)**    What was the decision and the date of the decision? _____

    **(C)**    Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

    _____

    _____

3

Misc. Docket No. 06-103        Page 4 of 13        ATC 11.07 (Rev. 03-05-07)

004

**Scanned  Jan 20, 2010**

_____

_____

(15)    Do you currently have any petition or appeal pending in any other state or federal
court?

x☒ yes                              ☐ no

If you answered yes, please provide the name of the court and the case number:

341st District Court Webb,County, Tr.Crt.No. 2006-CR-452-D3(A)

(16)    If you are presenting a claim for time credit, have you exhausted your
administrative remedies by presenting your claim to the time credit resolution
system of the Texas Department of Criminal Justice? (This requirement applies to
any final felony conviction, including state jail felonies)

☐ yes                              ☐ no

If you answered yes, answer the following questions:

(A)     What date did you present the claim? _____

(B)     Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

_____

_____

_____

_____

(17)    Beginning on page 6, state _concisely_ every legal ground for your claim that you are
being unlawfully restrained, and then briefly summarize the facts supporting each
ground. You must present each ground on the form application and a brief
summary of the facts. _If your grounds and brief summary of the facts have not been
presented on the form application, the Court will not consider your grounds._

4

Scanned  Jan 20, 2010

If you have more than four grounds, use page 10 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence.

You may attach a memorandum of law to the form application if you want to present legal authorities, but the Court will *not* consider grounds for relief in a memorandum of law that were not stated on the form application.  If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

Scanned  Jan 20, 2010

**GROUND ONE:**

6th and 14th Amendment denial of a fair trial and an impartial trial judge at the pre-trial suppression hearing

**FACTS SUPPORTING GROUND ONE:**

The trial judge Fidencio Guerra engaged each of the State's witnesses with questions, participated in the presentation of evidence, and diluted the State's burden of proof. This happened at the suppression hearing on ~~10-12-05~~. And at the end of the hearing the Court made a ruling contrary to the dictates of Miranda.

(see attached Memorandum of Law)

6

**Scanned  Jan 20, 2010**

**GROUND TWO:**   6th Amendment, denial of effectives assistance

of counsel

**FACTS SUPPORTING GROUND TWO:**   At trial, when the State proffered

into evidence a witten confession, which was the main controversial

issue of the trial because the Texas Ranger who obtained it did

not Mirandize me before interrogating me, my attorney Rogelio

Garza failed to object to it and preserve it for appellate review.

Because my attorney faited to preserve this constitutional violation,

the 13th Court of Appeals refused to consider my number-one point

of error on appeal because it was not preserved for review.

see attached Memorandum of Law)

7

Scanned  Jan 20, 2010

**GROUND THREE:**    6th Amendment, denial of effective assistance

of counsel

**FACTS SUPPORTING GROUND THREE:**    My attorney never investigated

me or questioned me for details about how the confession that was

used to convict me was obtained. The confession was the main issue

of the whole case, and my attorney never questioned me about it?

My attorneys Rogelio Garza and Monica Galvan never even once went

to visit me in the county jail to discuss the case with me. They

totally failed to investigate me. (see attached Memorandum of Law)

8

Scanned · Jan 20, 2010

**GROUND FOUR:**   6th Amendment, denial of effective assistance

of counsel

**FACTS SUPPORTING GROUND FOUR:**   At the pretrial suppression hearing

to suppress the written confession; I wanted to testify on my

behalf but my attorney Rogelio Garza gave me wrong legal advice;

that if I testified at the hearing it would later be used against

me at trial. This false advice frightened me into not testifying.'

(see attached Memorandum of Law)

9

010

Scanned Jan 20, 2010

**GROUND:**   Conviction obtained by a violation of the 5th Amendment

privilege against self-incrimination

**FACTS SUPPORTING GROUND:**   Texas Ranger Victor Escalon, Jr. initiated

a custodial interrogation for 8 hours without advising me of my

Miranda rights. Ranger Escalon testified that he did not warn

me of my rights until after he had obtained the confession, until

after the interrogation was over; and this confession was used

to convict me.        (see attached Memorandum of Law)

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

10

**Scanned  Jan 20, 2010**

## VERIFICATION

(Complete <u>EITHER</u> the "oath before a notary public" <u>OR</u> the "inmate's declaration.")

### OATH BEFORE NOTARY PUBLIC

STATE OF TEXAS, COUNTY OF _____.

_____, BEING FIRST DULY SWORN, UNDER OATH, SAYS:

THAT HE/SHE IS THE APPLICANT IN THIS ACTION AND KNOWS THE CONTENT OF

THE ABOVE APPLICATION AND ACCORDING TO APPLICANT'S BELIEF, THE FACTS

STATED IN THE APPLICATION ARE TRUE.

_____
Signature of Applicant

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____.

_____
Signature of Notary Public

### INMATE'S DECLARATION

I, _Gonzalo Artemio Lopez_, BEING PRESENTLY
INCARCERATED IN _Telford Unit TDCJ_, DECLARE UNDER
PENALTY OF PERJURY THAT, ACCORDING TO MY BELIEF, THE FACTS STATED IN
THE APPLICATION ARE TRUE AND CORRECT.

SIGNED ON _6-25-09_.

_Gonzalo G. Lopez_
Signature of Applicant

11

Scanned Jan 20, 2010

_____
          Signature of Attorney

Attorney Name: _____

SBOT Number: _____

Address:       _____

               _____

               _____

Telephone:     _____

12

Misc. Docket No. 06-103          Page 13 of 13          ATC 11.07 (Rev. 03-05-07)

013

Scanned Jan 20, 2010

**FILED**

IN THE COURT OF CRIMINAL APPEALS _____ O'CLOCK \_\_\_\_\_ M

OF TEXAS

JUL 08 2009

LAURA HINOJOSA, CLERK

EX PARTE GONZALO ARTEMIO LOPEZ, Appellant Courts, Hidalgo County

By _____

Memorandum in support of 11.07 Habeas Corpus for

Tr.Cause No.CR-2377-05-A in the 92nd District Court

of Hidalgo County, Texas

## Introduction

In deciding my Writ of Habeas Corpus, the Court is presented with five straightforward issues:

**14th Amendment Due Process:** Due Process guarantees a fair trial before an impartial judge. The judge in my case repeatedly questioned the State's witnesses. He left his neutral fact-finder, passive-listener role and took on an adversarial stance, he helped the State with the presentation of evidence, and he relieved the State's burden of proof. Is it a "structural error" if the judge relieves the State of its burden of proof?

**6th Amendment Right to Counsel.** The right to counsel is the right to effective assistance of counsel. At trial, the State proffered into evidence a confession taken in violation of Miranda v. Arizona. This confession was the most controversial and damning evidence presented against me. And my attorney intentionally failed to object to it and preserve it for appellate review. Does effective counsel deliberately fail to object and preserve fundamental errors presented against his client?

**6th Amendment Right to Counsel:** Effective counsel has a duty to make a reasonable amount of pre-trial investigation. My attorney failed to have any kind of meaningful client-lawyer privileged discussion with me before the suppression hearing or trial. In fact, he never visited me in jail. Is it reasonable for counsel to eschew investigative discussions with his client?

**6th Amendment Right to Counsel:** Counsel has a duty to bear such skill and knowledge as will render the trial a reliable adversarial testing process. My attorney gave me erroneous advice, that if I testified at the suppression hearing it would later be used agaist me at trial. This false advice frightened me into not testifying at the hearing. Was my attorney deficient in giving me wrong advice?

1

014

Scanned Jan 20, 2010

● **5th Amendment Right to Silence.** Miranda requires that law enforcement warm suspects of their constitutional rights before initiating custodial interrogation. Texas Ranger Victor Escalon admitted that he did not Mirandize me before he started his 8 hour custodial interrogation that produced a confession. But that after he had obtained the confession on paper and the interrogation was over, he then read me the warnings right before I signed the statement. Is this a violation of the 5th Amendment Miranda safeguards?

### Summary of Facts

On March 23,2005, Jose Guadalupe Ramirez was taken from his home by two men.(17RR83,91). Gonzalo Artemio Lopez was arrested for an unrelated event in Starr County on April 23,2005. Lopez was taken into custody of the Sheriff of Starr County and interrogated by law-enforcement officers while in custody. During this interrogation, Lopez confessed to the kidnapping and murder of Jose Guadalupe Ramirez and directed law-enforcement officers to the location of his body.

When arrested in Starr County, Lopez was Mirandized by Romeo Ramirez, Jr. of the Starr County Sheriff's Department. During that interview, Lopez exercised his rights, terminated the interview and demanded to speak with federal officials. (16RR177). FBI Special Agent Chritopher Lee again Mirandized Lopez because Lopez had initiated contact with FBI. (16RR194,201). After some discussion regarding federal matters, it became apparent to Agent Lee that Lopez had charges pending in Hidalgo County. Agent Lee advised Lopez of these charges and ceased questioning because Agent Lee knew that Texas Ranger Victor Escalon was en route to speak with Lopez. (16RR195; 6RR59,60). Later, we see Lopez being interrogated by Ranger Escalon. By his own admission, Ranger Escalon did not Mirandize Lopez before interrogating him. Ranger Escalon interrogated Lopez for 8 hours before generating a "written statement of accused". (17RR2,3). During the Ranger's interrogation,Lopez was never told that he was being charged with capital murder. (17RR5,6).

Lopez was indicted by a Hidalgo County Grand jury on a two-

2

015

Scanned Jan 20, 2010

count indictment alleging Capital Murder and Aggravated kidnapping.
(CR2-4).  There was a suppression hearing on the admissability
of the written confession that was denied. At the suppression
hearing,the judge Fidencio Guerra asked the State's witnesses
numerous question, helped the State with the presentation of
evidence, and denied the motion to suppress the confession
even though the Ranger who obtained it did not Mirandize Lopez
before interrogating him. (6,7RR).  Lopez plead not guilty
to both counts and selected to have a trial by jury.  The jury
found Lopez guilty of both counts, and the Court assest punishment
to life for capital murder and 15 years for aggravated kidnapping.
(CR272-276).  Lopez appealed the judgment of the trial court
but the 13th Court of Appeals affirmed the judgement. (see
Memorandum Opinion of the 13th Court of Appeals).

### 5th, 6th, and 14th Amendment Violation

I assert that my 14th Amendment right to due process and
my 6th Amendment right to a fair trial were violated by the
trial judge propounding questions upon the State's witnesses
at the pre-trial suppression hearing.  Having the discretion
to rule for or against me at the suppression hearing, Judge
Guerra departed from his "neutral fact-finder, passive-listener"
role and participated in the presentation of evidence to make
his own record of facts needed to support his eventual erroneous
ruling.  This erroneous ruling violated yet another of my con-
stitutioal rights, the 5th Amendment. Also, Judge Guerra's questioning
diluted the State's burden of proof.

### Standard of Review

I'm entitled to a "fair hearing" and a reliable determination
of the voluntariness of a confession prior to its use at trial.
Jackson v. Denno, 378 U.S. 368,378(1964).

At this suppression hearing, the government bears the burden
of showing that the defendant was informed of his Miranda rights
and that his waiver of those rights and any resulting confession
were voluntaty. U.S. v. Collins, 40 F.3d 95.98(5th Cir.1994).

016

Scanned Jan 20, 2010

A confession may be deemed "involuntary" under three different theories: (1) failure to comply with Article 38.22, (2) failure to comply with the dictates of Miranda v. Arizona, or (3) a confession in violation of due process or due course of law because it was not freely given (e.g. coercion, improper influence, incompetency). Wolfe v. State, 917 S.W.2nd 270,282 (Tex.Crim. App.1996).

At the hearing, the trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding may not be disturbed on appeal absent a clear abuse of discretion. Alvarado v. State, 853 S.W.2nd 17,23(Tex.Crim. App.1993).

And, a "structural error" is a defect affecting the framework within which the trial proceeds, for example, "lack of an impartial trial judge."Johnson v. U.S., 117 S.Ct. 1544,1549-50(1997).

### Applicable Facts and Argument

Throughout the pre-trial suppression hearing recorded in volumes 6&7 of the Reporter's Record, the trial judge made many inquiries of the State's witnesses. Through his questioning, the trial judge established that my rights had been read and waived, even before the State finished its presentation.

For instance, when the State called its first witness, Romeo Ramirez, Jr. (6RR7-27), the trial judge was the one who established that I had been Mirandized by Romeo Ramirez, FBI Agent Chris Lee, and Texas Ranger Victor Escalon. What follows is a colloquy from the trial judge and Starr County Sheriff Investigator Romeo Ramirez:

> The Court: And when you were talking with the defendant, did you ever Mirandize him?
>
> A. Yes, sir, I did.
>
> The Court: When was that?
>
> A. At the time when I began interviewing him.
>
> The Court: Did you Mirandize him orally or did you have him sign anything?
>
> A. I had him sign. (6RR16).

4

017

Scanned  Jan 20, 2010

The Court: More or less what time did the FBI guy show
up?

A. Around been [sic] 6:00 and 7:00 in the morning.

The Court: And when he showed up, did he Mirandized [sic]
him before he spoke to him?

