canned Oct 02, 2013

No. 04-09-00312-CR

IN THE

FOURTH COURT OF APPEALS DISTRICT

OF TEXAS

SAN ANTONIO, TEXAS

---

**GONZALO ARTEMIO LOPEZ,**
**Appellant**

**vs.**

**THE STATE OF TEXAS,**
**Appellee**

---

TRIAL CAUSE NO. 2006-CR0-452-D3

APPEAL FROM THE 341ST DISTRICT COURT
WEBB COUNTY, TEXAS
HONORABLE ELMA TERESA SALINAS ENDER, JUDGE PRESIDING

---

**APPELLANT'S OPENING BRIEF**

---

ANGELA J. MOORE
Chief Appellate Public Defender
SBOT#: 14320110

DEBORAH LETZ
Assistant Appellate Public Defender
410 S. Main Ave., Suite 214
San Antonio, Texas 78204
dletz@bexar.org
(210) 335-0701
Fax (210) 335-0707
Bar No. 24035554
*Attorneys for Appellant*

Oral Argument Not Requested

000099

## Identity of Parties and Counsel

Pursuant to Tex. R. App. P. 38.1(a), the parties to this suit are as follows:

For the State:
At trial:

**Joe Rubio**[1]
SBOT # 17362100
Webb County District Attorney
1110 Victoria St., Suite 401
Laredo, TX  78040

**Edward A. Castillo**
SBOT # 24040657
Assistant District Attorney

**Jesus Guillen**
SBOT # 24011090
Assistant District Attorney

On appeal:

**Isidro R. Alaniz**
Webb County District Attorney
SBOT # 00792326

For the Appellant:
At trial:

**Fausto Sosa**
SBOT # 18855620
101 East Hillside Road, Suite 11C
P.O. Box 848
Laredo, TX  78042

On appeal:

**Angela J. Moore**
Chief Appellate Public Defender
SBOT # 14320110

**Deborah Letz**
Assistant Appellate Public Defender
SBOT # 24035554
Bexar County Appellate Public Defender's Office
410 South Main, Suite 214
San Antonio, Texas 78204

---

[1] Mr. Rubio was the Webb County District Attorney at the time of trial.

ii

000100

# Table of Contents

Identity of Parties and Counsel ...................................................................................ii

Table of Contents ......................................................................................................iii

Index of Authorities ..................................................................................................iv

Statement of the Case.................................................................................................1

Issues Presented ........................................................................................................2

    1.  The trial court abused its discretion when it ordered Appellant's sentence to be served consecutive to any current sentences because the State failed to present competent evidence that linked Appellant to any of the judgments of conviction.2

    2.  Appellant suffered "some harm" when the trial court refused to give the jury the ability to decide whether Ramirez was an accomplice, and thus the conviction must be reversed and remanded for a new trial. ...................................................2

    3.  The evidence was factually insufficient to find that Appellant was guilty of attempted capital murder; the evidence did not show that he was guilty either as an individual or as a party. .................................................................................2

Statement of Facts......................................................................................................3

Summary of the Argument..........................................................................................7

Argument ...................................................................................................................8

    Issue One .............................................................................................................8

    Issue Two............................................................................................................12

    Issue Three..........................................................................................................17

Conclusion and Prayer for Relief...............................................................................20

Certificate of Service ...............................................................................................21

000101

canned Oct 02, 2013

# Index of Authorities

## Cases

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)................................14

*Beedy v. State*, 250 S.W.3d 107 (Tex. Crim. App. 2008)................................12

*Cain v. State*, 958 S.W.2d 404 (Tex. Crim. App. 1997)................................17

*Cathey v. State*, 992 S.W.2d 460 (Tex. Crim. App. 1999). ................................18

*Cocke v. State*, 201 S.W.3d 744 (Tex. Crim. App. 2006)................................13

*Daniel v. State*, 585 S.W.2d 688 (Tex. Crim. App. 1979)................................9

*Drichas v. State*, 175 S.W.3d 795 (Tex. Crim. App. 2005)................................18

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007). ................................12

*Grayson v. State*, 82 S.W.3d 357 (Tex. App.---Austin 2001, no pet.) ................................17

*Herron v. State*, 86 S.W.3d 621 (Tex. Crim. App. 2002)................................15

*Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000) ................................17, 18

*Johnson v. State*, 749 S.W.2d 513  (Tex. App.---Houston [1st Dist.] 1988, no pet.)..........8

*Marshall v. State*, 210 S.W.3d 618 (Tex. Crim. App. 2006), *cert. denied*, 128 S. Ct. 87

(2007) ................................17

*Miller v. State*, 33 S.W.3d 257 (Tex. Crim. App. 2000)................................8, 9

*Simpson v. State*, 181 S.W.3d 743 (Tex. App.---Tyler 2005, pet. ref'd)................................13, 18

*Timberlake v. State*, 711 S.W.2d 50 (Tex. Crim. App. 1986) ................................11

*Turner v. State*, 733 S.W.2d 218 (Tex. Crim. App. 1987)................................8, 9

*Vasquez v. State*, 67 S.W.3d 229 (Tex. Crim. App. 2002) ................................13, 18

0001.2

*Watson v. State*, 204 S.W.3d 404 (Tex. Crim. App. 2006)...........................................17, 18

*Wead v. State*, 129 S.W.3d 126 (Tex. Crim. App. 2004)......................................................9

*Williams v. State*, No. 04-97-00162-CR, 1998 Tex. App. LEXIS 5948, Sept. 23, 1998, no

pet.).............................................................................................................................14

*Woodfox v. State*, 742 S.W.2d 408 (Tex. Crim. App. 1987) .............................................13

**Statutes**

Tex. Code Crim. Proc. art. 38.14 (West 2009) .........................................................12, 13, 18

Tex. Code Crim. Proc. art. 42.08 (West 2009). .....................................................................8

**Rules**

Tex. R. App. P. 33.1 ...............................................................................................................14

000103

TO THE FOURTH COURT OF APPEALS OF THE STATE OF TEXAS:

This brief is filed on behalf of Appellant, Artemio Gonzalo Lopez, by Angela J. Moore, Chief Public Defender, and Deborah Letz, Assistant Public Defender.

### Statement of the Case

Appellant Artemio Gonzalo Lopez was indicted by a Webb County grand jury for the attempted capital murder of Webb County Sheriff's Department Deputy Francisco Fuentes. (CR 9). The indictment alleged that Appellant shot a firearm at Deputy Fuentes, "who was acting in the lawful discharge of an official duty in attempting to detain Luis Carlos Mares and Artemio Gonzalo Lopez and the said Artemio Gonzalo Lopez knew that Deputy Francisco Fuentes was a peace officer." (CR 9). Trial was before a jury, which found him guilty of attempted capital murder. (CR 44). The jury assessed incarceration at life imprisonment in the Texas Department of Criminal Justice. (CR 51). At the State's request, the court ordered Appellant's sentence be served consecutive to any other current sentences. (9 RR 56).

00124

## Issues Presented

1. The trial court abused its discretion when it ordered Appellant's sentence to be served consecutive to any current sentences because the State failed to present competent evidence that linked Appellant to any of the judgments of conviction.

2. Appellant suffered "some harm" when the trial court refused to give the jury the ability to decide whether Ramirez was an accomplice, and thus the conviction must be reversed and remanded for a new trial.

3. The evidence was factually insufficient to find that Appellant was guilty of attempted capital murder; the evidence did not show that he was guilty either as an individual or as a party.

2

000105

### Statement of Facts

The evening of May 11, 2004, Appellant Artemio Gonzalo Lopez, Luis Carlos Mares, and Lucia Oneida Rodriguez were traveling north of Zapata County, Texas in a red Ford Mustang. (7 RR 145-46). Zapata County Sheriff's Deputies Federico Lopez and Greg Gutierrez observed the Mustang speeding. (7 RR 146-47). Deputy Lopez testified that both he and Gutierrez were in their police uniforms and were driving marked police vehicles. (7 RR 149). Sergeant Gutierrez proceeded to pull the Mustang over. When Sergeant Gutierrez exited his vehicle and got close to the Mustang, the Mustang took off. Deputy Lopez was still in his vehicle, so he began pursuit. He also turned on the in-dash video recorder. (7 RR 147). The Mustang headed north toward Laredo, in Webb County. The deputies' efforts to slow or stop the Mustang were fruitless, so they called Webb County and informed them that the Mustang was about to enter Laredo. Two Webb County Sheriff's Department deputies took up the pursuit when the Mustang entered Webb County. (7 RR 150).

Webb County Sheriff's Office Investigator Esteban Paez, Jr. was in the first car behind the Mustang; Deputy Francisco Fuentes was behind Paez; and Deputy Lopez from Zapata County was behind Fuentes. Deputy Fuentes attempted to pass the Mustang on the left when shots were fired from the Mustang. (7 RR 152). Deputy Lopez recalled hearing three or four shots (7 RR 152-53). According to Paez, he heard six shots and witnessed muzzle flash on the driver's side of the Mustang. (7 RR 201). Fuentes's vehicle veered off to the left; the other deputies continued pursuing the Mustang. (7 RR 154). The chase continued outside Laredo.