A. He did so. He Mirandized him with the same form I
had and he initialed and signed the same form I had.

The Court: So there will be two sets of initials? One
of you and one of the FBI on the same form?

A. On the same form, yes, sir, with the different times.
(6RR18).


The Court: Let me ask you this. Before the ranger spoke
to him, did the ranger Mirandize him?

A. Yes, sir.

The Court: In your presence?

A. Yes, sir.

The Court: And did the ranger have his own form?

A. At the time he verbally Mirandized him.

The Court: But you were present when he Mirandized him?

A. Yes, verbally. (6RR23-24).


The Court: You Mirandized him and the defendant talked
to you?

A. Yes, sir.

The Court: The FBI guy came in Mirandized him and the
defendant talked to the FBI?

A. Yes, sir.

The Court: And the ranger came and Mirandized him and
the defendant talked to the ranger?

A. Yes, sir.

The Court: All Right. (6RR24).

     In fact, throughout the whole testimony of Romeo Ramirez,
not once did the prosecution inquire or pose any questions
regarding if my rights had been read or waived. It was the
State's burden to show that I was informed of the Miranda rights

5

018

Scanned  Jan 20, 2010

and that I waived them. U.S. v. Collins, 40 F.3d at98. This
burden belonged to the State but the trial judge in my case
departed from his "neutral fact-finder, passive-listener" role
to relieve the State of its burden. The judge's dual role as
judge and prosecutor violated my right to due process and a
fair trial. How can a defendant receive a "fair hearing" if
the judge is doing the prosecutor's job?

As we move on to the next State's witness Jose Roberto Molina
(6RR27-46), we again see the trial judge engaging the witness
with questions about Miranda rights and waivers even before
the State gets to that part of its presentation.

> The Court: Who was the statement given to?
> A. To Ranger Escalon.
> The Court: Did you witness the reading of the Miranda
> rights?
> A. Yes, sir.
> The Court: Did you witness him waiving those rights or
> giving them up?
> A. No, sir. (6RR32-34).

Why would the judge want to interfere the State's presentation
and implicitly relieve its burden?

Some of the questions the judge puts forth to the next witness
are leading, prosecutorial in nature, and it is obvious that
he has drew conclusions that were not supported by the testimony
of the witness prior to the judge's leading questions. Here
we have the testimony of FBI Agent Chris Lee. (6RR46-78):

> Q. By State: Did you give the required cautions to this
> defendant before you began speaking with him?
> A. Yes, sir.
> Q. In what form did you do that? Was it in writing or
> was it just orally?
> A. It was written, sir.
> The Court: Mr.Lee, when you say you gave him written
> admonishments, do you mean you read it off something
> that was written or you read him the rights and he initialed
> that he understood them or what?

6

019

Scanned Jan 20, 2010

A. Yes, sir. It's written on paper there on one of the
standard forms there the Sheriff's Department has. I
sat there with Mr. Lopez. We sat there and we went over
each one of them and he initialed that he understood
that. (6RR49).

Here the trial judge was expounding the State's line of
questioning. With the Judge's question, the waiver of rights
was established. It was the State's burden to establish the
waiver of rights, but just like with Romeo Ramirez the trial
judge relieved the State of its burden.

In fact, the State never established that I waived my rights
to Romeo Ramirez of Agent Chris Lee. With Romeo Ramirez the
State never posed any questions about Miranda rights, and with
Agent Chris Lee the State only asked if Agent Lee had cautioned
me. But the State never asked if I had waived those rights
or if I understood them.

But what follows is the trial court taking on the same pre-
judiced approch as the State does when they try to lead the
witness:

Q. By State: Did he make -- before Ranger Escalon arrived,
did he make any indication that he wanted to to talk about
a case of murder in Hidalgo County?

A. Yes, sir.

Q. What was your response when he told you that he wished
to talk with you about a murder?

A. The way that happened there, sir, was I was asking
him because he was wanting to see whether or not there
was something we could do....And I asked him as far as,
I said, there's a warrant here from Weslaco that has
drawn some attention here. I said, would you have any idea
what that's about? And at that point he tells me, he
says, well, it's about a kidnapping. And I says [sic],
well, I have a breif idea of what this is because I knew
from other investigators telling me why ranger was coming.
And I says[sic], is there anything special about this
that's going to be a hurdle that we are not going to

7

Scanned  Jan 20, 2010

be able to get over? And he says, well some dude is kid-
napped and somebody is killed. (6RR59).

Even though the State was trying to lead the witness into
saying that I wanted and wished to talk about the Hidalgo murder,
Agent Lee corrected the State and said, "The way that happened
there, sir, was I [Agent Lee] was asking him";"I [Agent Lee] said,
there's a warrant from Weslaco", and that the only thing I
told him was that "some dude is kidnapped and somebody is killed".
Nowhere did he testify that I advised him that I had information
about a kidnapping and murder; but rather, that he asked me
about it.

And yet, the trial court has come to the conclusion that
the State wished and wanted.

> The Court: After the defendant advised you that he had
> information about a kidnapping and murder of Weslaco...(6RR62)
> The Court: When you were speaking with the defendant
> and Agent Lee, he told you he had information involing
> a kidnapping and murder, right? (6RR74).

This last question is really rubbing it in the witness on
what The Court wants the witness to say; it was more of a command
than a question. Presumably, the judge was to serve as a neutral
fact-finder in this adversarial system of justice -- in this
trial, this hearing. But the trial court's questions and commands
indicate that he was not neutral, but rather, that he assumed
an adversarial stance. And in doing so, he deprived me of a
fair hearing before an impartial judge.

> The Court: All right. While you were there would it be
> fair to say that you heard him give information about
> a kidnapping and a murder?
> A. Yes, sir.
> The Court: Did you hear him give any information with
> reference to his involvement in a kidnapping or a murder?
> A. Yes, sir.
> The Court: Did you hear him give any information about
> his participation in an aggravated kidnapping (or) murder?

8

021

Scanned  Jan 20, 2010

A. Yes, sir.

The Court: And did you hear him admit and say that he did the kidnapping and murder?

A. Yes, sir. (6RR74,75).

The trial judge in the instant case participater in the presentation of evidence and the elicitation of testimony that had not yet been presented. Drake v. State, 143 S.W. 1157 at1150 (1912)(Cautioning trial judges about engaging in this pracrice and developing evidence which had not therefore been elicited in the case, so as to prevent reversals of future cases.)

Under the aegis of Article 38.05, V.A.C?C.P. and its predecessors dating back to 1879, the Court rather consistently adhered to the position that "it is not any part of the duty of a judge to take in hand the examination or cross:examination of witnesses". Harrell v. State, 39 Tex.Cr.R. 204, 45 S.W. 581,586(1898). Judge Henderson explained the rational for the Court:

> These functions belong to the respective counsel on either side, and it is presumed they know how to discharge their duties properly....It may be the province of the court sometimes to inquire of a witness as to some statement made by him for a clearer understanding on part of the court, but it can never pertain to him to interfere in the case, and take the examination of a witness out of the hands of counsel whose business it is to conduct the examination. As to a matter of this character, the court should studiously abstain from interfering....We cannot commend the action of the judge in his attempt to interfere with the province of counsel for the state in the examination of witnesses, and, if it appeared to us that such interference on his part was calculated to prejudice the rights of the appellant, we would not hesitate to reverse the case. Such interference on the part of a judge can never be called for, and especially in this case, where both the state and the defendant were represented by able counsel. id, 45 S.W. at586-587.

Case Law dictates that there is a "structual error" when there is a "lack of an impartial trial judge". Johnson v. U.S., 117 S.Ct. 1544 at1549-50(1997). According to Black's Law Dictionary Second Pocket Edition, the definition of impartial is: unbiased, disinterested. So the lack of a disinterested

022

Scanned Jan 20, 2010

trial judge is a structual error. The Record reflects that
in the instant case there was a "lack of an impartial--dis-
inerested--trial judge". The trial judge's taking the examination
of the witnesses out of the hands of State's counsel and relieving
the State of its burden was unwarranted. My constitutional
right to due process and a fair trial were violated by the
trial judge propounding questions upon the State's witnesse
at the suppression hearing, and this error is not subject to
harm anaylysis. Reversal is required. The judgment of the trial
court should be reversed and this matter remanded for a new
suppression hearing.

### The Ruling at The Suppression Hearing
### Was Contrary To Well Established Law

Furthermore, the trial court's ruling at the suppression
hearing was contrary to the dictates of <u>Miranda v. Arizona</u>,
384 U.S. 436 (1966). At the suppression hearing, Texas Ranger
Victor Escalon testified the he interrogated me for 8 hours
without Mirandizing me (7RR39,43), but that after he obtained
the confession on paper and right before he had me sign, he
did read them to me. (7RR41,42).

> The Court: You stated earlier that you did not Mirandize
> him, but according to what I have heard, before he actually
> signed any statement, you did, in fact Mirandize him;
> isn't that correct?
> A. by Ranger Escalon: At the end I read him the statement
> from top to bottom.
> The Court: Before he signed?
> A. Yes, sir.
> The Court: And part of the statement was the Miranda
> warnings stating that he knew them and understood them.
> A. Yes, sir. (7RR41,42).

<u>Miranda</u>, however, indisputably requires a law enforcement
agent to give the appropriate legal warnings before any questioning
or "discussion interview", not merely prior to signing a written
statement after all the custodial interrogation is complete.

10

023

Miranda v. Arizona, 384 U.S. at445,457,465,468,474,478(1966).

The Court ruled "that the defendant was, in fact, Mirandized and gave the statement to the ranger voluntarilly without duress and any threats." (7RR61). But this ruling was contrary to the dictates of Miranda. (see argument for Ineffective Counsel for Failing to Object and Preserve Error).

The "Findings of Fact and Conclusions of Law" regarding voluntary statement of accused that was adopted by the Trial Court was written by the State, who distorted the facts about the testimony of Romeo Ramirez and Agent Chris Lee in findings of fact #4 and #5. (1Clerk's Record 71-74);(7RR61). The record does not support that Romeo Ramirez or Chris Lee conducted "custodial interrogation" of defendant.

Miranda defines custodial interrogation as "questioning initiated by law enforcement officers". 384 U.S.at444. So what happened between Agent Lee and me was not custodial interrogation, because it was not initiated by law enforcement; but rather, an interview that I initiated with him (6RR50), and that ended when he found out about the Weslaco kidnapping and murder and that Ranger Escalon was en route. (6RR59,60). As to Romeo Ramirez, well, he testified that I refused to speak with him. (6RR13). So there was never any custodial interrogation from Agent Lee or Romeo Ramirez.

It took Ranger Escalon 2 hours to arrive. (7RR20-22). Agent Lee testified that while Ranger Escalon was en route, Agent Lee and me only talked about things in general. (6RR56,57). When Ranger Escalon arrived, he initiated questioning specifically concerning the Weslaco kidnapping and murder. (7RR25); this is what Miranda defines as a "custodial interrogation", which requires Miranda warnings before questioning starts.

So when Ranger Escalon initiated his custodial interrogation, it became mandatory upon him to "Mirandize" me before questioning me. And in fact, they did tell him to re-read me my rights, but he refused. (16RR225).

So the trial court, apart from diluting the State's burden of proof, made an erroneous ruling contrary to the dictates

11

024

Scanned  Jan 20, 2010

of Miranda in admitting the written confession into evidence.
This error violated my 5th Amendment right guarateed by the
U.S. Constitution.

And concidering the lack of evidence against me, the admission
of the confession was not a harmless error. The lead inverstigator
Robert DeLaCerda testified at trial that there was no physical
evidence against me. (16RR153-158). Texas Ranger Escalon admitted
that without the complained of statement, the only evidence
the State would have had is that seized at Aida Regalado's
house, which proved nothing. (17RR8). The State heavily relied
on the written confession in their closing arguments at the
guilt/innocence phase of the trial. (17RR126-136;144-153).

Reversal is required here since the failure to suppress
the statement must have substantially contributed to the jury's
verdict. Chapman v. California, 386 U.S. 18,24(1967)(under
constitutional error analysis, reviewing court must reverse
unless it is "able to declare a belief that the error was harmless
beyond a reasonable doubt").

### Prayer

So I pray that the judgment of the trial court be reversed,
the written confession suppressed, and that this case be remanded
for a New Trial with orders accordingly.

### Ineffective Assistance of Counsel
### Failure to Preserve Error

I assert that my trial counsel rendered ineffective assistance
of counsel when he intentionally failed to object and preserve
for appellate review the most controversial and damning evidence
presented against me at trial; that is, the written confession
obtained in direct violation of the 5th Amendment Miranda safeguards.

### Standard of Review

Under Strickland, I must establish that my attorney "acted
objectively unreasonable in failing to object and that I was

12

025

Scanned  Jan 20, 2010

prejudiced by that failure to object." Vuong v. Scott, 62 F.3d 674,684 (5th Cir) cert. denied 516 U.S. 1005 (1995).

While it is true that a failure to object properly or to preserve fundamental errors at trial may constitute ineffective assistance,... the standard under Strickland ultimately deverts attention from legal error to assessing the probability that the outcome of the proceeding would have been different. Smith v. Black, 904 F.2d 950,980 (5th Cir. 1990).