3

About four miles east of Highway 59, Paez said he saw muzzle flash and heard approximately six gunshots. (7 RR 201). These also came from the driver's side of the Mustang. He pursued the vehicle for another seven to ten minutes. He was the only car still in immediate pursuit of the Mustang at that time. (7 RR 202). Around fourteen miles east of Highway 59, he again saw muzzle flash on the driver's side and heard about eight gunshots. (7 RR 203). Each time shots were fired, Paez claimed he heard the shots before he saw any muzzle flash. (7 RR 220).

Approximately eighteen miles later, the Mustang began slowing down. (7 RR 204). It stopped and two men abandoned the vehicle and fled on foot. In his initial report, Paez did not mention that he saw the passenger carrying what appeared to be a large duffle bag, nor that the driver also exited and it appeared to Paez that "they" possessed a large-caliber rifle. (7 RR 205). Paez did not specify whether he meant the driver or the passenger. The men were heading toward the brush just past a barbed-wire fence. (7 RR 205-06). He also failed to mention that the duo turned toward him and pointed the rifle at him. He made these statements five days later, in response to an investigation into why he fired his service weapon. (8 RR 31-32).

Paez stopped his car, and got out with his weapon drawn. (7 RR 205). He thought he had been spotted by the men, so he began discharging his weapon. In all, he fired eleven shots. (7 RR 207). He never learned if he hit anyone. (8 RR 18). The men were not found that evening (7 RR 209) and the black bag was never recovered. (7 RR 206).

Mares was found the next day. (8 RR 56). He gave the police a written statement in which he took responsibility for the shootings, but said he never meant to hurt anyone.

000107

The only relevant references to Appellant are that Appellant told Mares to drive away when they were first approached by the officers and that at some unspecified time, Appellant handed him a rifle. (SX-23). Mares pleaded guilty to the attempted capital murder charge, and was sentenced to sixty years' incarceration.

Lucia Ramirez, the other passenger in the car, did not flee when the chase ended. The deputies found her in the back seat of the Mustang, holding her three-month old daughter. (8 RR 138). Ramirez knew both of the car's occupants. She met Appellant a few weeks earlier at a party and she had known Luis Carlos Mares as a friend's ex-husband. (8 RR 88-89). According to Ramirez, Appellant called her earlier that evening and said he would be in her area. She agreed to go with him and Mares to Roma, Texas to pick up a vehicle Mares owned. (8 RR 89-91). She brought her three-month old daughter with her. (8 RR 92). Mares drove and Appellant sat in the front passenger seat. She was seated behind Mares. (8 RR 110).

At trial, Ramirez testified that during the chase, Appellant reached into the back seat of the Mustang. (8 RR 119-20). He managed to pull the seat down so he could access the trunk. He grabbed a large black bag from the trunk, opened it, and began pulling clothing from it. (8 RR 120-26). Eventually, he pulled out a large rifle. (8 RR 126-27). Ramirez stated that Appellant loaded the rifle, handed it to Mares, then took control of the steering wheel while Mares continued to drive at a very high rate of speed. At another point, she said that Mares "grabbed" the firearm from Appellant. (8 RR 131). Mares rolled down his window and fired shots at Deputy Fuentes's vehicle. (8 RR 127, 130-32). Ramirez said that later on, one of the men fired at a bus. (8 RR 135). Finally,

when the Mustang came to a stop, she heard gunfire as Mares and Appellant were fleeing. (8 RR 136, 178).

Ramirez was arrested for evading arrest and spent "a couple of days" in jail. (8 RR 25, 138). In her initial statement to the police, she said she heard five or six shots fired. According to her, the shots were fired in a backward direction, not to the side, implying the other vehicle was not parallel to the Mustang, as Deputy Lopez testified. (8 RR 133, 152-53). At trial, she admitted that she really did not know how many shots were fired and that the officer taking the statement apparently just put the number five in his report. (8 RR 155, 179). She also conceded that her initial statement did not mention anyone shooting at a bus. (8 RR 157). She explained that she did not realize that the statement was incorrect or incomplete because she was preoccupied at the time. Only two days before the day of the police chase, Ramirez was involved in transporting fifty-two kilos of cocaine in a vehicle. (8 RR 143-44). One of the fellow passengers in that incident was Mares's ex-wife. (8 RR 145). She was afraid that CPS would take her daughter away; she was afraid she would go to jail. (8 RR 180).

Mares also testified. (8 RR 183). He said he did not know that the two cars were police cars when he was first pulled over. (8 RR 186). At that point, according to Mares, Mr. Lopez "started fixing a .223 [weapon]." (8 RR 187). On the stand, he denied that he fired the weapon. (8 RR 201). Mares said Appellant "did everything...The shooting, the reloading, the – everything." (8 RR 194). Mares decided to flee because he was "wanted" and because Mr. Lopez had just been released from prison. (8 RR 187).

6

Mares pled guilty to the attempted capital murder charge and was assessed sixty years' incarceration by the time of this trial. (8 RR 193, 212). He was also serving another sentence for the capital murder of someone else. (8 RR 195, 210). Mares explained that he only pleaded guilty because "they threatened" his parents. (8 RR 196). He further testified that he had pleaded in all his other cases (8 RR 208, 210), but that "[t]he ones who did it are going down." (8 RR 213). He freely admitted to lying throughout his first police statement. (8 RR 195, 201, 206-07).

Deputy Fuentes, the alleged victim, did not testify, although he was listed as a witness for the State.

The jury convicted Appellant of attempted capital murder as charged in the indictment, and made a special finding that a deadly weapon was used. (CR 40). The jury assessed life imprisonment and a $10,000 fine. (CR 51).

### Summary of the Argument

The trial court erred when it granted the State's motion to cumulate this sentence onto any prior sentences. The State failed to present any proof tying Appellant to the judgments of conviction it presented during punishment. Without evidence that Appellant himself had been previously convicted, the court should not have cumulated Appellant's sentence. In addition to the lack of evidence proving a prior conviction, the evidence presented during guilt-innocence was factually insufficient. The State did not prove, beyond a reasonable doubt, that Appellant committed the offense of attempted capital murder, either by himself or as a party. Compounding the problem was the trial court's refusal to give an accomplice as a matter of fact instruction. Had the court given

7

the instruction as requested, the jury would have had the opportunity to determine whether the only passenger who was not charged was an accomplice as a matter of fact. Had the jury determined that the witness was an accomplice as a matter of fact, then Appellant could not be convicted without evidence corroborating the passenger's testimony.

### Argument and Authorities

#### Issue One
**The trial court abused its discretion when it ordered Appellant's sentence to be served consecutive to any current sentences because the State failed to present competent evidence that linked Appellant to any of the judgments of conviction.**

Before trial began, the State filed a motion to cumulate Appellant's sentences. (CR 30). Tex. Code Crim. Proc. art. 42.08 allows a court to cumulate, or "stack," sentences if a defendant has more than one conviction. Tex. Code Crim. Proc. art. 42.08 (West 2009). Although Appellant did not object to the State's request to cumulate his sentences at sentencing, "it is the State's burden to present evidence, and the defendant need not object or present controverting proof that there was no conviction or that he was not the defendant in the prior conviction." *Johnson v. State*, 749 S.W.2d 513, 516 (Tex. App.--- Houston [1st Dist.] 1988, no pet.) (citing *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987)). Therefore, Appellant may raise this issue on direct appeal.

The trial court's decision to cumulate a defendant's sentences is reviewed under an abuse of discretion standard. *See* Tex. Code Crim. Proc. art. 42.08(a) (West 2009); *see also Miller v. State*, 33 S.W.3d 257, 260 (Tex. Crim. App. 2000). The ruling will be upheld if it was within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d

126, 129 (Tex. Crim. App. 2004). However, in order to cumulate a defendant's sentence, the State must introduce *some* evidence to prove that the defendant at trial was the person previously convicted. *See e.g., Miller v. State*, 33 S.W.3d at 262 (Tex. Crim. App. 2000) (defense attorney repeatedly mentioning that defendant was serving time was enough evidence); *Turner*, 733 S.W.2d at 223 (no evidence when only reference to prior conviction was an unsworn statement by prosecutor).

There are several ways that the State could have proven Appellant was the person previously convicted. "They include: (1) Testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him; (2) Stipulation or judicial admission of the defendant that he has been so convicted; (3) Introduction of certified copies of the judgment and sentence and record of the Texas Department of Corrections or a county jail [i]ncluding fingerprints of the accused supported by expert testimony identifying them with known prints of the defendant; and (4) Comparison by the fact finder of a record of conviction which contains photographs and a detailed physical description of the named person, with the appearance of the defendant, present in court." *Daniel v. State*, 585 S.W.2d 688, 690-91 (Tex. Crim. App. 1979) (citations omitted).