Hence, to establish prejudice in this context, I must show that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different. Williams v. Tayler, 529 U.S. 362, 391 (2000).

A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668 at694 (1984).

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the prejudice showing required by Strickland is not always fastened to the forum in which counsel performs dificiently: even when it is "trial" counsel who represents a client ineffectively in the "trial court". the relevent focus in assessing prejudice may be the client's appeal. see Davis V. Secretary for Dept. of Corr., 341 F.3d 1310, 1315 (11th Cir.2003).


Applicable Facts and Argument

Throughout the trial, the State heavily relied on a written confession to convict me. This confession was obtained in violation of the 5th Amendment Miranda Safeguards. When the State sought admission of the confession into evidence, the defence counsel stated he had "No objection, judge." (16RR213; 19RRSX87). Because Mr. Garza, my attorney, affirmatively stated he Had no objection to the introduction of the confession, the 13th Court of Appeals held that the Miranda complaint was not preserved for review and overruled my strongest point of error without consideration. (see 13th Court of Appeals Memorandum Opinion pg. 4,5).

It was objectively unreasonable in the part of Mr. Garza to not preserve the most controversial evidence for appeal.

13

026

While efficatious in raising the Miranda violation at trial,
nonetheless, he failed to preserve it for appeal. By Mr. Garza's
statement at trial that he had "No objection, judge" (16RR213)
to the introduction of the confession, I was prejudiced on
appeal because the 13th Court of Appeals refused to consider
the Miranda violation. (see 13th Ct.App. Memorandum Opnion
pg 4,5).

And there is a strong "reasonable probability" that the
outcome of the appeal would have been different had Mr. Garza
preserved the Miranda violation. The record reflects that the
Texas Ranger who obtained the confession interrogated me for
8 hours without Mirandizing me.

> Q.by Mr.Garza: 8 P.M. So for 8 hours you had him in you
> control?
> A.by Ranger Escalon: Yes, sir.
> Q. And you've already testified that you never read the
> Miranda Warnings to Mr.Lopez before you took the confession?
> A. No, I did not. (17RR2,3).

In Miranda, the U.S. Supreme Court was unequivocal in holding
an accused, held in custody, must be given the required warnings
"prior to questioning". A failure to do so results in the for-
feiture of the use of any statement obtaind during that interrogation
by the prosecution during its case-in-cheif. Miranda v. Arizona,
384 U.S. at 445,457,467-68,479.

My adversaries will argue and stress that I had been previously
Mirandized by Romeo Ramirez and Agent Chris Lee. But facts
are stubborn things; and whatever may be my adversaries wishes,
their inclinations, or the dictates of their passions, they
cannot alter the state of facts and evidence. And the facts
from the record reflect that those previous Miranda warnings
were for different interviews that had nothing to do with this
case. Moreover, the record shows that those two previous interviews
ended and that there was a time-gap between each of the two
different interviews and the one interrogation.

Romeo Ramirez testified that when he warned me at 5:20a.m.
I marked the "no" box provided on the waiver form (19RRSX85),

027

Scanned  Jan 20, 2010

and that I refused to talk to him and specifically requested
to speak with an FBI agent(16RR171), and that he didn't ask
me any further questions at that point. (16RR174). The interview
with Romeo Ramirez began and immediately ended at 5:20a.m.(16RR171,172).
So there was a time-gap from 5:20a.m.,when the first interview
ended, to 8:43a.m. when FBI Agent Chris Lee arrived.

    Agent Lee read me the warnings off the same form Romeo Ramirez
uséd (16RR188,194) besause he wanted to make sure I was aware
of those rights (16RR201), and because I had initially refused
to speak with state officials. (16RR194).

    While Agent Lee and me were speaking of only federal matters,
he brought to my attention that I had a Hidalgo case and warrant
from Weslaco. At this point, he stops asking me questions--
the interview ends--because he knows that Ranger Escalon is
en route. (16RR195). Here there is another time-gap between
my interview with Agent Lee and the police initiated custodial
interrogation of Ranger Escalon, because it took Ranger Escalon
about two hours to arrive. (7RR20,22).

    And when Ranger Escalon did arrive, both Romeo Ramirez and
Agent Lee told him, "Victor re-read him his rights" (16RR225),
but since it was Ranger Escalon's understanding that I had
been warned by Romeo Ramirez and Agent Lee, Ranger Victor Escalon
said, "Well, I wasn't going to read them again." (16RR225).
Instead, without warning me, he just initiated the custodial
interrogation for 8 hours until he obtained the confession.
(17RR2,3)

    My adversaries might argue that I was in a countinuous custody
between Agent Lee's interview and Ranger Escalon's interrogation;
but what do they expect, for me to be released from custody?
I've been in a continuous custody since that day; so that's
not a valid argument. But what the facts of the record do reflect
(and facts are stubborn) is that they were two distinct interviews
that required Miranda warning at the outset of each interview.

    In fact, what happened between Agent Lee and me was not
a custodial interrogation that requires Miranda warnings at
the ouset. It was an interview that I initiated with him regarding

federal matters. But when Ranger Escalon traveled for 2 hours for the specific purpose to interrogate me about the Weslaco kidnapping and murder, it became mandatory upon him to Mirandize me before initiating his custodial interrogation. (see pg11 of this memorandum for more about "custodial interrogation").

With these facs on record, there is a "reasonable probability" that, but for counsel's failure to object and preserve error at trial, the result of the proceeding--appeal--would have been different.

### Prayer

Wherefore, premises considered, I pray that this Honorable Court reverse the judgment of the trial court, suppress the confession, and remand this case for a New Trial with counsel who will object to and preserve errors. Alternatively and only in the alternative, I pray this Honorable Court reverse the judgment of the 13th Court of Appeals and remand this matter for an out-of-time appeal to review the Miranda violation.

### Ineffective Assistance of Counsel
### Failure to Investigate and Prepare for Suppression Hearing, Gave Me Erroneous Advice

I assert that my attorneys rendered ineffective assistance because of their total lack to investigate me, visit me, or cunsult with me, which resulted in the failure to obtain a detailed version of events from my point of view that would have prepared them for the suppression hearing. Also, Mr.Garza gave me erroneous advice during the suppression hearing; that if I testified, it would later be used against me at trial. This advice frightened me into not testifying about the details of how I got coersed.

### Standard of Review

The defence counsel shoulders the primary responsibility to inform the defendant of his right to testify, including

16

029

Scanned Jan 20, 2010

the fact that the ultimate decision belongs to the defendant. Johnson v. State, 169 S.W.3d 227 at235 (Tex.Crim.App.2005)

Ignorance of well defined general laws, statutes, and legal propositions is not excusable and such ignorance may lead to a finding of constitutionally deficient assistance of counsel. Ex parte Chandler, 182 S.W.3d 350 at358 (Tex.Crim.App.2005).

An attorney has a duty to independently investigate the the charges against his client. And, there must be a "reasonable amount" of pre-trial investigation. Bower v. Quarterman, 497 F.3d 495 at467 (5th Cir. 2007).

And to prove that my 6th Amendment right was violated by counsel, I must meet the Strickland two prong test: (1) whether counsel's representation fell below the objective standard of reasonableness; and (2) whether there is a reasonable probability that, if counsel had not acted unprofessionally, the outcome of the proceeding would have been different. Bower v. Quarterman, 497 F.3d at466.


                    Applicable Facts and Argument

My attorneys never went to go visit me while I was at the county jail awaiting trial. The Hidalgo County Jail has everything computerized and logs in on computers every visit an inmate receives, legal or personal. So if an evidentery hearing is held, and the people in charge of the inmate recors at the county jail are summoned, the evidence will show that Mr.Rogelio Garza and Ms.Monica Galvan never went to visit me.

This lack of visitation limited our conversations to only a few minutes at pre-trial hearings at the courthouse. And at that, it was always in front of other inmates who were also at court. So there was never a meaningful client-lawyer privileged conversation between my lawyers and me.

There was only two instances that I was alone with Mr.Garza, and that totalled to about 8 minutes. The first instance happened at a pre-trial hearing in the Criminal Auxiliary Court B..Mr.Garza and me went into the very small jury-room to talk about the circumstances surrounding how the confession was obtained.

Scanned Jan 20, 2010

About 3 minutes into our conversation, a lady lawyer also goes into the jury-room with her inmate client. Mr.Garza confronted her and asked her to please leave the room because we were talking about very sensitive matters, but she just looked at him without saying a word, ignored him, and proceeded to talk with her client in front of us. After the lady lawyer intruded, not even a minute passed when the guards put in the same small jury-room 5 other inmates. So that was the end of our first client-lawyer privileged conversation.

Our second privileged conversation happened on the first day of the suppression hearing. Mr.Garza went to visit me while I was waiting in the basement courthouse holding cells. And we only talked about 5 minutes before the guards ended our conversation because it was time to go up to the courtroom. And that conversation wasn't even about my case.

Mr.Garza was telling me a story about how he hated the Texas Rangers, because when he was a little boy living in Rio Grande City, the Texas Rangers went to his house because they wanted to kill his father. His story only lasted for about 5 minute before the guards came. He didn't even finish telling me his story nor did I get to begin mine on how the Texas Ranger obtained the confession.

So that was the end of our alone-time discussions before the suppression hearing started. And this lack of alone-time discussions rendered Mr.Garza totally unfamiliar with my side of the story about how the confession was obtained, and unprepared for the suppression hearing.

Case law dictates that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary". In any event, the Court will not reverse a conviction unless the consequence of the failure to investigate "is the only viable defence available to the accused is not advanced." McFarland v. State, 928 S.W.2d 482 at501 (Tex.Crim.App. 1996).

In my case, the only viable defense was my side of the story, which would have prepared Mr.Garza to make strategic choices

031

Scanned  Jan 20, 2010

in structuring his questions to the State's witnesses. If Mr.Garza
would have been armed with my side of the story, he would have
been prepared to elicit favorable testimony to advance the
defense, facts that were never brought up because they were
never asked.

For instance, the implicit fact that the interview between
FBI Agent Lee and me ended before Ranger Escalon arrived. (6RR59,
60; 16RR195). If my lawyer would have investigated me, he would
have known the details about what happened after Agent Lee's
interview ended, and he would have made a stratigic choice
in questions to pursue what happened after it ended. What the
testimony would have revealed is that I was turned over to the
county jailer and locked-up in a jail cell for about an hour,
untill right before the ranger arrived. This would have explicitly
shown that it was not one continuous interview that turned
into an interrogation when ranger arrived. And at the suppression
hearing closing arguments, the State would have been precluded
from arguing that it was one continuous interrogation with no
breaks in between.

If Mr.Garza would have been prepared to advance the defense
with this one fact, there is a reasonable probability that
the out come of the proceeding would have been different. So
I was prejudiced by my attorney's total failure to investigate
me.If my attorney would have investigated me, he would have
been prepared with facts to ask questions like: What time did
I get arrested? About 2:30a.m. What happened when I got arrested?
They pepper-sprayed me. What did Ranger Escalon tell me when
I told him that I hadn't slept for awhile? (7RR23). That I
could sleep after he was done with me.

If my attorney would have investigated me, he would have
known all these little facts that add up to advance the defense.
From 2:30a.m. to 8:11p.m., thats about 18 hours without no
sleep (and that's not counting that I was bar hopping all day
and night before I got arrested), with pepper-spray on my face,
sitting on the same chair, handcuffed, and denied sleep until
after the ranger finished with me. All this points to coercion.

032

Scanned  Jan 20, 2010

And at the suppression hearing, I tried to talk to my lawyer
and explain these details to him, but he shushed me because
he wanted to hear what the State's witnesses were saying.

In fact, the record reflects that 8 days before the first
day of the suppression hearing that Mr.Garza did not know how
the confession came about.

> The Court: Now, your asking that the confession be suppressed,
> and I have no problem with that. You're entitled to know
> how the confession went down.
>
> Mr. Garza: That's what I want, judge. (5RR9).
>
> Mr. Garza: Judge, my understanding is that he was arrested
> in Starr County. The ranger got there, took the confession
> and maybe Weslaco P.D. was there. I don't know who else
> was there. (5RR10).

All Mr.Garza had to do was ask me, and he would have found
out how the confession went down, and who was there.

Mr.Garza's failure to conduct an adequate pre-trial investigation
had a clear negative impact on the outcome of the trial. Because
if he would have investigated me and prepared for the suppression
hearing, the confession would have been suppressed and the
outcome of the trial would have been different. And as Mr.Garza
put it,"...If an attorney doesn't do a good job, that person
can go to prison." (14RR83). Well, my attorney didn't do a
good job investigating, and I ended up in prison.

So I assert that my 6th Amendment right to effective counsel
was violated by Mr.Garza's complete failure to investigate
me, the only, none adverse, eye-witness to the circumstances
surrounding the taking of the confession. In Bryant, the 5th
Cir. Court held that an attorney's failure to investigate was
unreasonable under Strickland when the attorney failed to interview
known eye-witnesses to the crime and limited his trial investigation
to discussions with the defendant and examination of the prosecutor's
file. Bower v. Quarterman, 497 F.3d at 470.