**Evidence presented at trial**

The State introduced punishment exhibits one through seven, which were certified copies of judgments. (9 RR 12-13). The supporting witness was Deputy Holdrige. He only confirmed that Mr. Lopez was a confirmed member of the Mexican Mafia. (9 RR 14). He then testified that having U.S. citizens working with the Mexican Mafia made

9

law enforcement's job "a major problem." (9 RR 14). Based on this testimony, the court admitted the exhibits. Defense counsel did not object. (9 RR 15). While handing the admitted exhibits to the court for examination, the prosecutor said, "I don't know whether you know this or not but what I've handed the Court is seven prior offenses by this defendant. Are you aware of that fact?" Deputy Holdrige responded, "Yes, sir. I've looked at his criminal record before." The prosecutor continued, "Okay. Are you also aware of the fact that there is also a murder charge that he was convicted in…Hidalgo County?" Defense counsel lodged an objection during the question, but was overruled. Deputy Holdrige did not answer the question. (9 RR 15). Thereafter, the prosecutor tried several times to elicit testimony that defendants like Mr. Lopez had a high rate of recidivism, but each objection from the defense was sustained. (9 RR 15-19). The last thing Deputy Holdrige was able to testify to on the stand was his "personal opinion…[that] this guy should do life in the penitentiary. He should never get out." (9 RR 19)

The next witness was Texas Ranger Victor Escalon, Jr. (9 RR 21). He was offered as an expert in identifying gang affiliation through tattoos. (9 RR 22-23). He examined undated photographs of Mr. Lopez's tattoos and opined that several of the tattoos were indicative of gang membership. (9 RR 26-28). Ranger Escalon did not state when or where the picture was taken. He was brought into the instant case more than a year after the offense at bar when he was investigating a murder in Weslaco, Texas. (9 RR 30, 32). He discovered Mr. Lopez had an outstanding warrant in Webb County. (9 RR 32). Ranger Escalon spoke with Mr. Lopez, and Mr. Lopez allegedly gave him a confession

000113

regarding the instant case. (9 RR 33). According to Ranger Escalon, Mr. Lopez was going to Laredo in order to carry out a murder-for-hire when he, Mares, and Rodriguez were pulled over. (9 RR 37). The ranger also testified that Mr. Lopez was charged with capital murder stemming from the Weslaco murder. (9 RR 38). What Ranger Escalon did *not* testify to whether Mr. Lopez had any previous convictions.

### Analysis

The State failed to connect Mr. Lopez with any of the judgments it provided at trial. There were seven separate judgments with different defendant names alleged. The defendant's name was listed as Artemio Gonzalo Lopez, Artemio Lopez Gonzalo, Gonzalo Lopez, Artemio Lopez, Gonzalo Artemio Lopez. The first six judgments were to run together. Only one judgment bore a fingerprint that is usually placed on the last page of the judgment. The State did not bring anyone to make a comparison of Mr. Lopez's fingerprint to the fingerprint on the judgment. No one testified that that they knew Mr. Lopez personally and were personally aware of his convictions. *See Timberlake v. State*, 711 S.W.2d 50, 52 (Tex. Crim. App. 1986) (insufficient evidence when deputy picks up defendant along with copy of judgment and sentence because deputy did not have personal knowledge that the defendant was convicted of the offense listed in the judgment and sentence). In fact, the State had trouble even finding the right defendant to arraign in these proceedings. (3 RR 3-12). There was a lot of confusion as to when and where the defendant for this case had been arrested previously. (3 RR 5-6). There is, apparently, more than one person in the Texas prison system with a combination of Appellant's names of Artemio, Gonzalo, and Lopez. (3 RR 5, 7-9).

11

Finally, Mr. Lopez did not take the stand to confirm that he was the same person as listed in the judgments.

In short, the trial court abused its discretion when it granted the State's motion to cumulate his sentence. The proper remedy is for the appellate court to set aside the cumulation order. *See Beedy v. State*, 250 S.W.3d 107, 113 (Tex. Crim. App. 2008). Therefore, this Court should reform the judgment so that this sentence runs concurrent with any prior sentences.

**Issue Two**

**The trial court erred when it refused Appellant's request to give an accomplice instruction to the jury regarding Ramirez. Because the error was preserved and some harm occurred, the conviction should be reversed and remanded for a new trial.**

After both sides rested, defense counsel requested a special instruction in the jury charge that Ramirez was an accomplice as a matter of fact. (8 RR 230-31). Counsel submitted the request in writing, and it was denied by the court. "An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

The importance of an accomplice-witness instruction is that it requires the jury to find there is evidence "tending to connect a defendant to the offense committed" *other than the witness's* to corroborate the commission of the charged offense. Tex. Code Crim. Proc. art. 38.14 (West 2009); *Simpson v. State*, 181 S.W.3d 743, 753 (Tex. App.---

12

Tyler 2005, pet. ref'd) (emphasis added).  The corroborating evidence does not have to directly connect the defendant to the crime or be sufficient to establish guilt, but "it must do more than merely show the commission of the offense."  Tex. Code Crim. Proc. art. 38.14 (West 2009); *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).  It is the jury's decision, not the court's, whether to accept or reject a properly raised defensive theory. *Sparks*, 177 S.W.3d at 132; *Woodfox v. State*, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987).  Thus, if the evidence raises an issue as to the witness's role, if any, then an appellant has the right to that instruction, "whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence."  *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006)

**Application**

In this case, Mares was deemed an accomplice as a matter of law because he was charged with the same offense, *Cocke v. State*, 201 S.W.3d 744, 747-48 (Tex. Crim. App. 2006), so the State needed other evidence connecting Appellant to the attempted capital murder.  The only other person who could provide that was Ramirez.  Ramirez was aware of Mares's status as an active Mexican Mafia member (8 RR 108) and that he was wanted, yet she chose to accompany him.  She was already involved in a case with Mares's ex-wife, yet she chose to go riding around with Mares.  Despite Ramirez's story, there was some evidence that she was an accomplice and not just a passenger.

The Mustang has a one-piece backseat, meaning one must fold the entire seat down.  Ramirez testified that the Mustang's backseat area was very small.  Ramirez

ʋ00116

admitted that she did move when Lopez reached into the back seat. (8 RR 148). In order for her to maneuver around so the seat could collapse, she would have to hand the baby over to someone else or else crush the baby while she allegedly cradled her against herself. Logistically, Ramirez was in a better position to grab the firearm out of the trunk. She specifically denied that she assisted Appellant in getting the bag, moving the seat, or getting the weapon. (8 RR 129). Since the non-accomplice testimony regarding which side the shots came from indicated that all shots were fired from the driver's side, and everyone agreed that Mares was driving and Ramirez was sitting behind Mares (8 RR 110), it is not inconceivable that Ramirez herself pulled the trigger. *See Williams v. State*, No. 04-97-00162-CR, 1998 Tex. App. LEXIS 5948, Sept. 23, 1998, no pet.) (testimony that the rifle "came from either the front or back passenger seat" of the car was "some evidence, other than mere presence, that [a witness] participated in the offense").

**Harm analysis**

"If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). (emphasis added). In this case, the defense properly preserved the error by objecting and informing the court of the instruction it sought. *See* Tex. R. App. P. 33.1. Although a normal *Almanza* harm analysis would consider the degree of harm in light of

14

canned Oct 02, 2013

the entire jury charge, state of the evidence, counsel's arguments, and any other relevant information revealed by the trial record as a whole, when the charge error concerns accomplice-witness instructions, the proper standard is outlined in *Herron v. State*, 86 S.W.3d 621 (Tex. Crim. App. 2002).

Under *Herron*, the strength of a particular item of non-accomplice evidence is determined by its reliability or believability and the strength of its tendency to connect the defendant to the crime. *Id.* at 632. The evidence's reliability "may be satisfied if: (1) there is non-accomplice evidence, and (2) there is no rational and articulable basis for disregarding the non-accomplice evidence or finding that it fails to connect the defendant to the offense." *Id.* at 633.

In the instant case, the non-accomplice evidence[2] consisted of: (1) officer testimony that the gunfire came from the driver's side of the Mustang; (2) Ramirez's testimony that Appellant obtained and prepared the firearm, then handed it to Mares; (3) her testimony that Mares was driving the entire time; (4) her testimony that Mares was the only person to fire at the vehicle beside the Mustang; (5) her testimony that Appellant held the steering wheel; (6) testimony that Mares and Appellant fled on foot while Ramirez stayed behind.

In this case there is a rational and articulable basis for doubting the reliability of Ramirez's testimony that Appellant was the person who aided Mares: Ramirez was already in trouble with the police. Only two days prior, she was sitting in jail on drug-related charges and she was afraid CPS would take her daughter away. After the

000118

shooting incident, she was even more afraid of what might happen to her and/or her daughter. She admitted on the stand that the signed statement she gave to the police did not reflect the truth. Without her testimony as a non-accomplice witness, the State would have an extremely weak case against Appellant. In fact, without Mares's and Ramirez's testimony, the State would not have placed Appellant in the car that night. Mares was caught, but Appellant was not. Additionally, no weapon was ever found.