In my case, my attorney faide to interview a know eye-witness
--me--and niglected discussions with the defendant--me--and
I don't know if he examined the prosecutor's file.

20

033

Scanned Jan 20, 2010

This begs the question of whether my counsel's representation fell below the objective standard of reasonableness for neglecting to interveiw me to prepare for the suppression hearing and trial; and if counsel had not acted unprofessionally, there is a reasonable probability that the outcome of the proceesing would have been different.

As I have pointed out, my counsel's lack of preparation rendered him ineffective to properly question the State's witnesses with some kind of srtategic goal. It was objectively unreasonable for my attorney to eschew visiting me. And there is a strong reasonable probability that the out-come of the proceeding would have been different had my attorney been prepared.

### Prayer

So I pray that this Honorable Court reverse the judgment of the trial court, and remand this case for a New Trial or a New Suppression Hearing with an effective counce.

### My Counsel Gave Me Erroneous Advice

Also, at the suppression hearing, when the State had finished with its witnesses, I told my lawyer that I wanted to take the stand and testify. But, he told me that if I took the stand, anything I said could be used against me a trial, so that it was best for me not testify at all. So my lawyers advice frightened me into not testifying at the suppression hearing.

This rendered the suppression hearing a totally unfair, one-sided, undisputed story with no adversarial testing process. Counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. Strickland v. Washington, 466 U.S. 668 at688 (1984). And my lawyer didn't do any of this.

Instead, he gave me erroneous advice. The U.S. Supreme Court held back in 1968 that "a defendant's testimony at the Jackson v. Denno suppression hearing cannot later be used against him at trial". Simmons v. U.S., 390 U.S. 377, 88 S.Ct.967 (1968). My attorney's "ignorance of well defined laws, and legal propositions is not excusable". Ex parte Chandler,182 S.W.3d at358.

034

Scanned   Jan 20, 2010

This erroneous advice farther prejudiced my nonexistent defense. If I would have testified, there is a reasonable probability that the outcome of the proceedure would have been different, because I would have testified how I got coerced. And since some of the officers lied: Romeo Ramirez lied when he testified that the ranger vebally Mirandized me in his presence. (6RR23-24). The ranger testified that he did not mirandize me at all. The ranger testified that Romeo Ramirz told him that I wanted to cooperate. (7RR22). Romeo Ramirez testified that I refused to talk to him and requested to talk only with FBI., there is a reasonable probability that the judge would have found my testimony more credible than theirs; so the outcome would have beed different.

### Prayer

I pray that this Honorable Court reverse the judgment of the trial court and remand this case for a New Suppression Hearing with an attorney who will give me correct legal advice.

### CONCLUSION

The outcome of this Writ rests on four legal doctrines:
- 14th Amendment Due Process, right to an impartial trial judge;
- 6th Amendment right to a fair trial;
- 6th Amendment right to effective assistance of counsel;and
- 5th Amendment Miranda right.

U.S. Supreme Court case-law, The 5th Cir. Court and The Texas Court of Criminal Appeals interpretation of that case-law applies squarely to this case--and in my favor. The Court should therefore grant this Writ Of Habeas Corpus, reverse the judgment of the trial court, suppress the confession, and remand this case for a New Trial.

Date 6-25-09

Respectfully Submitted

*Gonzalo A. Lopez*

#1349716 Telford Unit
22 3899 State Highway #98 S.
New Boston Tx. 75570

035

Scanned  Jan 20, 2010

# VERIFICATION

(Complete <u>EITHER</u> the "oath before a notary public" <u>OR</u> the "inmate's declaration.")

## OATH BEFORE NOTARY PUBLIC

STATE OF TEXAS, COUNTY OF _____.

_____, BEING FIRST DULY SWORN, UNDER OATH, SAYS:

THAT HE/SHE IS THE APPLICANT IN THIS ACTION AND KNOWS THE CONTENT OF

THE ABOVE APPLICATION AND ACCORDING TO APPLICANT'S BELIEF, THE FACTS

STATED IN THE APPLICATION ARE TRUE.

_____
Signature of Applicant

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____.

_____
Signature of Notary Public

## INMATE'S DECLARATION

I, _Gonzalo Artemio Lopez_ ,  BEING  PRESENTLY

INCARCERATED IN _Telford Unit  T DCJ_ , DECLARE UNDER

PENALTY OF PERJURY THAT, ACCORDING TO MY BELIEF, THE FACTS STATED IN

THE ~~APPLICATION~~ ARE TRUE AND CORRECT.
   _Memorandum_

SIGNED ON _6-25-09_ .

_[signature]_
Signature of Applicant

✱ 23

~~Misc. Docket No. 06-103~~          ~~Page 12 of 13~~          ATC 11.07 (Rev. 03-05-07)

036

Scanned  Jan 20, 2010

FILED

AT_____O'CLOCK_____M

Cause No. CR-2377-05-A(1)

AUG 2 7 2009

LAURA HINOJOSA, CLERK
By_____

| Ex parte | § | In the District Court |
| | § | |
| Gonzalo Artemio Lopez, | § | 92nd Judicial District of |
| | § | |
| Applicant | § | Hidalgo County, Texas |

## STATE'S RESPONSE TO APPLICATION FOR A WRIT OF HABEAS CORPUS SEEKING RELIEF FROM FINAL FELONY CONVICTION UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the State of Texas, by and through the Criminal District Attorney of Hidalgo County, and files this Response to Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction under Code of Criminal Procedure, Article 11.07, and would show that, pursuant to Section 3 of Article 11.07 of the Texas Code of Criminal Procedure, there are controverted, previously unresolved facts material to the legality of Applicant's confinement which should be resolved.

### NATURE OF THE CASE

On February 17, 2006, Applicant pled not guilty to one count of Capital Murder and one count of Aggravated Kidnapping, as charged in the indictment. Applicant was convicted by a jury and was sentenced to imprisonment in the Institutional Division of the Texas Department of Criminal Justice for a term of life for Capital Murder and to a concurrent term of fifteen years for Aggravated Kidnapping. The judgment of the trial court was affirmed on appeal.

On July 8, 2009, Applicant filed his first application for writ of habeas corpus alleging: (1) denial of an impartial judge at the suppression hearing; (2) ineffective assistance of counsel; and (3) violation of his Fifth Amendment privilege against self-incrimination.

## STATEMENT OF FACTS

The records of the case below reflect the following:

1.    On April 23, 2005, at 8:11 p.m., Applicant signed a written statement detailing his involvement in the kidnapping and murder of Jose Guadalupe Ramirez. [Exhibit 1 hereto, certified copy of the Voluntary Statement of Accused, file-stamped October 12, 2005].

2.    Applicant was indicted by a grand jury on one count of Capital Murder, as a repeat offender, and one count of Aggravated Kidnapping, as a repeat offender.  [Exhibit 2 hereto, certified copy of indictment of Gonzalo Artemio Lopez in CR-2377-05-A, file-stamped July 21, 2005].

3.    On October 12, 2005, this Honorable Court conducted a pre-trial hearing on Applicant's Motion to Suppress Evidence and Statement.  Subsequently on October 18, 2005, this Honorable Court entered Findings of Fact and Conclusions of Law determining that Applicant's statement was voluntarily made.  [Exhibit 3 hereto, certified copy of the trial court's Findings of Fact and Conclusions of Law Regarding Voluntary Statement of Accused, signed October 20, 2005].

4.    On February 17, 2006, Applicant was convicted by a jury on both counts and was sentenced to respective terms of life imprisonment and fifteen years confinement in the Institutional Division of the Texas Department of Criminal Justice, to run concurrently. [Exhibits 4 and 5 hereto, certified copies of the Judgments of Conviction by Jury in both counts of CR-2377-05-A].

5.    On October 23, 2008, the Court of Appeals for the Thirteenth Supreme Judicial District affirmed the judgment of the trial court.  [Exhibit 6 hereto, certified copy of the Memorandum Opinion by Justice Vela in Cause Co. 13-06-00341-CR].

038

Scanned Jan 20, 2010

6.  On March 3, 2009, mandate issued to the 92nd District Court of Hidalgo County. [Exhibit 7 hereto, certified copy of the Mandate in Cause No. 13-06-00341-CR, file-stamped March 4, 2009].

7.  On July 8, 2009, Applicant filed his first application for writ of habeas corpus (hereinafter cited as "AA") under the Texas Code of Criminal Procedure, Article 11.07, alleging: (1) denial of an impartial judge at the suppression hearing; (2) ineffective assistance of counsel; and (3) violation of Fifth Amendment privilege against self-incrimination.[1]

8.  The State was served with the Application on August 12, 2009, and its response is therefore due no later than August 27, 2009. *See* TEX. CODE CRIM. PROC. art. 11.07 § 3(b) (2009).

9.  This Court must determine whether there are controverted, previously unresolved facts material to the legality of Applicant's confinement no later than September 18, 2009. *See id.* § 3(c).

<u>ARGUMENT</u>

Among the grounds for relief listed in the application for writ of habeas corpus, Applicant raises three claims of ineffective assistance of counsel: (1) failure to preserve error, (2) failure to investigate, and (3) erroneous legal advice.

I.  *Failure to Preserve Error*

Applicant's first claim concerns counsel's failure to object to the introduction of the Statement of Accused into evidence at trial. AA at 7. Prior to trial, a suppression hearing was held to determine whether Applicant had been given *Miranda* warnings before making a written confession. The trial court denied the motion to suppress and determined that the statement was

---

[1] Applicant's first and third grounds for relief do not contain unresolved facts material to the legality if Applicant's confinement which must be addressed by acquiring additional information in the form of affidavits or records. Consequently, these grounds will be addressed in the State's Supplemental Response.

Scanned  Jan 20, 2010

made voluntarily.  [*See* Exhibit 3].  At trial, when the State sought to admit the written confession into evidence, defense counsel affirmatively stated that he had "no objection."  [*See* Exhibit 6, p.4].  Applicant complains that error was not preserved as a result of counsel's statement. AA at 7.  Counsel's affirmative assertion during trial that he had "no objection" to the admission of the written statement of accused into evidence effectively waived any error in the admission of the statement.  *See Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); *Dean v. State*, 749 S.W.2d 80, 82-83 (Tex. Crim. App. 1988).

To successfully maintain a claim of ineffective assistance of counsel, an applicant must first overcome the presumption that an attorney's decision to follow a certain course of action "might be considered sound trial strategy." *Jackson v. State*, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  Prior to analyzing whether counsel's failure to preserve error for review constitutes deficient representation, counsel should be afforded an opportunity to explain whether this conduct was based on legitimate trial strategy.

II.      *Failure to Investigate*

Applicant also alleges that counsel was ineffective for failing to investigate how the written confession was obtained.  AA at 8.  Applicant alleges that counsel never visited him in jail to discuss the case with him.  *Id.*  Counsel has a duty to make a proper investigation and to prepare for trial.  *Ex parte Dunham*, 650 S.W.2d 825, 827 (Tex. Crim. App. 1983).  However, any claim that trial counsel failed to adequately investigate must illustrate that the presentation of missing evidence would have been beneficial to the applicant's case.  *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004).  In his supporting Memorandum, Applicant alleges that an investigation would have revealed that he was locked in his jail cell for about an hour after

4

040

Scanned Jan 20, 2010

speaking with FBI Agent Lee but prior to being interrogated by Texas Ranger Escalon. *See* Applicant's Memorandum at 15. Applicant has alleged facts which, if true, could have been beneficial at the suppression hearing in demonstrating the lack of a continuous interrogation.[2] To fully resolve Applicant's claim, input is needed from counsel detailing the extent of their investigation into the facts surrounding how the written statement of accused was obtained.

III.    *Erroneous Legal Advice*

In his third claim of ineffective assistance of counsel, Applicant claims that counsel erroneously advised him not to testify at the pre-trial suppression hearing because his testimony could be used against him later at trial. AA at 9. In *Simmons v. United States*, 390 U.S. 377 (1968), the Supreme Court determined that a defendant can testify in support of a motion to suppress evidence on Fourth Amendment grounds and his testimony cannot be admitted against him at trial unless he makes no objection. *Simmons*, 390 U.S. at 394. A defendant cannot be made to give up one constitutional right in order to assert another. *See Crosson v. State*, 36 S.W.3d 642, 645 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Thus, Applicant could have testified at the hearing in support of the motion to suppress the confession without waiving his privilege against self-incrimination at trial. *Id.* Defense counsel should be afforded the opportunity to respond to this allegation and to indicate whether Applicant was advised not to testify at the suppression hearing.

As such, the State prays that the Court find:

- that there exist previously unresolved facts material to the legality of Applicant's confinement, to wit: (1) whether counsel's failure to preserve error was based on

---

[2] The record reflects that Applicant was given *Miranda* warnings by Agent Lee prior to interrogation about separate federal matters. (6 R.R. 49, 53). However, when Applicant was subsequently questioned by Ranger Escalon concerning the kidnapping and murder in the primary case, he was not re-admonished until after being interrogated, but prior to signing the written statement. (7 R.R. 32-33, 41-42).