The police officers all testified that the shots came from the driver's side of the vehicle, where Mares and Ramirez sat. There was no evidence that Appellant was driving the vehicle. Although Mares claimed at trial -- and in direct opposition to all of his previous statements and all other evidence – Appellant actually fired the shots from the passenger seat and through the driver's window area, there was no corroborating evidence. Thus, Ramirez's testimony was the lynchpin to Appellant's conviction. Based on this unclear evidence of Ramirez's participation in the offense, Appellant was entitled to have the jury determine whether Ramirez was an accomplice, and if so, whether there was other corroborating evidence connecting Appellant to the offense.

Appellant was denied the opportunity to let the jury pass on whether Ramirez was an accomplice and then whether there was any other evidence to corroborate her testimony. If the proper instruction had been given, and had the jury found that Ramirez was an accomplice, then it is highly unlikely that Appellant would have been convicted of the offense. This is, without a doubt, "some harm." The judgment, therefore, should be reversed and remanded for a new trial.

---

[2] Mares was an accomplice as a matter of law, and as such, his testimony is not detailed here.

000119

## Issue Three
**The evidence was factually insufficient to find that Appellant was guilty of attempted capital murder; the evidence did not show that he was guilty either as an individual or as a party.**

A factual insufficiency claim may be raised for the first time on appeal, and need not be preserved at the trial court level. *Grayson v. State*, 82 S.W.3d 357, 358-59 (Tex. App.---Austin 2001, no pet.). When reviewing a case for factual insufficiency, the appellate court will review all of the evidence in a neutral light. *Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). Evidence that is legally sufficient to support a jury verdict may still be factually insufficient. *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000). *See also Marshall v. State*, 210 S.W.3d 618, 628 (Tex. Crim. App. 2006), *cert. denied*, 128 S. Ct. 87 (2007). *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006), instructs appellate courts to use the two-part test from *Johnson v. State*: first, the court asks whether the evidence introduced to support the verdict, though legally sufficient, is nevertheless "so weak" that the verdict seems "clearly wrong and manifestly unjust." Second, the court must determine whether the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Id.*

In determining whether the evidence is factually insufficient, the appellate court may not conclude that a conviction is clearly wrong or manifestly unjust merely because it would have acquitted the defendant on the evidence presented. *Watson*, 204 S.W.3d at 417. Additionally, an appellate court may not "declare that a conflict in the evidence justifies a new trial simply because [it] disagrees with the jury's resolution of that

17

conflict." *Id.* Rather, "an appellate court must first be able to say, with some objective basis in the record, that the *great weight and preponderance* of the (albeit legally sufficient) evidence contradicts the jury's verdict before it is justified in exercising its appellate fact jurisdiction to order a new trial." *Id.* (emphasis in original).

When either part of the test is met, an appellate court may find that that the evidence is factually insufficient. *Johnson*, 23 S.W.3d at 27. "Reversal of the judgment and remand for a new trial is the remedy when a court of appeals finds that the evidence is factually insufficient." *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

A conviction may not be sustained on the testimony of an accomplice unless there is other evidence "tending to connect a defendant to the offense committed." Tex. Code Crim. Proc. art. 38.14 (West 2009); *Simpson v. State*, 181 S.W.3d 743, 753 (Tex. App.--- Tyler 2005, pet. ref'd). The corroborating evidence need not directly connect the defendant to the crime or be sufficient by itself to establish guilt, but it must do more than merely show the commission of the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2009); *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The requirement of Article 38.14 is fulfilled if the combined weight of the nonaccomplice evidence tends to connect the defendant to the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).

**Testimony at trial**

The jury charge instructed the jurors to consider Mr. Mares an accomplice if an offense was committed. (CR 40). Mr. Mares's testimony indicated that Mr. Lopez did everything. Thus, there must be other, corroborating evidence that Mr. Lopez did

000121

"everything" in order to connect Mr. Lopez to the offense. There was testimony from various officers, but none of them knew what was going on inside the Mustang. The only testifying eyewitness the State had was Ramirez.

Furthermore, the non-accomplice testimony did not tend to connect Appellant to the attempted capital murder. Ramirez said Mr. Lopez unpacked the weapon and gave it to Mr. Mares. This testimony corroborates only part of Mr. Mares's testimony; however, it is enough to establish some participation in some offense, but not necessarily attempted capital murder. Ramirez stated she asked Mares to let her out of the car when they were pulled over, but he responded that "*he* wasn't going to let them catch him." (8 RR 115) (emphasis added). She did not say anything when asked whether Appellant had a conversation with Mares when they were first pulled over and before Mares took off. (8 RR 115).

This does not show that Mares and Lopez shared some plan to escape or had a similar motive to do so. She later recalled a conversation wherein she thought "they were planning on getting away, they had some people waiting. I don't know who. Because I don't recall who made the call, but they had some people waiting somewhere for backup." (8 RR 137). First, Ramirez's testimony is vague. She did not know who called whom, where the "backup" people were, or really, anything. For all she knew, Appellant and Mares had previous plans to meet with people on wholly unrelated business. Again, this testimony does not tend to link Appellant to the offense in this case.

The verdict in this case seems clearly wrong and manifestly unjust. When examined in a neutral light, and in consideration of the evidence that should have been

00122

excluded because it was uncorroborated accomplice testimony, no rational jury could have found Appellant guilty beyond a reasonable doubt. The great weight and preponderance of evidence to the contrary point to Mares attempting to commit the capital murder, not Appellant. As argued above, there was no credible proof that Appellant was guilty of the offense, either by himself or as a party. For these reasons, Appellant asks this Court to reverse and remand the cause for a new trial.

### Conclusion and Prayer for Relief

WHEREFORE, Appellant prays that this Court reform the judgment to reflect that the sentence should run concurrent with any other causes; reverse and remand for a new trial due to harm in the jury charge and/or factually insufficient evidence; or any other relief to which Appellant is entitled.

Respectfully submitted,

ANGELA J. MOORE
Chief Public Defender

_____
DEBORAH LETZ
Assistant Appellate Public Defender
410 S. Main Ave., Suite 214
San Antonio, Texas 78204
(210) 335-0701
FAX (210) 335-0707
dletz@bexar.org
Bar No. 24035554
ATTORNEYS FOR APPELLANT

20

canned Oct 02, 2013

## Certificate of Service

I hereby certify that a true and correct copy of Appellant's Opening Brief has been mailed to the Webb County District Attorney's Office, 1110 Victoria St., Ste. 401 Laredo, TX 78042-1343, on April 1, 2010.

DEBORAH LETZ
ATTORNEY FOR APPELLANT

000124

canned Oct 02, 2013



*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★



## MEMORANDUM OPINION

No. 04-09-00312-CR

Gonzalo Artemio **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2007-CRO-000452-D-3
Honorable Elma T. Salinas Ender, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  October 13, 2010

AFFIRMED

A jury found appellant, Gonzalo Artemio Lopez, guilty of attempted capital murder and assessed punishment at confinement for life and a $10,000 fine. At the State's request, the trial court ordered appellant's sentence to be served consecutively with the life sentence for a prior conviction for kidnapping. We affirm.

ᴜ00125

## CONSECUTIVE SENTENCING

In his first issue, appellant asserts the trial court abused its discretion when it ordered his sentence to be served consecutively with the sentence for a prior conviction in Hidalgo County because the State failed to adequately link appellant to the prior conviction. We will not disturb the trial court's order absent an abuse of discretion. *Allen v. State*, 951 S.W.2d 925, 928 (Tex. App.—San Antonio 1997, pet. ref'd). A trial court abuses its discretion when it applies an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex. Crim. App. 1996).

The trial court has discretion to order a defendant's sentence to run either concurrently or consecutively with a prior conviction or convictions. TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West 2006). At the time of sentencing, the record must contain at least "some evidence" linking the defendant to the prior conviction. *Miller v. State*, 33 S.W.3d 257, 261 (Tex. Crim. App. 2000). The burden is on the State to present this evidence, and the defendant has no obligation to prove he has no prior convictions. *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987). The State may meet its burden by introducing into evidence a certified copy of the prior judgment and testimony identifying the defendant as the person named in that judgment. *Id.* Absent a certified copy of the prior judgment and accompanying testimony, the State may link the defendant to a prior conviction by live direct testimony, defendant's or defense counsel's admissions, and/or the State's uncontested utterances. *Derrick v. State*, 223 S.W.3d 501, 502 (Tex. App.—Amarillo 2006, no pet.) (citing *Mungaray v. State*, 188 S.W.3d 178, 183 (Tex. Crim. App. 2006)).

000126

In *Derrick v. State*, the Amarillo court of appeals found no abuse of discretion where the trial court cumulated federal and state sentences. *Id.* at 502–03. The court explained:

> [D]uring a conference in open court prior to formal sentencing, the trial court, prosecutor, and defense counsel discussed whether the Texas sentence should run consecutively to the Colorado federal sentences. At that time, no one, including appellant, questioned whether appellant was the subject of those convictions and sentences. Instead, appellant asked that they be ordered to run concurrently with his Texas sentence.