5

Scanned Jan 20, 2010

legitimate trial strategy, (2) the extent of counsel's investigation into how the written statement of accused was obtained, and (3) whether counsel advised Applicant that his testimony at the suppression hearing could be used against him at trial, and if so, whether counsel's advice was based on legitimate trial strategy;

• that these issues may be resolved by having the Honorable Rogelio Garza and the Honorable Monica Galvan furnish documentary evidence, through affidavit and/or official records, to the Court stating: (1) whether counsel's affirmative statement that he had "no objection" to the introduction of the written statement of accused into evidence was based on legitimate trial strategy; (2) the extent of counsel's investigation into how the written statement of accused was obtained; and (3) whether counsel advised Applicant that his testimony at the suppression hearing could be used against him at trial, and if so, the strategic reasoning behind counsel's advice; and

• that the Court order the Honorable Rogelio Garza and the Honorable Monica Galvan to provide such documentary evidence within 30 days of receipt of said order.

Respectfully submitted,

RENE GUERRA
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY TEXAS

Heather A. Hudson, Assistant
Criminal District Attorney
State Bar No. 24058991

6

042

Office of Criminal District Attorney
Hidalgo County Courthouse
100 N. Closner Blvd.
Edinburg, Texas 78539
Telephone:      (956) 318-2300 ext. 808
Telefax:        (956) 380-0407

043

Scanned  Jan 20, 2010

## Certificate of Service

I hereby certify that a copy of the "State's Response to Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under Code of Criminal Procedure Article 11.07" was served on Gonzalo Artemio Lopez, TDCJ Number 1349716, Telford Unit, 3899 State Highway 98, New Boston, Texas 75770, on August 27, 2009, via certified mail, return receipt requested, delivery restricted.

_Heather A. Hudson_
Heather A. Hudson

044

Scanned Jan 20 2010

EXHIBIT

CR-23 TFOS-A          SX1

## VOLUNTARY STATEMENT OF ACCUSED

STATE OF TEXAS

COUNTY OF STARR

FILED

AT 12:20 O'CLOCK P.M

OCT 12 2005

OMAR GUERRERO, CLERK
District Court, Starr County
By ____ Deputy

ADMITTED IT

My name is Gonzaldo Artemio Lopez. I am 29 years old and my date of birth is 02-10-1976. I currently reside at 139 South Texas Blvd in Weslaco, Texas. The person to whom I am giving this statement has been identified to me as Victor Escalon, Jr, a peace officer duly commissioned by the State of Texas. 10-12-05

12:20 PM

This statement is being given voluntarily, without fear of duress or threat, and without promise of leniency. Prior to this statement being made, I was advised that I am suspected of or charged with the offense of Aggravated Kidnapping/Murder/Attempted Capital Murder.

Further, I was advised of the following:

1.  I have the right to remain silent and not say anything;

2.  Any oral or written statement I make may be used as evidence against me in court;

3.  I have the right to have a lawyer present to advise me prior to and during any questioning by peace officers or attorneys representing the state;

4.  If I am too poor to hire a lawyer, then the court will appoint a lawyer for me free of charge and he can advise me before and during any questioning;

5.  I can decide to talk with anyone and I can stop talking at any time I want;

6.  The above rights are continuing rights, which can be urged by me at any stage of the proceedings;

And, prior to and during the making of this statement I knowingly, intelligently, and voluntarily waive those rights set forth in this document. Having knowingly, intelligently and voluntarily waived those rights, I do hereby make the following free and voluntary statement:

On 05-17-2004, I was traveling to Laredo from Pharr, Texas. I was with Luis Carlos Mares aka "WICHO", and Lucia Oneida Ramirez. We were enroute to kill someone in Laredo. That individual was only identified to me by a photograph that was given to us by a man named Carlos also known as Pisa with the Mileno drug cartel from Nuevo Laredo, Mexico. The hit was drug related and I remember that the man owned two restaurants and a bar in Laredo. While we were enroute to Laredo on US 83 a police officer tried too stop us. Wicho was driving the car we were in. I was sitting in the front seat and Ramirez was riding in the back. Wicho pulled over and when the cop exited his vehicle, Wicho sped away. Wicho told Ramirez to grab the suitcase in the trunk that had the mini-14 and the silencer. I also noticed that Wicho had a handgun on his person the whole time. We traveled for about a minute or two and I decided that I wanted to throw the guns that Wicho had outside the window. I grabbed the suitcase from Ramirez and opened it in order to throw the stuff out. Wicho stated to me to give him the suitcase with the mini-14 and that he would throw the gun out. I then saw Wicho load the Mini-14. I heard Wicho say that he was going to shoot the cop. I then told Wicho not to shoot the cop. I then asked Wicho to stop so the girl and I could get off. Wicho stated no because he had very little gas. The cop then tried to pass Wicho and Wicho shot at the officer as he passed. I remember

Page 1 of 3

045

Scanned  Jan 20, 2010

thinking that Wicho just ruined my life. I remember thinking how and the hell am I going to get out of this. Wicho kept on shooting at the officer and told me to hold the steering column. I remember telling him "no man just keep on driving". Wicho became upset and told me to hold it. I feared if I did not do what he said he would shoot and kill me. We kept on going until we ran out of gas. I also remember that Wicho shot a Greyhound bus while were passing it. The gas in the car ran out and Wicho pulled over to the left of the highway. I jumped out of the car and fell. I got back up and ran into the brush. At the same time the officer was shooting at us. At that point, I started running for my life. I ran and walked for several hours dodging the helicopter. When the morning came I called Willie on my cell phone and asked him that I needed him to pick me up in Laredo. Early that morning Willie came and picked me up. As were taking off all the cops were coming to continue the search. Willie took me to a house in Laredo where I stayed for two days. I then came to Rio Grande City and stayed there for one day. I was then moved to Mexico by the Mexican Mafia in an attempt to hide from the cops. I stayed in Mexico till the shooting that happened in Laredo cooled down. I later returned to Weslaco. The Mexican Mafia then sent me to Progresso Mexico because they did not want me over here in Texas. In Progresso I worked with La Mana drug Cartel.

A week before 03-23-2005, I spoke with Juan Lerma who is associated with La Mana drug Cartel from Tamaulipas, Mexico. Juan told me that this dude identified as Lupe Ramirez from Weslaco owed the drug cartel forty thousand dollars. Lupe stated that the drug cartel had fronted Lupe a large amount of Marijuana and Cocaine. Juan stated that Lupe never paid him for the drugs. Juan told me to pick him up and collect the forty thousand dollars from Lupe. Antonio who works with Juan showed me a picture of how Lupe looked like. Juan also gave me the address to where Lupe resided at.

On 03-22-2005, I conducted surveillance at Lupe's residence and I verified that Lupe lived there. The next day on 03-23-2005, Rick and I went to Lupe's residence. Rick knocked on the door and a girl opened the door. Rick and I walked in and Lupe's wife stated that Lupe was in the bedroom asleep. Rick and I followed Lupe's wife and went into Lupe's bedroom. Rick and I grabbed Lupe and wrapped Lupe with duct tape. Rick and I put Lupe in Rick's car. Rick was driving a brown Buick with no tint. We then took Lupe to my mom's residence located at mile thirteen and a half in Weslaco Texas. We had Lupe in the car parked next to my mom's residence. In the car we demanded that Lupe pay the money he owed Juan Lerma. Lupe called his brother and wife. As a result of Lupe calling his family Lupe presented three trucks, eight thousand dollars and thirty pounds of weed to cover the forty thousand dollars Lupe owed. The truck, money and drugs were parked at the Home Depot in Weslaco. We left Lupe hog tied in an outside room of my mom's residence. Rick and I took off to Home Depot and picked up the two vehicles that were left by Lupe's family. Rick and I then took the two vehicles to Progresso, Mexico. Rick crossed the vehicles and turned them over to Juan. I did not cross into Mexico because I knew I was wanted in the United States. I called Aida Guajardo to pick Rick and I up at the Progresso Bridge. Aida then took us back to Home Depot and dropped Rick and I off. Aida left and went back to her house. Rick and I then picked up the third vehicle that Lupe's family had left behind. Rick and I took the Truck to the Progresso Bridge. Rick crossed the truck and I stayed in the United States. The three trucks were identified as one being a Ford pick up truck (Harley Davidson edition); the second truck was identified as a Chevrolet pick up truck and the third truck was a white truck. The eight thousand dollars and the thirty pounds of marijuana were in the Harley Davidson Truck. Rick turned over the trucks to Lerma except for the marijuana and money which I kept. I gave Rick one thousand five hundred dollars cash and ten pounds of Marijuana for assisting me. Rick and I then traveled back to my mom's house where Lupe was tied up. I was going to let him go but then Juan called and told me to kill him. I told Juan

Scanned  Jan 20, 2010

Statement of                                                                                                          Page 3 of 3

no, because Lupe had paid up.  Juan stated no and told me that I better do it.  I thought to myself if I don't kill Lupe, Juan and his people would kill me.   Rick and I then put Lupe in Rick's trunk and traveled towards Mercedes for a good amount of time.   We ended up in a monte and dug a hole.  All this time Lupe was in the trunk of Rick's car.  We finished digging hole and we put Lupe in the hole.  Once Lupe was in the hole Rick was going to shoot Lupe, but then I hit Lupe with a pick over the head.  The pick went inside Lupe's head and killed him.   Rick and I then buried Lupe.


_Viitu, Escular G._
Witness

_Josel M/ina_
Witness


_Gonzalo Lopez_
Signature of Accused

Date:  04-23-2005 Time:  8:11 p.m.


DATE _8-26-09_
A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By _____ Deputy

047

Scanned- Jan 20, 2010

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

COUNT ONE

THE GRAND JURY, for the County of Hidalgo, State of Texas, duly selected, impaneled, sworn, charged and organized as such at the July Term A.D. 2005 of the _____370_____ Judicial District Court for said County, upon their oaths present in and to said court at said term that GONZALO ARTEMIO LOPEZ hereinafter styled Defendant, on or about the 23rd day of March A.D., 2005, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally cause the death of an individual, namely, Jose Guadalupe Ramirez, by striking him with a pick, and the defendant was then and there in the course of committing and attempting to commit the offense of kidnapping of Jose Guadalupe Ramirez;

AND THE GRAND JURORS AFORESAID, upon their said oaths, in said court, at said term do further present that GONZALO ARTEMIO LOPEZ, on or about the 23rd day of March A.D., 2005, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally cause the death of an individual, namely, Jose Guadalupe Ramirez, by striking him with a pick axe, and the defendant was then and there in the course of committing and attempting to commit the offense of kidnapping of Jose Guadalupe Ramirez;

AND THE GRAND JURORS AFORESAID, upon their said oaths, in said court, at said term do further present that GONZALO ARTEMIO LOPEZ, on or about the 23rd day of March A.D., 2005, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally cause the death of an individual, namely, Jose Guadalupe Ramirez, by striking him with an object unknown to the Grand Jurors, and the defendant was then and there in the course of committing and attempting to commit the offense of kidnapping of Jose Guadalupe Ramirez;

DATE 8-26-09

A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By _____ Deputy

EXHIBIT
2

SCANNED

048

Scanned Jan 20, 2010

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense, on the 6th day of November, 1996 in cause number CR-0134-95-A in the 92nd District Court of Hidalgo County, Texas, the defendant was convicted of the felony offense of Aggravated Assault;

PRIOR

COUNT TWO

THE GRAND JURY, for the County of Hidalgo, State of Texas, duly selected, impaneled, sworn, charged and organized as such at the July Term A.D. 2005 of the _____370_____ Judicial District Court for said County, upon their oaths present in and to said court at said term that GONZALO ARTEMIO LOPEZ hereinafter styled Defendant, on or about the 23rd day of March A.D., 2005, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there, with the intent to hold Jose Guadalupe Ramirez for ransom, intentionally or knowingly abduct Jose Guadalupe Ramirez by restricting the movements of said Jose Guadalupe Ramirez without his consent so as to interfere substantially with his liberty, by confining him, with the intent to prevent his liberation, by using and threatening to use deadly force, namely, a firearm;

AND THE GRAND JURORS AFORESAID, upon their said oaths, in said court, at said term do further present that GONZALO ARTEMIO LOPEZ, on or about the 23rd day of March A.D., 2005, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally or knowingly abduct Jose Guadalupe Ramirez by restricting the movements of said Jose Guadalupe Ramirez without his consent so as to interfere substantially with his liberty, by confining him, with the intent to prevent his liberation, by secreting or holding him in a place where he was not likely to be found, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said offense;

SCANNED

049

Scanned Jan 20, 2010

# DEF. IN JAIL

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense, on the 6th day of November, 1996 in cause number CR-0134-95-A in the 92nd District Court of Hidalgo County, Texas, the defendant was convicted of the felony offense of Aggravated Assault;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

2377-05-A

FOREPERSON OF THE GRAND JURY

No. CR-_____   Arrest Date:   04/26/05 Agency:   WESLACO   POLICE DEPARTMENT
By: IDA Case No.   05-10422 Bond: $750000.00 $100000.00
State of Texas vs. GONZALO ARTEMIO LOPEZ
Charge          CAPITAL MURDER-REPEATER-CT.1
ppAGGRAVATED KIDNAPPING-REPEATER-CT.2
186137

CR-2381-94-A
CR-0134-95-A
CR-2017-95-A
CR-0386-96-A

**FILED**

AT 3:53 O'CLOCK_____ M

JUL 21 2005

OMAR GUERRERO, CLERK
District Courts, Hidalgo County

By_____ Deputy

FI

AT_____

JI

OMAR GU...
District C...