*Id.* The court also noted: "Furthermore, the trial court was handed the case number, style, and sentence involved in the Colorado federal prosecutions. Then, it read that specific information into the reporter's record when pronouncing sentence, again without objection by anyone." *Id.* at 503. Similarly, in *Mungaray v. State*, the Court of Criminal Appeals found adequate evidence linking the defendant to his prior conviction, explaining, "When the trial court stacked appellant's sentence in this case onto the 99 year sentence in the Gaines County case, appellant made no claim that he was not the one convicted in the Gaines County case." *Mungaray*, 188 S.W.3d at 184 n.15. The *Mungaray* Court also found the defendant's admission that a prior conviction was on appeal to be evidence in support of a proper cumulation order. *Id.*

Here, the State introduced a certified copy of appellant's conviction for aggravated kidnapping in Hidalgo County. The copy of the Hidalgo judgment was admitted without objection, but the State's foundation witness, Webb County Sheriff's Deputy Doyle Holdridge, did not testify that appellant is the same defendant previously convicted in Hidalgo. In fact, neither of the State's witnesses who testified at the punishment phase offered evidence conclusively linking appellant to the defendant named in the Hidalgo judgment.

However, during the punishment phase of the trial, the prosecutor referred repeatedly to the Hidalgo conviction. Defense counsel objected to each mention of the Hidalgo conviction on grounds that any reference to the prior felony conviction was impermissible character evidence,

- 3 -

and he was overruled each time. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (West 2006) ("[A]fter a finding of guilty . . . evidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant . . . ."). Defense counsel did not object, however, on the ground that the Hidalgo conviction did not exist or that appellant was not the defendant actually convicted in Hidalgo County. Instead, in response to the prosecutor's mention of the Hidalgo kidnapping, defense counsel stated: "Your Honor, . . . [the prosecutor is] talking about a case that is currently on appeal."

During sentencing, the following exchange occurred when the State urged its motion to cumulate:

| | |
|---|---|
| THE COURT: | We will grant the motion to stack the sentence and this will run after the sentence in the other matter. Is that . . . out of the Valley? There is not . . . an actual cause number? |
| [DEFENSE COUNSEL]: | That's the one. |
| THE COURT: | Is it CR237705A. |
| [PROSECUTOR]: | That's the one I believe out of Hidalgo County. |
| THE COURT: | We will grant the motion and it will be stacked. |

Defense counsel did not object to the trial court's entering of the correct cause number for the Hidalgo conviction; in fact, he confirmed it was correct.

We conclude the trial court did not abuse its discretion because there was sufficient evidence before it to properly order the sentences to run consecutively.

## ACCOMPLICE INSTRUCTION

In his second issue, appellant alleges the trial court erred by refusing to give the jury an accomplice instruction regarding Lucia Ramirez. An accomplice participates before, during, or after the commission of the offense and acts with the culpable mental state required for the offense. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). An accomplice must

-4-

canned Oct 02, 2013

commit an affirmative act that promotes commission of the offense. *Id.* As a matter of law, an accomplice is one who is susceptible to prosecution for the same offense as the defendant or for a lesser-included offense. *Id.* Mere presence during commission of the offense does not make one an accomplice. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). Failure to disclose or even active concealment of a known offense also does not make one an accomplice. *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999); *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). The critical question for the court of appeals is not whether the alleged accomplice has been charged, but whether there is sufficient evidence in the record to support a charge. *Blake*, 971 S.W.2d at 455.

Where the evidence clearly shows that a witness is an accomplice as a matter of law, the trial court has a duty to instruct the jury to consider the witness an accomplice. *Paredes*, 129 S.W.3d at 536; *Blake*, 971 S.W.2d at 455. If the evidence is unclear, the trial court must provide a definition of "accomplice" and instruct the jury to consider the witness an accomplice if it finds the witness meets the definition provided. *Paredes*, 129 S.W.3d at 536. Where the evidence clearly shows that a witness is not an accomplice as a matter of law, no instruction must be given. *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987). Thus, we must examine the record for evidence showing whether Ramirez was an accomplice.

On the evening of May 11, 2004, appellant, Luis Carlos Mares, and Ramirez, who was holding her three-month-old daughter in her lap, were traveling through Zapata County in a red Ford Mustang. Mares was driving the vehicle, appellant rode in the front passenger seat, and Ramirez and her daughter sat in the back seat behind the driver. Two Zapata County sheriff's deputies observed the Mustang speeding and attempted to pull the vehicle over. The Mustang sped away from the deputies and headed north toward Webb County with the Zapata County

000129

deputies in pursuit. Two Webb County sheriff's deputies, Esteban Paez, Jr. and Francisco Fuentes, took up the pursuit when the Mustang entered Webb County.

A high-speed chase ensued, during which the deputies from both Zapata and Webb Counties claimed shots were fired at them from the driver's side of the Mustang. When Deputy Fuentes attempted to pass the Mustang on the left, shots were fired directly at him, causing his vehicle to veer off the road. The Mustang eventually slowed down and stopped, and Mares and appellant abandoned the vehicle on foot. Mares was apprehended the next day. He pleaded guilty to attempted capital murder of a police officer, Deputy Fuentes, and was sentenced to sixty years' confinement.

Appellant was not immediately apprehended. On February 17, 2006, he was convicted in Hidalgo County for aggravated kidnapping, which took place after he fled the car chase, and was assessed fifteen years' confinement. He was subsequently charged and convicted in this case after beginning to serve his term for the Hidalgo offense. At appellant's trial, Mares testified he did not shoot at the deputies and it was appellant who was the shooter.

Ramirez did not flee when the chase ended, and the deputies found her in the back seat of the Mustang, still holding her daughter. Ramirez was arrested for evading arrest and spent only a few days in county jail. At appellant's trial, she testified that during the chase, she moved so that appellant could collapse the back seat of the Mustang and reach into the trunk, from which he retrieved a duffel bag containing a large firearm. According to Ramirez, appellant handed the firearm to Mares, who then used it to shoot at the deputies while driving the Mustang.

Appellant argues Ramirez is an accomplice to the attempted capital murder because Ramirez knew of Mares's membership in the Mexican Mafia, a Mexican-American prison gang, when she chose to accompany him in the Mustang. Mere knowledge of a person's criminal past

000130

canned Oct 02, 2013

or affiliations is insufficient to make one an accomplice to an offense committed in his or her presence. *See Gamez*, 737 S.W.2d at 322 ("If a State's witness has no complicity in the offense for which an accused is on trial, his or her testimony is not that of an accomplice witness whatever may have been his complicity with the accused in the commission of other offenses." (citations omitted)). Ramirez testified without contradiction that she believed she and her infant daughter were accompanying Mares and appellant to Roma, Texas in order to retrieve a vehicle Mares owned.

Appellant also contends Ramirez is an accomplice because she was in a better position than appellant to grab the firearm from the trunk of the Mustang and hand it to Mares, and because it is not inconceivable that Ramirez herself fired the weapon at the police. There is no evidence in the record indicating Ramirez was anything other than a mere passenger in the Mustang. Ramirez testified without contradiction that she did not help appellant collapse the back seat of the car or remove the firearm from the trunk, nor did she handle the firearm in any way at any time. Ramirez remained inside the vehicle after Mares and appellant fled, and she peacefully surrendered to the police while still holding her infant daughter in her arms. There is simply no evidence in the record before this court to support a charge of attempted capital murder against Ramirez.

Because we find no evidence in the record indicating Ramirez was an accomplice, the trial court had no duty to grant appellant's request for an accomplice instruction and did not err in refusing to do so.

## FACTUAL INSUFFICIENCY OF THE EVIDENCE

In his third issue, appellant argues the evidence is factually insufficient to support the verdict. When considering a factual sufficiency challenge to the jury's verdict, we will order a

canned Oct 02, 2013

new trial only where the verdict represents a manifest injustice because the State's evidence, although legally sufficient, is nevertheless too weak to withstand scrutiny. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). We review the evidence in the light most favorable to the verdict. *Brooks v. State*, No. PD-0210-09 (Tex. Crim. App. Oct. 6, 2010) (citing *Jackson v. Virginia*, 44 U.S. 307, 319 (1979)).

Ramirez testified that appellant retrieved the firearm from the trunk of the car and handed it to Mares, who then shot at the deputies. Therefore, her testimony supports a finding that appellant was at least a party to the attempted crime.[1] By retrieving the firearm and handing it to Mares, appellant actively participated in commission of the attempted capital murder. Accordingly, the jury properly relied on Ramirez's non-accomplice testimony to support its verdict.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

DO NOT PUBLISH

---

[1] The jury was charged that it could find appellant guilty by either acting alone or as a party to the attempted capital murder.

000132

2006 — CRO — 452 — D3 (a)

| | | |
|---|---|---|
| Ex Parte | § | In The 341st Judicial |
| Gonzalo Artemio Lopez | § | District Court of |
| Applicant | § | Webb County, Texas |



### Applicant's Request to Receive a Copy of Orders ~~Sent~~ Signed By the Court Regarding This Habeas Corpus Case

To the Honorable Judge of Said Court:

I, Gonzalo Artemio Lopez, received a copy of an affidavit and response from a Lori O. Miller from the Bexar County Public Defender's Office. This affidavit and response is for something that this Court sent, I assume, to Deborah Letz, my appellate attorney.

I don't know what this Court ordered my appellate attorney to answer or if it permitted someone else to answer on her behalf because I never received any Orders that were sent to these individuals.