By_____

SCANNED

050

Cause No. CR-2377-05-A

| | | |
|---|---|---|
| The State of Texas | § | In the 92nd District Court |
| v. | § | of |
| Gonzalo Artemio Lopez | § | Hidalgo County, Texas |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### REGARDING
### VOLUNTARY STATEMENT OF ACCUSED

Came on to be heard Defendant's Motion to Suppress Evidence and Statement on the 12th day of October, 2005; the said hearing being concluded on the 18th day of October, 2005. The Court, having considered evidence and argument of counsel, makes the following findings of fact and conclusions of law pursuant to Texas Code Crim. Proc. Art. 38.22 sec. 6.

### I. Appearances

1. Defendant, Gonzalo Artemio Lopez, appeared personally and with his attorneys, Rogelio Garza and Monica Galvan; and announced ready.

2. The State of Texas appeared by and through the Criminal District Attorney of Hidalgo County, Texas; by Assistant Criminal District Attorney Glenn Devino; and announced ready.

### II. Findings of Fact

The Court makes the following findings of fact after considering evidence and argument presented unto the Court:

1. The Court FINDS that the defendant was taken into the custody of the Sheriff of Starr County, Texas, on charges unrelated to the instant case, on or about the 23rd day of April, 2005; and was interrogated by law-enforcement officers while in custody.

2. The Court FINDS that after such interrogation the defendant made a Voluntary Statement of Accused; and that defendant directed officers to the location at which the victim in this case was buried.

3. The Court FINDS that the defendant has been in custody of law enforcement continuously from time of arrest on or about April 23, 2005, to the date of this hearing.

4. The Court FINDS that Investigator Romeo Ramirez, a duly appointed Deputy of the Sheriff of Starr County, Texas, conducted custodial interrogation of Defendant. The



EXHIBIT

3

DATE 8-26-09

A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By _____ Deputy

051

Scanned Jan 20, 2010

Court further FINDS that Romeo Ramirez admonished defendant as to his rights pursuant to the Constitution of the United States and of Texas; and as to his rights pursuant to the laws of the state of Texas, before initiating such custodial interrogation of the defendant.

5. The Court FINDS that Special Agent Chris Lee, a duly appointed Special Agent of the Federal Bureau of Investigation, conducted custodial interrogation of Defendant following the interrogation of the defendant by Romeo Ramirez. The Court further FINDS that Chris Lee admonished defendant as to his rights pursuant to the Constitution of the United States and of Texas; and as to his rights pursuant to the laws of the state of Texas, before initiating such custodial interrogation of the defendant.

6. The Court FINDS that Ranger Victor Escalon, a duly appointed officer of the Texas Rangers division of the Texas Department of Public Safety, conducted custodial interrogation of Defendant following the interrogation of the defendant by Chris Lee. The Court further FINDS that the defendant had been admonished as to his rights pursuant to the Constitution of the United States and of Texas; and as to his rights pursuant to the laws of the state of Texas, by Romeo Ramirez and by Chris Lee before Victor Escalon initiated such custodial interrogation. The Court further FINDS that Victor Escalon confirmed that the defendant had been so warned and admonished before initiating such custodial interrogation.

7. The Court FINDS that the defendant was fully and adequately advised as to the following rights, as provided under the Constitution of the United States, the Constitution of the state of Texas, and the laws of Texas, before making any statement:

> (1) The right to remain silent and not make any statement at all; and that any statement he makes may be used against him at his trial;

> (2) That any statement he makes may be used as evidence against him in court;

> (3) The right to have a lawyer present to advise him prior to and during any questioning;

> (4) That if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

Scanned Jan 20, 2010

(5) The right to terminate the interview at any time

8. The Court FINDS that defendant was afforded opportunity during said custodial interrogation to eat, drink, and use restroom facilities.

9. The Court FINDS that the defendant was not physically coerced or threatened during said interrogation.

10. The Court FINDS that defendant was fully advised as to the foregoing rights before he signed his Voluntary Statement of Accused.

11. The Court FINDS that the defendant understood the above and foregoing rights.

12. The Court FINDS that defendant waived his rights knowingly, intelligently, freely and voluntarily.

13. The Court FINDS that defendant at no time during this custodial interrogation invoked any of the above and foregoing rights.

14. The Court FINDS that the making by defendant of his Voluntary Statement of Accused was without compulsion or persuasion.

15. The Court FINDS that the defendant's election to show officers the location of such burial was made freely, voluntarily, without compulsion or persuasion, knowingly and intelligently.

III. Conclusion of Law

The Court, having made the above and foregoing Findings, does hereby conclude that the defendant's statement was made voluntarily.

The Court, having made the above and foregoing Findings, does hereby further conclude that the defendant's election to show officers the location of the burial of the victim in this case was made voluntarily.

IT IS SO FOUND, CONCLUDED AND DECREED.

Signed this the 20 day of October , 2005.

OCT 24 2005

DATE

A true copy I certify
OMAR GUERRERO
District Clerk, Hidalgo County, Texas
By _____ Deputy

Hon. Fidencio Guerra
Judge Presiding, Aux. Crim. Ct. B
for the 92nd District Court, Hidalgo County

Scanned Jan 20, 2010

Case No. CR-2377-05-A (COUNT ONE)
TRN 904 035 9296 A001

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE 92ND JUDICIAL |
| v.**GONZALO ARTEMIO** | § | DISTRICT COURT OF |
| **LOPEZ,** | § | HIDALGO COUNTY, TEXAS |
| **DEFENDANT** | | |
| SID: TX 05241648 | | |

## JUDGMENT OF CONVICTION BY JURY &
## LIFE SENTENCE TO THE INSTITUTIONAL DIVISION
## OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE

| | |
|---|---|
| DATE OF JUDGMENT: | **FEBRUARY 17, 2006** |
| JUDGE PRESIDING: | **NOE GONZALEZ** |
| ATTORNEY FOR THE STATE: | **ROXANNA SALINAS AND GLENN DEVINO** |
| OFFENSE CODE: | **09990020** |
| ATTORNEY FOR THE DEFENDANT: | **MONICA GALVAN AND ROGELIO GARZA** |
| OFFENSE: | **CAPITAL MURDER** |
| DATE OF OFFENSE: | **MARCH 23, 2005** |
| DEGREE OF OFFENSE: | **CAPITAL FELONY** |
| STATUTE FOR OFFENSE: | **19.03** |
| APPLICABLE PUNISHMENT RANGE: | **LIFE OR DEATH** |
| (Including enhancements if any): | |
| CHARGING INSTRUMENT: | **INDICTMENT** |
| PLEA TO OFFENSE: | **NOT GUILTY** |
| JURY VERDICT FOR OFFENSE: | **GUILTY** |
| PUNISHMENT IMPOSED BY COURT: | **LIFE IMPRISONMENT** |
| PLACE OF IMPRISONMENT | **INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE** |
| FINE: | **NONE** |
| RESTITUTION: | **NONE** |
| CREDIT FOR TIME SPENT IN JAIL: | **297 DAYS** |
| DISMISS: | **NONE** |
| CONSIDER: | **NONE** |
| CONCURRENT WITH: | **CR-2377-05-A COUNT TWO** |
| PLEA TO ENHANCEMENT | **NONE** |
| PARAGRAPH(S): | |
| FINDING TO ENHANCEMENT: | **NONE** |
| FINDING ON DEADLY WEAPON: | **AFFIRMATIVE** |
| COURT COSTS: | **$ 278.00** |
| DATE SENTENCE IMPOSED: | **FEBRUARY 17, 2006** |

DATE ___8-26-09___
A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By _____ Deputy

Grand Total
$556.00

EXHIBIT
4

On **FEBRUARY 13, 2006**, the above numbered and entitled cause was regularly reached and called for trial, and the State appeared by **ROXANNA SALINAS AND GLENN DEVINO**, and the Defendant and the Defendant's attorney, **MONICA GALVAN AND**

SCANNED

Judgment of Conviction by Court & Sentence, Case No.CR-2377-05-A (COUNT ONE)

134784

054

Scanned Jan 20, 2010

ROGELIO GARZA, were also present. Thereupon both sides announced ready for trial, and the Defendant pleaded **NOT GUILTY** to the offense charged in the indictment. A Jury was duly selected, impaneled and sworn. Having heard the evidence submitted and having been duly charged by the Court, the Jury retired to consider their verdict. Afterward, being brought into open court by the proper officer, the Defendant, the Defendant's Attorney and the State's Attorney being present, and being asked if the Jury had agreed upon a verdict, the Jury answered it had and returned to the Court a verdict, which was read aloud, received by the Court, and is now entered upon the minutes of the Court as follows:

**We, the Jury, find the Defendant, GONZALO ARTEMIO LOPEZ, GUILTY of the offense of CAPITAL MURDER as charged in the indictment.**

Thereupon, the State having elected not to seek the death penalty as allowed under Article 37.071 Section 1 of the Texas Code of Criminal Procedure, the Court then asked the Defendant whether the Defendant had anything to say why the sentence should not be pronounced upon Defendant, and the Defendant having answered nothing in bar thereof, the Court proceeded to pronounce sentence upon Defendant.

It is therefore **ORDERED, ADJUDGED and DECREED** by the Court that the Defendant is guilty of the offense of **CAPITAL MURDER, CAPITAL FELONY**, committed on **MARCH 23, 2005**; that the punishment is fixed at **LIFE** in the **INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE** and a Fine of **NONE**; and that the State of Texas do have and recover of the Defendant all court costs in this prosecution expended, for which execution will issue.

A pre-sentence investigation report **WAS NOT DONE** according to Article 42.12, Sec. 9, CCP.

It is further **ORDERED** by the Court that the Defendant be taken by the authorized agent of the State of Texas or by the Sheriff of Hidalgo County, Texas, and be safely conveyed and delivered to the Director of the Institutional Division of the Texas Department of Criminal Justice, there to be confined in the manner and for the period aforesaid, and the Defendant is hereby remanded to the custody of the Sheriff of Hidalgo County, Texas, until such time as the Sheriff can obey the directions of this sentence.

**Furthermore, the following special findings or orders apply:**

The Court finds that the Defendant used or exhibited a deadly weapon, namely, **PICK, PICK AXE, OR AN OBEJECT UNKNOWN TO THE GRAND JURORS**, during the commission of a felony offense or during immediate flight there from or was a party to the offense and knew that a deadly weapon would be used or exhibited.

The Court, upon the State's motion, **DISMISSED** the following count, case or complaint: **NONE.**

The Court, upon the Defendant's request and the State's consent, **CONSIDERED** as an admitted unadjudicated offense the following count, case or complaint: **NONE.**

The Court finds that this sentence shall run concurrent with: **CR-2377-05-A COUNT TWO.**

SCANNED

134785
055

Scanned Jan 20, 2010

The Court finds that the Defendant shall be credited with 7 **DAYS** on his sentence for time spent in jail in this cause.

The Court finds that the State abandoned the allegation of one prior conviction.

The Court finds the Defendant owes **NONE** for the Fine, **NONE** in restitution, $_____ in court costs.

Signed on the ___17th___ day of ___February___, 20_06_.

_____
Judge Presiding

Receipt is hereby acknowledged on the date shown above of one copy of this Judgment & Sentence.