Therefore, I am being prejudiced because I cannot properly respond to this affidavit and response without knowing what this Court ordered from these individuals.

### Conclusion

I need for this Court to send me a copy of everything that this Court orders in my case so that I can properly litigate this habeas ~~corpu~~ corpus.

### Prayer

I pray that this Court orders the Clerk to send me a copy of every Order that ~~has~~ has been signed and will be singed by this Court regarding this 11.07 habeas corpus case.

1

Respectfully Submitted

*Gonzalo A. Lopez*
Gonzalo Artemio Lopez
#1349716 Connally Unit
899 F.M. 632
Kenedy, Texas 78119
Pro Se Applicant


Certificate of Service

I certify that a true and correct copy of the foregoing request was placed in the prison mailing system, with first class prepaid postage, on September 14, 2012, and mailed to: Esther Degollado
Webb County District Clerk
P.O. Box 667
Laredo, Texas 78042
and,

David L. Reuthinger Jr.
Assistant Dist. Att'y
1110 Victoria St. Ste 401
Lardedo, Texas 78040

*Gonzalo A. Lopez*
Pro se, Applicant.

000124

September 14, 2012

Esther Degollado
Webb County District Clerk
P.O. Box 667
Laredo, Tx. 78042



Re: Applicant's Request to Receive a Copy of All Orders
Signed By the Court Regarding This Habeas Corpus Case-
Cause No. 2006-CRO-452-D3 (1), Ex parte Gonzalo
Artemio Lopez, 341st Judicial District Court.

Dear Clerk,
         Please accept for filing Applicant's Request, in
the referred case, along with the other papers and please
bring this to the Court's attention.
         Thank you for your kind assistance on this matter.

Sincerely
Gonzalo A. Lopez
Gonzalo Artemio Lopez
#1349716 Connally Unit
899 F.M. 632
Kenedy Tx. 78119
Pro Se Applicant

Gonzalo A. Lopez
#13149716 Connally Unit
899 F.M. 632
Kenedy, Tx. 78119

SAN ANTONIO TX 780
14 SEP 2012 PM 4 L

2012 SEP 17 AM 9: 11

ESTHER DEGOLLADO
CLERK OF THE DIST. COURT
& COUNTY COURTS AT LAW

FILED
WEBB COUNTY, TEXAS

BY _____ DEPUTY

7804206676 7

Esther Degollado
Webb County District Clerk
P.O. Box 667
Laredo, Tx. 78042

Justice
FOR...

CAUSE NO. 2006 CRO 452 - D3

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| GONZALO ARTEMIO LOPEZ, | § | 341ST JUDICIAL DISTRICT |
| | § | |
| PETITIONER | § | WEBB COUNTY, TEXAS |

## TRIAL COUNSEL'S RESPONSE TO WRIT OF HABEAS CORPUS

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES, **FAUSTO SOSA**, trial counsel for **GONZALO ARTEMIO LOPEZ**, Applicant and submits this sworn response to Applicant's claims of ineffective assistance of trial counsel. Applicant asserts five instances where trail counsel was ineffective, to-wit:

1. " *Failure to object to the unconstitutional jury charge which omitted an essential element of the offense,*"

2. *"Preventing me [Lopez] from testifying and failing to call me as a witness,*"

3. *"Failing to file a motion in limine,*"

4. *"Failure to object to extraneous acts evidence, and"*

5. *"Failed to request limiting instructions on the jury charge."*

### FAILURE TO OBJECT TO JURY CHARGE

Trial counsel reviewed the jury charge and objected to the non-inclusion of the accomplice instruction, the court granted the request. See, R.R. Vol. 8 at p.229. Moreover, the application paragraph correctly charges the crime of Attempted Capital Murder. In the Charge, the Court defined the crime of attempted capital murder in paragraph one and thereafter the application paragraph was precisely tapered to the facts of this case.

000137

A general verdict of "guilty" to the charge of Attempted Capital Murder was returned by the jury thereby finding all of the elements of the crime having been proven beyond a reasonable doubt to there satisfaction.  Also, see the Reporter's Record Vol. 10 States' Exhibits #5, #6, #7, and #8 which depict the bullet holes in the police unit that Deputy Fuentes was driving at the time of the crime in question.

### NOT CALLING THE DEFENDANT TO TESTIFY

The Defendant's election not to testify was his own choice.  He knew that the State would impeach him by the use of his prior convictions.  Trial counsel has over 24 years of criminal trial experience and it was part of sound trial strategy for the defendant not to testify if he has prior convictions.  Moreover, the following transpired in connection with this issue:

> *"Counsel approach:  How many witnesses do you have?*
>
> MR. SOSA:    *May I just have a brief five-minute talk with my client, Your Honor? To be quite honest, Your Honor, I would love for him to testify. He has a lot of convictions. And let me see if I can talk to - - talk some sense into him because I really need to come up clarify some issues. But he does have those priors."*
> (R.R. Vol. 8 p. 228)

### FAILING TO FILE A MOTION IN LIMINE

Pursuant to the Webb County District Attorney Official "Open File Policy" an entire copy of the Prosecutor's file was made available to defense counsel.  In turn, defense counsel made a copy of the same and delivered it to Defendant, Gonzalo Artemio Lopez. In connection with this matter, the following colloquially appears of record in open court:

> *"THE COURT:*    *And you are also known as Gonzalo Artemio:*
> *THE DEFENDANT:*    *That's my first name, Gonzalo Artemio Lopez*
> *THE COURT:*    *Okay.*

> MR. SOSA:        *This is an arraignment.*
> THE COURT:       *Do you want the indictment read?*
> MR. SOSA:        *No, Your Honor. At this time, we enter a plea of not guilty to each and every allegation contained in the indictment, Your Honor. Request trial by jury and we'll waive the formal reading of the same. This morning I made copies of the entire file, Your Honor, and I gave it to my client. He's got everything inside.* "
> (R.R. Vol. 4 p.4)

Since trial counsel and Defendant were aware of all of the evidence that could be used to be against said Defendant there was no need to file any pre-trial motions including a Motion in-Limine.

### FAILURE TO OBJECT TO EXTRANEOUS ACTS EVIDENCE

Applicant states in his Writ that trial counsel did not object to extraneous acts specifically his gang/cartel affiliations. A review of the Reporter's Record demonstrates that this claim is without merit and wholly untrue. In Vol. 8 pps. 92-104, the trial record confirms, that there was a long and rigorous objection, outside the presence of the jury, to the matters raised by Gonzalo Artemio Lopez herein which said objection was DENIED and OVERRULED.

### FAILED TO REQUEST LIMITING INSTRUCTIONS ON THE JURY CHARGE

Applicant states in his Writ that trial counsel did not request limiting instructions on the extraneous acts concerning his gang/cartel affiliations. A review of the record shows that trial counsel in fact did request a limiting instruction contemporaneously with the objection which was denied and overruled by the court. See, R.R. Vol. 8 p. 101-102 and p.103-104.

Respectfully Submitted,

FAUSTO SOSA
TRIAL COUNSEL

000139

## AFFIDAVIT

THE STATE OF TEXAS     §

                            §     **KNOW ALL MEN BY THESE PRESENTS:**

COUNTY OF WEBB       §

      BEFORE ME, the undersigned authority, personally appeared Fausto Sosa, who upon his oath, deposed and stated:

      "I served as the Trial Attorney for Applicant in Case No. 2006-CRO-452-D3. I have never been convicted of a crime and I am otherwise competent to make this affidavit. I have personal knowledge of the facts contained in the forgoing Response to Writ of Habeas Corpus and I am authorized to make this affidavit.

      "I have read the forgoing Response to Writ of Habeas Corpus and state that all the facts contained therein are within my personal knowledge and the same are true and correct.

      SIGNED on September 20, 2012.

_____
Fausto Sosa, Affiant

*FILED*
*2012 SEP 25 PM 3:09*
*WEBB COUNTY, TEXAS*
*ESTHER DEGOLLADO*
*CLERK OF THE DIST. COURTS*
*& COUNTY COURTS AT LAW*
*BY_____ DEPUTY*

      **SUBSCRIBED AND SWORN TO BEFORE ME** the undersigned authority by the said Fausto Sosa to which witness my hand and seal of office on this the 20th day of September, 2012.

_____
NOTARY PUBLIC

**MELISSA ANNETTE NEIRA**
Notary Public, State of Texas
My Commission Expires
June 30, 2013

canned Oct 02, 2013

## In the 341ˢᵗ District Court of Webb County, Texas

| | | | |
|---|---|---|---|
| **Ex Parte** | §§ | | |
| | §§ | | |
| **GONZALO ARTEMIO LOPEZ** | §§ | No. WR-_____ | |
| | §§ | | |
| *Applicant* | §§ | | |
| | §§ | Trial Court No. 2006CRD000452-D3(a) | |



### Trial Court's Finding – No Previously Unresolved or Controverted Issues of Facts

This Court has reviewed the Applicant's Application for Writ of Habeas Corpus, Applicant's supplemental response, the affidavits of the Bexar County Assistant Appellate Public Defender, former lead and assistant prosecutors, defense trial counsel, the State's memorandum of law in response, the authorities cited, the Court's file and docket sheet, and makes the following finding: That there are no previously unresolved or controverted facts material to the legality of the applicant's confinement.