_____
Defendant

_____
Community Supervision Officer

JM

Defendant's right thumbprint



SCANNED

Judgment of Conviction by Court & Sentence, Case No.CR-2377-05-A (COUNT ONE)

134786   056

Scanned  Jan 20, 2010   Case No. CR-2377-05-A (COUNT TWO)

TRN **904 035 9296 A002**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE **92ND** JUDICIAL |
| v.**GONZALO ARTEMIO** | § | DISTRICT COURT OF |
| **LOPEZ,** | § | HIDALGO COUNTY, TEXAS |
| **DEFENDANT** | | |
| <u>SID</u>: **TX 05241648** | | |

## JUDGMENT OF CONVICTION BY JURY
## & SENTENCE TO THE INSTITUTIONAL DIVISION OF
## <u>THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE</u>

| | |
|---|---|
| DATE OF JUDGMENT: | **FEBRUARY 17, 2006** |
| JUDGE PRESIDING: | **NOE GONZALEZ** |
| ATTORNEY FOR THE STATE: | **ROXANNA SALINAS and GLENN DEVINO** |
| ATTORNEY FOR THE DEFENDANT: | **MONICA GALVAN and ROGELIO GARZA** |
| OFFENSE CODE: | **10990004** |
| OFFENSE: | **AGGRAVATED KIDNAPPING, AS CHARGED IN THE INDICTMENT** |
| DATE OF OFFENSE: | **MARCH 23, 2005** |
| DEGREE OF OFFENSE: | **FIRST DEGREE FELONY** |
| STATUTE FOR OFFENSE: | **20.04 PENAL CODE** |
| APPLICABLE PUNISHMENT RANGE: (Including enhancements if any): | **LIFE 5-99 YEARS IN PRISON/MAX $10,000.00 FINE** |
| CHARGING INSTRUMENT: | **INDICTMENT** |
| PLEA TO OFFENSE: | **NOT GUILTY** |
| JURY VERDICT FOR OFFENSE: | **GUILTY** |
| PUNISHMENT IMPOSED BY COURT: | **15 YEARS IMPRISONMENT** |
| PLACE OF IMPRISONMENT | **INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE** |
| FINE: | **NONE** |
| RESTITUTION: | **NONE** |
| CREDIT FOR TIME SPENT IN JAIL: | **297 DAYS** |
| DISMISS: | **NONE** |
| CONSIDER: | **NONE** |
| CONCURRENT WITH: | **CR-2377-05-A COUNT ONE** |
| PLEA TO ENHANCEMENT PARAGRAPH(S): | **NONE** |
| FINDING TO ENHANCEMENT: | **NONE** |
| FINDING ON DEADLY WEAPON: | **AFFIRMATIVE** |
| COURT COSTS: | $278.00 |
| DATE SENTENCE IMPOSED: | **FEBRUARY 17, 2006** |

EXHIBIT
5

DATE _8-26-09_
A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By _____ Deputy

On **FEBRUARY 13,2006,** the above numbered and entitled cause was called for trial, and the State appeared by **ROXANNA SALINAS and GLENN**

SCANNED

Judgment of Conviction by Court & Sentence, Case No. CR-2377-05-A (COUNT TWO)

134787 057

Scanned Jan 20, 2010

DEVINO, and the Defendant and the Defendant's attorney, MONICA GALVAN and ROGELIO GARZA, were also present. Thereupon both sides announced ready for trial, and the Defendant pleaded **NOT GUILTY** to the offense charged in the indictment. A Jury was duly selected, impaneled and sworn. Having heard the evidence submitted and having been duly charged by the Court, the Jury retired to consider their verdict. Afterward, being brought into open court by the proper officer, the Defendant, the Defendant's Attorney and the State's Attorney being present, and being asked if the Jury had agreed upon a verdict, the Jury answered it had and returned to the Court a verdict, which was read aloud, received by the Court, and is now entered upon the minutes of the Court as follows:

We the Jury, find the Defendant, **GONZALO ARTEMIO LOPEZ,** GUILTY of the offense of AGGRAVATED KIDNAPPING, as charged in the indictment.

Thereupon, the Defendant having previously elected to have the punishment assessed by the Judge, the Court heard evidence related to the question of punishment. Thereafter, the Court finds that the State abandoned the allegation of one prior conviction, and assessed punishment at **15 YEARS** in the **INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE** and a Fine of **NONE.**

A pre-sentence investigation report **WAS NOT DONE** according to Article 42.12, Sec. 9, CCP.

And thereupon on **FEBRUARY 17, 2006,** the Court then asked the Defendant whether the Defendant had anything to say why the sentence should not be pronounced upon Defendant, and the Defendant having answered nothing in bar thereof, the Court proceeded to pronounce sentence upon Defendant.

It is therefore **ORDERED, ADJUDGED and DECREED** by the Court that the Defendant is guilty of the offense of **AGGRAVATED KIDNAPPING, AS CHARGED IN THE INDICTMENT, FIRST DEGREE FELONY,** committed on **MARCH 23, 2005;** that the punishment is fixed at **15 YEARS** in the **INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE** and a Fine of **NONE;** and that the State of Texas do have and recover of the Defendant all court costs in this prosecution expended, for which execution will issue.

It is further **ORDERED** by the Court that the Defendant be taken by the authorized agent of the State of Texas or by the Sheriff of Hidalgo County, Texas, and be safely conveyed and delivered to the Director of the Institutional Division of the Texas Department of Criminal Justice, there to be confined in the manner and for the period aforesaid, and the Defendant is hereby remanded to the custody of the Sheriff of Hidalgo County, Texas, until such time as the Sheriff can obey the directions of this sentence.

Furthermore, the following special findings or orders apply:

The Court, upon the State's motion, **DISMISSED** the following count, case or complaint: **NONE.**

The Court, upon the Defendant's request and the State's consent, **CONSIDERED** as an admitted unadjudicated offense the following count, case or complaint: **NONE.**

SCANNED

Judgment of Conviction by Court & Sentence, Case No. CR-2377-05-A (COUNT TWO)

134788058

Scanned Jan 20, 2010

The Court finds that this sentence shall run concurrent with CR-2377-05-A COUNT ONE.

The Court finds that the Defendant shall be credited with **297 DAYS** on his sentence for time spent in jail in this cause.

The Court finds the Defendant owes **NONE** for the Fine, **NONE** in restitution, $_____ in court costs. The Defendant shall make restitution, if any, within five (5) years after the end of the term of imprisonment imposed.

Signed on the ___17th___ day of ___February___, 20 06.

_____
Judge Presiding

Receipt is hereby acknowledged on the date shown above of one copy of this Judgment & Sentence.

_____
Defendant

_____
Community Supervision Officer

JM

Defendant's right thumbprint



SCANNED

134789 059

Scanned Jan 20, 2010

COURT OF APPEALS

Thirteenth District

Corpus Christi - Edinburg, Texas

Below is the JUDGMENT in the numbered cause set out herein to be Filed and Entered in the Minutes of the Court of Appeals, Thirteenth District of Texas, at Corpus Christi - Edinburg, as of the 23rd day of October, 2008. If this Judgment does not conform to the opinion handed down by the Court in this cause, any party may file a Motion for Correction of Judgment with the Clerk of this Court.

CAUSE NO. 13-06-00341-CR                                   (Tr.Ct.No. CR-2377-05-A)

GONZALO ARTEMIO LOPEZ,                                                   Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

On appeal to this Court from Hidalgo County, Texas.

* * * * * * *

# JUDGMENT

On appeal from the 92nd District Court of Hidalgo County, Texas, from a judgment signed February 17, 2006. Memorandum Opinion by Justice Rose Vela. Do not publish. TEX. R. APP. P. 47.2(b).

THIS CAUSE was submitted to the Court on July 31, 2008, on the record and briefs. These having been examined and fully considered, it is the opinion of the Court that there was no error in the judgment of the court below, and said judgment is hereby AFFIRMED against appellant, GONZALO ARTEMIO LOPEZ.

It is further ordered that this decision be certified below for observance.

* * * * * * *

DORIAN E. RAMIREZ, CLERK

EXHIBIT
6

DATE  8-26-09
A true copy I certify
LAURA HINOJOSA
District Clerk, Hidalgo County, Texas
By _____ Deputy

060

Scanned Jan 20, 2010



NUMBER 13-06-341-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

GONZALO ARTEMIO LOPEZ,                                  Appellant,

v.

THE STATE OF TEXAS,                                         Appellee.

### On appeal from the 92nd District Court
### of Hidalgo County, Texas

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

A jury found appellant, Gonzalo Artemio Lopez, guilty of capital murder[1] (count 1)

and aggravated kidnapping[2] (count 2), and the trial court assessed punishment at life

---

[1] *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2008).

[2] *See* TEX. PENAL CODE ANN. § 20.04(a)(1), (b) (Vernon 2003).

Scanned  Jan 20, 2010

imprisonment and fifteen years' imprisonment, respectively.  The sentences are to run concurrently.  In three issues, Lopez argues the trial court erred in admitting his written confession into evidence, questioning witnesses during the suppression hearing, and sentencing him on counts 1 and 2 in violation of his double-jeopardy protection against multiple punishments for the same offense.  We affirm.

## I. Factual Background

The evidence[3] showed that between 4:30 a.m. and 4:45 a.m. on April 23, 2005, Lopez was arrested for cocaine possession and taken to the Starr County sheriff's office where Romeo Ramirez, Jr., an investigator for that office, interviewed him.  Prior to conducting the interview, Ramirez read Lopez the *Miranda*[4] warnings from a preprinted form as follows:

1. You have the right to remain silent and not make any statement at all and that any statement you make may be used against you at your trial;

2. Any statement you make may be used as evidence against you in court;

3. You have the right to have a lawyer present, to advise you prior to and during any questioning;

4. If you're unable to employ a lawyer, you have the right to have a lawyer to appointed to advise you prior to and during any questioning; and

---

[3]When considering a suppression issue, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).  This general rule, however, is inapplicable when the parties consensually relitigate the suppression issue during the trial on the merits. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal*, 917 S.W.2d at 809.  When the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to reopen the evidence, and consideration of the relevant trial testimony is appropriate in our review. *Rachal*, 917 S.W.2d at 809. Here, both the prosecutor and defense counsel asked the witnesses questions during the trial on the merits regarding the circumstances surrounding Lopez's statement. Thus, Lopez participated in the relitigation of the issue during trial, and we will therefore consider the evidence adduced at both the suppression hearing and the trial on the merits. *See id.*

[4]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

Scanned  Jan 20, 2010

5. You have the right to terminate the interview at any time.[5]

Ramirez testified that Lopez understood these warnings and that Lopez placed his initials next to each warning.  Lopez signed the preprinted form in Ramirez's presence at 5:20 a.m. that day.  Lopez agreed to waive these rights, but told Ramirez that he wanted to speak to an FBI agent.

Christopher Lee, an FBI agent, arrived at the Starr County sheriff's office about 8:30 a.m. that day.  Prior to the interview, Lee read Lopez the warnings from the same preprinted form that Ramirez used to admonish Lopez.  Lee testified that Lopez understood the warnings and that Lopez agreed to waive his rights and talk to him.  During the interview, Lee advised Lopez that Ranger Escalon was en route to interview Lopez about a warrant out of Weslaco.

About 12:50 p.m. that day, while Lee was in the interview room with Lopez, Ranger Victor Escalon, Jr., came into the interview room and began to interrogate Lopez.  Lopez gave Escalon a written confession in which Lopez stated that a week before March 23, 2005, he had spoken to Juan Lerma, who was associated with the La Mana drug cartel from Tamaulipas, Mexico.  According to the confession, Lerma told Lopez that Lupe Ramirez owed the cartel $40,000 and Lerma asked Lopez to "pick him up and collect the $40,000."  Lopez and an accomplice named "Rick" went to Lupe's house, abducted him and wrapped him in duct tape, and then drove him to Lopez's mother's house in Weslaco. Lupe could only produce three trucks, $8,000, and thirty pounds of "weed" to cover the $40,000 debt.  Acting on Lerma's order to kill Lupe, Lopez and Rick drove Lupe to a

---

[5]These are the warnings required by article 38.22, section 2(a) of the code of criminal procedure.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(1)-(5) (Vernon 2005).

Scanned  Jan 20, 2010

"monte"[6] where they dug a grave for Lupe's body.  After digging the grave, they put Lupe

in the hole, and Lopez hit Lupe with a pick, killing him.  They buried Lupe and left the

scene.

      After Lopez signed his written confession at 8:11 p.m. that day, he agreed to take

Ranger Escalon to where he and Rick had buried Lupe.  At the scene, Escalon and other

law-enforcement personnel exhumed Lupe's body.

      The defense did not call any witnesses to testify at either the suppression hearing

or the guilt-innocence phase of the trial.

II. Discussion

*A. Written Confession*

      By issue one, Lopez argues the trial court erred in admitting his written confession

into evidence, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  Lopez filed a pre-

trial motion to suppress his confession, and after a pre-trial suppression hearing, the trial

court denied the motion.  These actions alone would have preserved the suppression issue

for review without further objection by Lopez during the trial.  At trial, however, when the

State sought admission of Lopez's written confession, defense counsel stated he had "No

objection, judge."  The law is well settled that, when a defendant affirmatively asserts

during trial that he has "no objection" to the admission of the complained-of evidence, any

error in the admission of the evidence is waived even if the defendant had previously

preserved the error by a suppression motion and adverse ruling.  *Moody v. State*, 827

S.W.2d 875, 889 (Tex. Crim. App. 1992); *Dean v. State*, 749 S.W.2d 80, 82-83 (Tex. Crim.

App. 1988); *Harris v. State*, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); *McGrew v.*

---

[6]According to Ranger Escalon, the term "monte" means "brushy area."

4

Scanned Jan 20, 2010

*State*, 523 S.W.2d 679, 680-81 (Tex. Crim. App. 1975). Because counsel affirmatively stated he had no objection to the introduction of the confession, we hold the complaint is not preserved. Issue one is overruled.

### B. Court's Questioning of Witnesses

In issue two, Lopez argues the trial court erred by questioning the State's witnesses during the suppression hearing. During the suppression hearing, the trial judge, on numerous occasions, questioned the State's witnesses in an effort to understand their role in the case and whether Lopez received the *Miranda* warnings prior to giving his written confession. However, Lopez's counsel did not object to the judge's questioning of the witnesses. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. TEX. R. APP. P. 33.1(a). When no objection is made, remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous. *Moreno v. State*, 900 S.W.2d 357, 360 (Tex. App.–Texarkana 1995, no pet.) (citing *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. 1978)). Fundamental error is error that is so egregious and creates such harm that it deprives the defendant of his or her right to a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985) (op. on reh'g).