The Court makes the following additional findings of fact and conclusions of law:

1. Gonzalo Artemio Lopez was found guilty by a jury of attempted capital murder and that same jury assessed a punishment of confinement for life and a $10,000 fine.

2. At the State's request, the trial court ordered that the life sentence be served consecutively after the prior conviction for the offense of Aggravated Assault, in cause number CRO 386-96-A.

3. Applicant filed a previous writ No. WR-71,030-01 asking that an out of time appeal be granted. This court entered findings as requested by the Honorable Court of Criminal Appeals and recommended that the request be granted and it was.

1



4. The conviction was affirmed by the Honorable Fourth Court of Appeals in 04-09-00312-CR.

5. Ground One: 6th and 14th Amendment due process violations. The State failed to present evidence on an essential element of the offense.

   a. There was sufficient evidence presented at trial to support the fact that the victim was a peace officer.

   b. Applicant admits in his application that there was testimony that the victim was a sheriff's deputy.

   c. There was communication between Applicant and appellate counsel to explain why appellate counsel was not raising the "no evidence" issue because appellate counsel deemed it frivolous given there was testimony by a number of witnesses establishing by inference that the victim was a deputy sheriff.

   d. Applicant has failed to show that counsel's performance fell below an objective standard of reasonableness and that but for the alleged counsel's unprofessional errors, the result would have been different.

   e. There is a strong presumption that the actions of counsel fell within the wide range of reasonable professional behavior and discretion.

   f. Applicant has not shown how the result would have been different but for appellate counsel's unprofessional errors.

6. Ground Two: 6th and 14th Amendment right to effective assistance of counsel on appeal.

   a. There was sufficient evidence presented at trial to support the fact that the victim was a peace officer.

2

00142



b.  Applicant admits that there was testimony that the victim was a sheriff's deputy.

c.  Appellate counsel argued legal insufficiency.

d.  There was communication between Applicant and appellate counsel to explain why appellate counsel was not raising "no evidence" issue because appellate counsel deemed it frivolous given there was testimony by a number of witnesses establishing by inference that the victim was a deputy sheriff.

e.  Appellate counsel also explained in a letter to Applicant that although there were many references to Applicant's gang membership and his purpose of his trip, they were held outside the hearing of the jury.

f.  Appellate counsel also explained in a letter to Applicant that there was only one reference in front of the jury and that was in the context of being a former member.

g.  Appellate counsel also explained that reference was not strong enough to raise a point of error because errors in the admission of evidence are considered under a lenient standard and are very rarely the basis of reversal.

h.  Applicant has failed to establish a claim of ineffective assistance of counsel.

i.  Applicant has failed to show that counsel's performance fell below an objective standard of reasonableness and that but for the alleged counsel's unprofessional errors, the result would have been different.

j.  There is a strong presumption that the actions of counsel fell within the wide range of reasonable professional behavior and discretion.

k.  Applicant has not shown how the result would have been different but for appellate counsel's unprofessional errors.

3



7.  Ground Three:  6th Amendment right to effective assistance of counsel.

   a.  State's theory of Applicant's involvement in the commission of the offense was as a party.

   b.  The trial record is clear that defense counsel asked for a recess to discuss with applicant whether he would testify citing on the record that it would be helpful to have him testify to clear up some issues but that applicant had prior convictions that could be used to impeach him.

   c.  Trial counsel did not call applicant to the stand after the discussion held in private during the recess.

   d.  Trial counsel in his affidavit states that the applicant chose not to testify of his own accord.

   e.  The trial record is clear that a copy of the entire district attorney's file was made available to defense counsel at the time of the initial appearance.

   f.  The trial record is clear that defense counsel did make objections and requested limiting instructions to applicant's gang/cartel affiliations.

   g.  Applicant's status in the Mexican Mafia was relevant connecting him to the murder.

   h.  Even if the gang evidence was erroneously admitted, counsel would not have been held ineffective if the gang membership evidence is overshadowed by other evidence that connects Applicant to the crime.

4

canned Oct 02, 2013



i. The Fourth Court of Appeals noted in Appellant's case at <u>Lopez</u>, 2010 Tex. App. LEXIS 8226 that there is sufficient evidence in the record that applicant participated in the commission of the offense citing the testimony of the witness, "Ramirez testified that appellant retrieved the firearm from the trunk of the car and handed it to Mares, who then shot at the deputies…"

j. Applicant fails to show how trial counsel's performance fell below an objective standard of reasonableness and that but for the alleged counsel's unprofessional errors, the result would have been different.

SIGNED THIS 7TH DAY OF OCTOBER, 2012.

Elma Teresa Salinas Ender

5

00145

CERTIFICATE

THE STATE OF TEXAS

COUNTY OF WEBB

I, ESTHER DEGOLLADO, CLERK OF THE 341ST JUDICIAL DISTRICT COURT, IN AND FOR WEBB COUNTY, STATE OF TEXAS, DO HEREBY CERTIFY THAT THE ABOVE FOREGOING ARE TRUE AND CORRECT COPIES OF ALL PROCEEDINGS HAD IN THE CASE OF :

EX PARTE: ARTEMIO GONZALO LOPEZ    WRIT NO. 2006CRO452-D3 (B)

ELMA  TERESA  SALINAS ENDER, JUDGE PRESIDING AS THE SAME APPEAR FROM THE ORIGINALS NOW ON FILE AND OF RECORD IN THIS OFFICE.

GIVEN UNDER MY HAND SEAL OF SAID COURT OF OFFICE IN THE CITY OF LAREDO, TEXAS ON THIS 9TH  DAY OF OCTOBER, 2012.

ESTHER DEGOLLADO
CLERK OF THE DISTRICT COURT
WEBB COUNTY, TEXAS

BY

DEPUTY

000146

Isidro Alaniz _____ Attorney _____ for Appellant _____

P.O. Box 1343, LAredo, TX 78042 _____ P.O. Address

Antonio Gonzalo Lopez # 1349716 _____ Attorney _____ for Appellee _____

899 FM 632, Connally Unit, Kenedy, TX 78119 _____ P.O. Address

E-619

No. 2006080453-D3 (B)

TEXAS COUNTY PRINTING & SERVICES

Antonio Gonzalo Lopez

Appellant _____ Plaintiff _____ in Error,

vs.

THE STATE OF TEXAS

From the 341st Court of _____ Webb _____ County

Appellee _____ Defendant _____ in Error

Applied for by _____ Pro Se

for _____, on the 9th day of October, Attorney

A.D. 2012 and delivered to Court of Appeals

Austin, TX

on the 9th day of October A.D. 2012

34/1st Court,

By: Esther Revillado District Clerk,

County, Texas

By: Maria Webb County Clerk,

By: Deputy Clerk

Filed in Court of Appeals, _____, Texas, the

_____ day of _____, A.D. 19 _____

_____, Clerk,
Court of Appeals

By: _____

_____ Deputy.



BOOKMARK PAGE

Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-09-00312-CR

Gonzalo Artemio **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2007-CRO-000452-D-3
Honorable Elma T. Salinas Ender, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  October 13, 2010

AFFIRMED

A jury found appellant, Gonzalo Artemio Lopez, guilty of attempted capital murder and assessed punishment at confinement for life and a $10,000 fine. At the State's request, the trial court ordered appellant's sentence to be served consecutively with the life sentence for a prior conviction for kidnapping. We affirm.

canned Oct 02, 2013

### CONSECUTIVE SENTENCING

In his first issue, appellant asserts the trial court abused its discretion when it ordered his sentence to be served consecutively with the sentence for a prior conviction in Hidalgo County because the State failed to adequately link appellant to the prior conviction. We will not disturb the trial court's order absent an abuse of discretion. *Allen v. State*, 951 S.W.2d 925, 928 (Tex. App.—San Antonio 1997, pet. ref'd). A trial court abuses its discretion when it applies an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion. *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex. Crim. App. 1996).

The trial court has discretion to order a defendant's sentence to run either concurrently or consecutively with a prior conviction or convictions. TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West 2006). At the time of sentencing, the record must contain at least "some evidence" linking the defendant to the prior conviction. *Miller v. State*, 33 S.W.3d 257, 261 (Tex. Crim. App. 2000). The burden is on the State to present this evidence, and the defendant has no obligation to prove he has no prior convictions. *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987). The State may meet its burden by introducing into evidence a certified copy of the prior judgment and testimony identifying the defendant as the person named in that judgment. *Id.* Absent a certified copy of the prior judgment and accompanying testimony, the State may link the defendant to a prior conviction by live direct testimony, defendant's or defense counsel's admissions, and/or the State's uncontested utterances. *Derrick v. State*, 223 S.W.3d 501, 502 (Tex. App.—Amarillo 2006, no pet.) (citing *Mungaray v. State*, 188 S.W.3d 178, 183 (Tex. Crim. App. 2006)).