In *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000) (plurality op.), the trial court made comments in front of the jury that demonstrated he was not fair or impartial. A plurality of the court of criminal appeals held that a trial judge's comments "which tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." *Id.* at 132. In a concurring opinion,

5

Scanned Jan 20, 2010

another judge wrote that the right at issue was the fundamental right to an impartial judge and, as such, no objection was required. *Id.* at 138 (Keasler, J., concurring).

A trial judge has broad discretion in maintaining control and expediting a trial and may clear up a point of confusion. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). Here, the record does not reveal that the trial judge, by questioning the State's witnesses, became so entangled as an advocate that he could not at the end of the proceeding make an objective finding. *See Moreno*, 900 S.W.2d at 360. Nor can we say the judge's questions indicated he abandoned his proper role as a neutral arbiter and became an advocate for the State. *See Bethany v. State*, 814 S.W.2d 455, 462 (Tex. App.–Houston [14th Dist.] 1991, pet. ref'd) (when trial court abandons position as neutral arbiter and assumes role of advocate, fundamental fairness is lost). After examining the record of the suppression hearing, we conclude there is no showing of fundamental error.

Even if counsel had objected to the judge's questioning of the witnesses, the record shows the judge did not err in doing so because his questions were for the purpose of clarifying an issue before the court and were, therefore, permissible. *See Brewer*, 572 S.W.2d at 721 (trial court may question witness for purpose of clarifying issue before the court). Issue two is overruled.

*C. Double Jeopardy*

In issue three, Lopez argues that the trial court erred in sentencing him on counts 1 and 2 in violation of his double-jeopardy protection against multiple punishments for the same offense.[7]  Lopez's convictions for capital murder (count 1) and aggravated kidnapping (count 2) were based on multiple counts in one indictment and were obtained

---

[7]Lopez did not raise his double jeopardy claim in the court below, but the alleged violation may be raised for the first time on appeal. *McDuff v. State*, 943 S.W.2d 517, 524 (Tex. App.–Austin 1997, pet. ref'd).

066

Scanned Jan 20, 2010

in a single trial.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses:  (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).  A multiple-punishments claim can arise in the context of "punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once (for example, causing a single death by committing both intoxication manslaughter and involuntary manslaughter)." *Id.*

To determine whether a prosecution violates the protection against multiple punishments, courts have applied the same-elements test of *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Langs*, 183 S.W.3d at 685; *see Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990).  The *Blockburger* rule is that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other did not." *Blockburger*, 284 U.S. at 304; *Herron*, 790 S.W.2d at 624.  The *Blockburger* test is simply "a rule of statutory construction," a guide to determining whether the legislature intended multiple punishment. *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

At a trial there may be a substantial overlap in the proof of each offense; however, it is the separate statutory elements of each offense that must be examined under the *Blockburger* test.  *McDuff v. State*, 943 S.W.2d 517, 524 (Tex. App.–Austin 1997, pet. ref'd); *State v. Marshall*, 814 S.W.2d 789, 791 (Tex. App.–Dallas 1991, pet. ref'd).  When a defendant is tried under two separate statutes in one proceeding, *Blockburger* is the

7

Scanned Jan 20, 2010

applicable test, and the court is required to focus on the elements of the offense charged, not on the evidence elicited at trial. *McDuff*, 943 S.W.2d at 524; *see also Flores v. State*, 906 S.W.2d 133, 136 (Tex. App.–San Antonio 1995, no pet.).

*Parrish v. State*, 869 S.W.2d 352 (Tex. Crim. App. 1994), re-examined what is meant by the "same elements" test after *United States v. Dixon*, 509 U.S. 688 (1993). The *Parrish* court stated:

> We likewise think it reasonably clear from the various opinions in *Dixon* that the essential elements *relevant to a jeopardy inquiry* are those of the charging instrument, not of the penal statute itself. Statutory elements will, of course, always make up a part of the accusatory pleading, but additional nonstatutory allegations are necessary in every case to specify the unique offense with which the defendant is charged.

*Parrish*, 869 S.W.2d at 354 (emphasis added).

When the issue is whether the Fifth Amendment guarantee against multiple punishment bars convictions on multi-count offenses in the same trial, we find *Missouri v. Hunter* instructive. 459 U.S. at 359. *Hunter* held that the double-jeopardy clause does not impose a limitation upon the legislative prerogative to "prescribe the scope of punishment." 459 U.S. at 368. In *Hunter*, the Missouri Supreme Court had concluded that the imposition of multiple sentences under two statutory provisions that it construed to define the "same offense" under the *Blockburger* test was jeopardy barred, despite express legislative authorization of multiple punishment. The United States Supreme Court reversed, holding that in the multiple-punishment context, *Blockburger* is no more than a rule of statutory construction, useful in discerning the legislative intent concerning the scope of punishment when that intent is not otherwise manifested. *Blockburger* does not operate to trump "clearly expressed legislative intent." *Hunter*, 459 U.S. at 368; *Ex parte Kopecky*, 821 S.W.2d 957, 959 (Tex. Crim. App. 1992).

8

Scanned Jan 20, 2010

In *Hunter,* the Court explained:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger,* a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Hunter,* 459 U.S. at 368-69; *see also Garrett v. United States,* 471 U.S. 773, 779 (1985) ("We have recently indicated that the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute *or the legislative history.*") (emphasis added).

*1. Capital Murder*

Section 19.03 of the penal code defines capital murder as an intentional or knowing killing under section 19.02(b)(1),[8] the traditional definition of murder, accompanied by one of the listed aggravating or capital factors. *See* TEX. PENAL CODE ANN. § 19.03(a)(1)–(9) (Vernon Supp. 2008). Section 19.03 is a separate and distinct offense with a mandatory penalty of death or life imprisonment. *Id.* § 12.31(a). There are standards to guide the jury. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2 (Vernon 2006). The offense is one of gradation, permitting the imposition of the death penalty only for the most serious offenses.

Relevant to the instant case, the applicable section of 19.03 provides: "(a) A person commits an offense if the person commits murder as defined under Section 19.02(b)(1) and: (2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping . . . ." TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2008).

In the instant case, the first paragraph of count 1 of the indictment alleged in pertinent part that:

---

[8] *See* TEX. PENAL CODE ANN. § 19.03(a) (Vernon Supp. 2008).

9

069

Scanned  Jan 20, 2010

> GONZALO ARTEMIO LOPEZ . . . did then and there intentionally cause the death of an individual, namely, Jose Guadalupe Ramirez, by striking him with a pick, and the defendant was then and there in the course of committing and attempting to commit the offense of kidnapping of Jose Guadalupe Ramirez[.]

The second and third paragraphs of count 1 repeated the pertinent language of paragraph one above except the cause of death was alleged "by striking him with a pick axe" (paragraph two) and "by striking him with an object unknown to the Grand Jurors" (paragraph three).  Thus, count 1 alleged the offense of capital murder in the course of committing or attempting to commit kidnapping.

With respect to the allegations of capital murder in the instant case, we note that it is unnecessary to allege the constituent elements of the aggravating feature that elevate the offense of murder to capital murder.  *Alba v. State*, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995); *Gribble v. State,* 808 S.W.2d 65, 73 (Tex. Crim. App. 1990); *Beathard v. State*, 767 S.W.2d 423, 431 (Tex. Crim. App. 1989).  The phrase "in the course of committing or attempting to commit" as used in section 19.03(a)(2) is not defined in the penal code.  *Riles v. State,* 595 S.W.2d 858, 862 (Tex. Crim. App. 1980).  The phrase has been judicially defined to mean "conduct occurring in an attempt to commit, during the commission or in the immediate flight after the attempt or commission of the offense."  *Id*; *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989); *see also Barnes v. State*, 845 S.W.2d 364, 367 (Tex. App.–Houston [1st Dist.] 1992, no pet.).  When the phrase is alleged in a capital-murder case, it does not necessarily require proof of a completed underlying offense or completed attempt.  *McDuff*, 943 S.W.2d at 526; *see Flores,* 906 S.W.2d at 139.

*2. Aggravated Kidnapping*

A person who intentionally or knowingly abducts another person is guilty of kidnapping.  TEX. PENAL CODE ANN. § 20.03(a) (Vernon 2003).  The offense becomes

10

Scanned  Jan 20, 2010

aggravated kidnapping if the offense is committed with the intent to: (1) hold the victim for ransom or reward; (2) use the victim as a shield or hostage; (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony; (4) inflict bodily injury on, violate, or abuse the victim sexually; (5) terrorize the victim or a third person; or (6) interfere with the performance of any governmental or political function. *Id.* § 20.04(a)(1)-(6). Aggravated kidnapping is also committed if a "person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." *Id.* § 20.04(b). Aggravated kidnapping is a first-degree felony[9] unless the actor "voluntarily release[s] the victim in a safe place," in which event it is a second-degree felony. *Id.* § 20.04(d). Kidnapping is a separate and distinct crime under the penal code. *Gribble*, 808 S.W.2d at 71. Aggravated kidnapping is also a separate crime. *McDuff*, 943 S.W.2d at 926.

In the instant case, count 2, paragraph one of the indictment alleged in pertinent part that:

> GONZALO ARTEMIO LOPEZ . . . did then and there, with the intent to hold Jose Guadalupe Ramirez for ransom, intentionally and knowingly abduct Jose Guadalupe Ramirez by restricting the movements of said Jose Guadalupe Ramirez without his consent so as to interfere substantially with his liberty, by confining him, with the intent to prevent his liberation, by using and threatening to use deadly force, namely, a firearm[.]

The second paragraph of count 2 alleged Lopez prevented Ramirez's liberation "by secreting or holding him in a place where he was not likely to be found, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said offense[.]" Thus, count 2 alleged two forms of aggravated kidnapping

---

[9]*See* TEX. PENAL CODE ANN. § 20.04(c) (Vernon 2003).

11

071

under section 20.04(a)(1) and section 20.04(b). It utilized both definitions of "abduct"[10] and alleged the required intent to make the offense aggravated kidnapping.

*3. Analysis*

In applying the *Blockburger* test, we observe that the State was required to prove that Lopez intentionally or knowingly intended to cause Ramirez's death in order to convict under count I (capital murder). The capital-murder allegation required an intent to kill which was not required as an element of aggravated kidnapping. The aggravated kidnapping allegation (paragraph one) required the specific intent to hold Ramirez for ransom, and paragraph two required use or exhibition of a deadly weapon during the commission of the offense. Because each offense has a unique element, they are not the "same offense" under *Blockburger*. *McDuff*, 943 S.W.2d at 527; *see Scott v. State*, 861 S.W.2d 440, 446 (Tex. App.–Austin 1993, no pet.). Regardless of whether the *Blockburger* test has been met, the touchstone is legislative intent. *McDuff*, 943 S.W.2d at 527; *see Kopecky,* 821 S.W.2d at 959. The question is whether the legislature intended that an accused in Lopez's position be punished both for capital murder in the course of committing or attempting to commit kidnapping and for aggravated kidnapping. We hold that this was the legislature's intent.

Capital murder and aggravated kidnapping are separate and distinct offenses in different chapters of the penal code providing dissimilar penalties and protecting against different evils. *McDuff*, 943 S.W.2d at 527. Each statute has its own unique elements. *Id*. Different types of capital murder may be alleged under section 19.03 or even under section 19.03(a)(2) alone. TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 2008). Different types of aggravated kidnapping may be alleged depending on the specific intent involved.

---

[10]TEX. PENAL CODE ANN. § 20.01(2)(A), (B) (Vernon Supp. 2009).

Scanned Jan 20, 2010

TEX. PENAL CODE ANN. § 20.04 (Vernon 2003). The language structure of the statutes reflects the legislative intent that multiple punishments be authorized for capital murder and aggravated kidnapping when the convictions are obtained in a single trial. *McDuff*, 943 S.W.2d at 527. We conclude that the legislature intended aggravated kidnapping to be a separate offense which is punishable in addition to any penalty imposed in a capital-murder case when the underlying or predicate offense may involve committing or attempting to commit kidnapping. *Id.* Accordingly, Lopez's fifth amendment right against multiple punishments for the same offense was not violated.

In the instant case, the sentences were made to run concurrently because they arose out of the same criminal episode and were tried in the same criminal action. *See* TEX. PENAL CODE ANN. § 3.03(a) (Vernon Supp. 2008). Concurrent sentences do not foreclose a finding of double jeopardy or require the finding. *McDuff*, 943 S.W.2d at 527, *see Ex parte Scelles*, 511 S.W.2d 300, 302 (Tex. Crim. App. 1974); *York v. State*, 848 S.W.2d 341, 342 (Tex. App.–Texarkana 1993, pet. ref'd) (citing *United States v. Osunegbu*, 822 F.2d 472, 481 (5th Cir.1987)). The third issue is overruled.

III. Conclusion

We affirm the trial court's judgments.

*Rose Vela*

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 23rd day of October, 2008.

13

073