In *Derrick v. State*, the Amarillo court of appeals found no abuse of discretion where the trial court cumulated federal and state sentences. *Id.* at 502–03. The court explained:

> [D]uring a conference in open court prior to formal sentencing, the trial court, prosecutor, and defense counsel discussed whether the Texas sentence should run consecutively to the Colorado federal sentences. At that time, no one, including appellant, questioned whether appellant was the subject of those convictions and sentences. Instead, appellant asked that they be ordered to run concurrently with his Texas sentence.

*Id.* The court also noted: "Furthermore, the trial court was handed the case number, style, and sentence involved in the Colorado federal prosecutions. Then, it read that specific information into the reporter's record when pronouncing sentence, again without objection by anyone." *Id.* at 503. Similarly, in *Mungaray v. State*, the Court of Criminal Appeals found adequate evidence linking the defendant to his prior conviction, explaining, "When the trial court stacked appellant's sentence in this case onto the 99 year sentence in the Gaines County case, appellant made no claim that he was not the one convicted in the Gaines County case." *Mungaray*, 188 S.W.3d at 184 n.15. The *Mungaray* Court also found the defendant's admission that a prior conviction was on appeal to be evidence in support of a proper cumulation order. *Id.*

Here, the State introduced a certified copy of appellant's conviction for aggravated kidnapping in Hidalgo County. The copy of the Hidalgo judgment was admitted without objection, but the State's foundation witness, Webb County Sheriff's Deputy Doyle Holdridge, did not testify that appellant is the same defendant previously convicted in Hidalgo. In fact, neither of the State's witnesses who testified at the punishment phase offered evidence conclusively linking appellant to the defendant named in the Hidalgo judgment.

However, during the punishment phase of the trial, the prosecutor referred repeatedly to the Hidalgo conviction. Defense counsel objected to each mention of the Hidalgo conviction on grounds that any reference to the prior felony conviction was impermissible character evidence,

- 3 -

and he was overruled each time. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (West 2006) ("[A]fter a finding of guilty . . . evidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant . . . ."). Defense counsel did not object, however, on the ground that the Hidalgo conviction did not exist or that appellant was not the defendant actually convicted in Hidalgo County. Instead, in response to the prosecutor's mention of the Hidalgo kidnapping, defense counsel stated: "Your Honor, . . . [the prosecutor is] talking about a case that is currently on appeal."

During sentencing, the following exchange occurred when the State urged its motion to cumulate:

| THE COURT: | We will grant the motion to stack the sentence and this will run after the sentence in the other matter. Is that . . . out of the Valley? There is not . . . an actual cause number? |
| [DEFENSE COUNSEL]: | That's the one. |
| THE COURT: | Is it CR237705A. |
| [PROSECUTOR]: | That's the one I believe out of Hidalgo County. |
| THE COURT: | We will grant the motion and it will be stacked. |

Defense counsel did not object to the trial court's entering of the correct cause number for the Hidalgo conviction; in fact, he confirmed it was correct.

We conclude the trial court did not abuse its discretion because there was sufficient evidence before it to properly order the sentences to run consecutively.

### ACCOMPLICE INSTRUCTION

In his second issue, appellant alleges the trial court erred by refusing to give the jury an accomplice instruction regarding Lucia Ramirez. An accomplice participates before, during, or after the commission of the offense and acts with the culpable mental state required for the offense. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). An accomplice must

commit an affirmative act that promotes commission of the offense. *Id.* As a matter of law, an accomplice is one who is susceptible to prosecution for the same offense as the defendant or for a lesser-included offense. *Id.* Mere presence during commission of the offense does not make one an accomplice. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). Failure to disclose or even active concealment of a known offense also does not make one an accomplice. *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999); *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). The critical question for the court of appeals is not whether the alleged accomplice has been charged, but whether there is sufficient evidence in the record to support a charge. *Blake*, 971 S.W.2d at 455.

Where the evidence clearly shows that a witness is an accomplice as a matter of law, the trial court has a duty to instruct the jury to consider the witness an accomplice. *Paredes*, 129 S.W.3d at 536; *Blake*, 971 S.W.2d at 455. If the evidence is unclear, the trial court must provide a definition of "accomplice" and instruct the jury to consider the witness an accomplice if it finds the witness meets the definition provided. *Paredes*, 129 S.W.3d at 536. Where the evidence clearly shows that a witness is not an accomplice as a matter of law, no instruction must be given. *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987). Thus, we must examine the record for evidence showing whether Ramirez was an accomplice.

On the evening of May 11, 2004, appellant, Luis Carlos Mares, and Ramirez, who was holding her three-month-old daughter in her lap, were traveling through Zapata County in a red Ford Mustang. Mares was driving the vehicle, appellant rode in the front passenger seat, and Ramirez and her daughter sat in the back seat behind the driver. Two Zapata County sheriff's deputies observed the Mustang speeding and attempted to pull the vehicle over. The Mustang sped away from the deputies and headed north toward Webb County with the Zapata County

canned  Oct 02, 2013

deputies in pursuit.  Two Webb County sheriff's deputies, Esteban Paez, Jr. and Francisco Fuentes, took up the pursuit when the Mustang entered Webb County.

A high-speed chase ensued, during which the deputies from both Zapata and Webb Counties claimed shots were fired at them from the driver's side of the Mustang.  When Deputy Fuentes attempted to pass the Mustang on the left, shots were fired directly at him, causing his vehicle to veer off the road.  The Mustang eventually slowed down and stopped, and Mares and appellant abandoned the vehicle on foot.  Mares was apprehended the next day.  He pleaded guilty to attempted capital murder of a police officer, Deputy Fuentes, and was sentenced to sixty years' confinement.

Appellant was not immediately apprehended.  On February 17, 2006, he was convicted in Hidalgo County for aggravated kidnapping, which took place after he fled the car chase, and was assessed fifteen years' confinement.  He was subsequently charged and convicted in this case after beginning to serve his term for the Hidalgo offense.  At appellant's trial, Mares testified he did not shoot at the deputies and it was appellant who was the shooter.

Ramirez did not flee when the chase ended, and the deputies found her in the back seat of the Mustang, still holding her daughter.  Ramirez was arrested for evading arrest and spent only a few days in county jail.  At appellant's trial, she testified that during the chase, she moved so that appellant could collapse the back seat of the Mustang and reach into the trunk, from which he retrieved a duffel bag containing a large firearm.  According to Ramirez, appellant handed the firearm to Mares, who then used it to shoot at the deputies while driving the Mustang.

Appellant argues Ramirez is an accomplice to the attempted capital murder because Ramirez knew of Mares's membership in the Mexican Mafia, a Mexican-American prison gang, when she chose to accompany him in the Mustang.  Mere knowledge of a person's criminal past

canned  Oct 02, 2013

or affiliations is insufficient to make one an accomplice to an offense committed in his or her presence. *See Gamez*, 737 S.W.2d at 322 ("If a State's witness has no complicity in the offense for which an accused is on trial, his or her testimony is not that of an accomplice witness whatever may have been his complicity with the accused in the commission of other offenses." (citations omitted)). Ramirez testified without contradiction that she believed she and her infant daughter were accompanying Mares and appellant to Roma, Texas in order to retrieve a vehicle Mares owned.

Appellant also contends Ramirez is an accomplice because she was in a better position than appellant to grab the firearm from the trunk of the Mustang and hand it to Mares, and because it is not inconceivable that Ramirez herself fired the weapon at the police. There is no evidence in the record indicating Ramirez was anything other than a mere passenger in the Mustang. Ramirez testified without contradiction that she did not help appellant collapse the back seat of the car or remove the firearm from the trunk, nor did she handle the firearm in any way at any time. Ramirez remained inside the vehicle after Mares and appellant fled, and she peacefully surrendered to the police while still holding her infant daughter in her arms. There is simply no evidence in the record before this court to support a charge of attempted capital murder against Ramirez.

Because we find no evidence in the record indicating Ramirez was an accomplice, the trial court had no duty to grant appellant's request for an accomplice instruction and did not err in refusing to do so.

## FACTUAL INSUFFICIENCY OF THE EVIDENCE

In his third issue, appellant argues the evidence is factually insufficient to support the verdict. When considering a factual sufficiency challenge to the jury's verdict, we will order a

canned Oct 02, 2013

new trial only where the verdict represents a manifest injustice because the State's evidence, although legally sufficient, is nevertheless too weak to withstand scrutiny. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). We review the evidence in the light most favorable to the verdict. *Brooks v. State*, No. PD-0210-09 (Tex. Crim. App. Oct. 6, 2010) (citing *Jackson v. Virginia*, 44 U.S. 307, 319 (1979)).

Ramirez testified that appellant retrieved the firearm from the trunk of the car and handed it to Mares, who then shot at the deputies. Therefore, her testimony supports a finding that appellant was at least a party to the attempted crime.[1] By retrieving the firearm and handing it to Mares, appellant actively participated in commission of the attempted capital murder. Accordingly, the jury properly relied on Ramirez's non-accomplice testimony to support its verdict.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

DO NOT PUBLISH

---

[1] The jury was charged that it could find appellant guilty by either acting alone or as a party to the attempted capital murder.

- 8 -