IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| GONZALO ARTEMIO LOPEZ, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 5:13-CV-167 |
| | § | |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

**RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
WITH BRIEF IN SUPPORT**

Petitioner Gonzalo Artemio Lopez was convicted of attempted capital murder and sentenced to life imprisonment by a Texas state court. The petition should be dismissed with prejudice because Lopez's claims are unexhausted, procedurally barred and lack merit.

## JURISDICTION

Lopez seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and the parties as Lopez was convicted within this Court's jurisdiction.

## PETITIONER'S ALLEGATIONS

The Director understands Lopez to allege that he is entitled to federal habeas relief on the following grounds:

1.    The evidence is legally insufficient to support his conviction.

2.    His trial counsel was ineffective for:
   a.    failing to file pretrial motions;

      b.     failing to object to the introduction of extraneous offenses;

      c.     failing to request a limiting instruction;

      d.     failing to call Lopez as a witness and preventing him from testifying; and

      e.     failing to object to the jury charge.

3.     His appellate counsel was ineffective for failing to raise grounds on appeal.

Fed. Writ Pet. 6–7.

## GENERAL DENIAL

The Director denies all of Lopez's assertions of fact except those supported by the record or specifically admitted herein.

## STATEMENT OF THE CASE

### I.    Procedural History

Lopez challenges the Director's custody of him pursuant to a judgment and sentence of the 341st Judicial District Court of Webb County, Texas, in cause number 2006CRO452-D3. CR[1] 59–62. Lopez was charged with attempted capital murder, with two prior convictions alleged for the enhancement of punishment. *Id.* at 9. On December 13, 2007, the jury found Lopez guilty as charged and sentenced him to life imprisonment and a fine of $10,000, to be served consecutively to his sentences for capital murder and kidnaping. *Id.* at 59–62.

Lopez's conviction was affirmed by the Fourth Court of Appeals of Texas on October 13, 2010. *Lopez v. State*, No. 04–09–00312–CR, slip op. (Tex. App.—San Antonio 2010, pet. ref'd.). Lopez's petition for discretionary

---

[1] "CR" refers to the Clerk's Record of pleadings and documents filed with the trial court. "SHCR" refers to the written pleadings contained within *Ex parte Lopez*, No. 71,030–04, followed by the writ number.

review (PDR) was refused by the Texas Court of Criminal Appeals. *Lopez v. State*, No. PD–1571–10 (Tex. Crim. App. March 16, 2011).

Lopez filed a state application for writ of habeas corpus challenging his conviction, which was denied by the Texas Court of Criminal Appeals on the findings of the trial court without a hearing on October 2, 2013. SHCR at cover. Lopez filed the instant petition on October 5, 2013. Fed. Writ Pet. at 10.

## II.   Statement of Facts

The court of appeals summarized the evidence presented as follows:

On the evening of May 11, 2004, [Lopez], Luis Carlos Mares, and Ramirez, who was holding her three-month-old daughter in her lap, were traveling through Zapata County in a red Ford Mustang. Mares was driving the vehicle, [Lopez] rode in the front passenger seat, and Ramirez and her daughter sat in the back seat behind the driver. Two Zapata County sheriff's deputies observed the Mustang speeding and attempted to pull the vehicle over. The Mustang sped away from the deputies and headed north toward Webb County with the Zapata County deputies in pursuit. Two Webb County Sheriff's deputies, Esteban Paez, Jr. and Francisco Fuentes, took up the pursuit when the Mustang entered Webb County.

A high-speed chase ensued, during which the deputies from both Zapata and Webb Counties claimed shots were fired at them from the driver's side of the Mustang. When Deputy Fuentes attempted to pass the Mustang on the left, shots were fired directly at him, causing his vehicle to veer off the road. The Mustang eventually slowed down and stopped, and Mares and [Lopez] abandoned the vehicle on foot. Mares was apprehended the next day. He pleaded guilty to attempted capital murder of a police officer, Deputy Fuentes, and was sentenced to sixty years' confinement.

[Lopez] was not immediately apprehended. On February 17, 2006, he was convicted in Hidalgo County for aggravated

3

kidnapping, which took place after he fled the car chase, and was assessed fifteen years' confinement. He was subsequently charged and convicted in this case after beginning to serve his term for the Hidalgo offense. At [Lopez]'s trial, Mares testified he did not shoot at the deputies and it was [Lopez] who was the shooter.

Ramirez did not flee when the chase ended, and the deputies found her in the back seat of the Mustang, still holding her daughter. Ramirez was arrested for evading arrest and spent only a few days in county jail. At [Lopez]'s trial, she testified that during the chase, she moved so that [Lopez] could collapse the back seat of the Mustang and reach into the trunk, from which he retrieved a duffel bag containing a large firearm. According to Ramirez, [Lopez] handed the firearm to Mares, who then used it to shoot at the deputies while driving the Mustang.

*Lopez v. State*, 2010 WL 4008370, at *3–4.

## RECORDS

Records of Lopez's trial, direct appeal, and state habeas proceedings have previously been filed with the Court.

## LIMITATIONS/SUCCESSIVE PETITION

The Director believes the petition is not barred by limitations, 28 U.S.C. § 2244(d), or subject to the successive petition bar, 28 U.S.C. § 2244(b).

## MOTION FOR SUMMARY JUDGMENT

A party moving for summary judgment bears the burden of informing the Court of the basis for the motion and identifying pleadings and other record evidence demonstrating the absence of any genuine issues of material fact. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 191 (5th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party makes the required showing, then the burden shifts to the nonmoving party

4

to show summary judgment is not appropriate. *Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). However, while summary judgment rules apply with equal force in a federal habeas proceedings, the rule only applies to the extent that it does not conflict with the rules governing habeas review. "Therefore, § 2254(e)(1)–which mandates that findings of fact made by a state court are 'presumed to be correct'–overrides the ordinary rule that, in summary judgment proceedings, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless . . . [the petitioner] can 'rebut [ ] the presumption of correctness by clear and convincing evidence' as to the state court findings of fact, they must be accepted as correct." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

## I.    Standard of Review.

Lopez's petition is governed by the standard of review provided by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254; *Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding AEDPA only applies to those noncapital habeas corpus cases filed after its effective date of April 24, 1996). Under 28 U.S.C. § 2254(d), a federal court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the relevant constitutional claim by the state court, (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court; or (2) "'involved an unreasonable application of'" clearly established Supreme Court precedent; or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (quoting *(Terry) Williams v.*

*Taylor*, 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d). Review of a state court's decision "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–99 (2011).

The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *Williams*, 529 U.S. at 405–06. And a "run-of-the-mill" state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *Williams*, 529 U.S. at 406. To this end, a state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. And in order to determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . *could have supported*, the state court's decision; and then it must ask *whether it is possible fairminded jurists could disagree that those arguments* or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S. Ct. at 786 (emphasis added). Indeed, this is the "only question that matters under § 2254(d)(1)." *Id.*

Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the

correctness of the state court's decision. *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) (federal habeas relief is only merited where the state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). Moreover, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Alvarado*, 541 U.S. at 664. This is particularly true when reviewing a state court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), which when analyzed in conjunction with § 2254(d), creates a difficult to surmount, "doubly" deferential assumption in favor of the state court denial. *Richter*, 131 S. Ct. at 786.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility fairminded jurists could disagree* that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against *extreme malfunctions* in the state criminal justice systems," *not a substitute for ordinary error correction through appeal*.

*Id.* (emphasis added) (internal citations omitted).

7

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (". . . we review only the state court's decision, not its reasoning or written opinion . . . ."). Indeed, state courts are presumed to know and follow the law. *Visciotti*, 537 U.S. at 24. And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's relitigation bar nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Richter*, 131 S. Ct. at 786.

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *Williams*, 529 U.S. at 381. Stated differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was *an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*.

*Richter*, 131 S. Ct. at 786–87 (emphasis added). And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of the Supreme Court "before it can apply to the facts at hand . . ." because such a

8

process suggests the proposed rule is not clearly established. *Alvarado*, 541 U.S. at 666.

AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Moreover, Judge Ender was ideally suited to make the credibility determinations necessary to resolve Petitioner's habeas claims as she was also the trial judge.

> [W]hen a state trial judge is also the judge hearing the state habeas claim, that judge is in an optimal position to assess the credibility of the affidavits. This true because the state judge had the benefit of observing the witnesses and attorneys and hearing testimony at trial. The state trial judge could make credibility determinations based on the demeanor of the witnesses he heard at trial, without holding a separate hearing to take live testimony from the witnesses.

*Baldree v. Johnson*, 99 F.3d 659, 663 (5th Cir. 1996) (citing *Buxton v. Collins*, 879 F.2d 140, 146 (5th Cir. 1989)). Thus, because the trial court had the opportunity for personal observation of defense counsel, the fact–finding procedure employed in Petitioner's case was more than sufficient to entitle the state courts' findings to the presumption of correctness.

And except for the narrow exceptions contained in § 2254(e)(2), the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court. Because a federal habeas court

is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner. 28 U.S.C. § 2254(d)(2).

Finally, an evidentiary hearing is precluded unless (1) a petitioner's claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) the petitioner establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000). For example, a petitioner who does not present controverted, previously unresolved factual issues to the state court is sufficient to constitute "failure" under the plain meaning of § 2254(e)(2). *Id.* at 433. However, § 2254(e)(2) has "force [only] where § 2254(d)(1) does not bar federal habeas relief." *Pinholster*, 131 S. Ct. at 1401. Accordingly, even if a petitioner can leap the § 2254(e)(2) hurdle, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.* at 1400. And whatever discretion remains after *Pinholster* to hold an evidentiary hearing, it still remains appropriate to deny such a hearing if sufficient facts exist to make an informed decision on the merits. *Schriro v. Landrigan*, 550 U.S. 465, 474–75 (2007).

## II.   Lopez's Sufficiency of the Evidence Claim is Unexhausted and Procedurally Defaulted.

Lopez alleges that there the evidence is legally insufficient to support his conviction because the State failed to prove the victim was a peace officer. Fed. Writ Pet. 6. However, this ground was not raised in Lopez's direct appeal, despite being raised in a PDR to the Texas Court of Criminal Appeals. Consequently, this claim is procedurally barred from federal habeas corpus review. *See Myers v. Collins*, 919 F.2d 1074, 1075 (5th Cir. 1990) ("*Castille v. Peoples* held that raising a claim for the first and only time in a petition for discretionary review does not satisfy the exhaustion requirements of 28 U.S.C. § 2254). This claim should be dismissed with prejudice as procedurally defaulted.

It is well-settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman*, 501 U.S. at 729; *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). Where a state court has explicitly relied on a procedural bar, a state prisoner may not obtain federal habeas corpus relief absent a showing of cause for the default and actual prejudice that is attributable to the default, or that the federal court's failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. A miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted. *Sawyer v. Whitley*, 505 U.S. 333, 339–40 (1992); *Smith v. Dixon*, 14 F.3d 956, 974 (5th Cir. 1994).

It has long been the case in Texas that sufficiency of the evidence is not cognizable in a post-conviction writ of habeas corpus. *Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981); *Ex parte Williams*, 703 S.W.2d 674, 677 (Tex. Crim. App. 1986); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1988) (en banc); *Ex parte Ash*, 514 S.W.2d 762, 763 (Tex. Crim. App. 1974). The Fifth Circuit also recognized this state procedural bar when it held that "[a]lthough the Court of Criminal Appeal's denial of habeas relief stated no reasons, that court, as we have held, has long held that the sufficiency of the evidence may only be raised on direct appeal, and may not be raised on state habeas." *See West v. Johnson*, 92 F.3d 1385, 1398, n.18 (5th Cir. 1996); *see also Ex parte Grigsby*, 137 S.W.3d 673 (Tex. Crim. App. 2004) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) for the proposition that a "denial" of a state writ without a written order, challenging the sufficiency of the evidence, is a decision by the Texas Court of Criminal Appeals the sufficiency-of-evidence claims are not cognizable on a state writ); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994) (recognizing that under Texas law a claim regarding sufficiency of the evidence may be raised on direct appeal but not in a habeas corpus proceeding).

Although Lopez raised his legal sufficiency of the evidence claim in his PDR to the Texas Court of Criminal Appeals, raising a claim for the first time in a PDR where it was not raised on direct review does not satisfy the exhaustion requirements of 28 U.S.C. § 2254. *See Myers*, 919 F.2d at 1075 (citing *Castille v. Peoples*, 489 U.S. 346 (1989)). Further, his state application for writ of habeas of corpus was denied without written order. SHCR at cover.

While the trial court did not expressly apply a procedural bar to Lopez's claims, under *Grigsby*, the denial of Lopez's state application by the Texas Court of Criminal Appeals was a decision by that Court that Lopez's legal sufficiency-of-evidence claim is not cognizable in state habeas proceedings. Because the denial of Lopez's claims was based upon an adequate and independent state procedural rule, his claim is procedurally barred unless he can demonstrate cause and prejudice or a miscarriage of justice. *Coleman*, 501 U.S. at 750. Lopez has failed to show cause and prejudice or that he is actually innocent of the crimes for which he was convicted. Thus, his allegations are procedurally barred from federal habeas corpus review and should be dismissed with prejudice.

## III.   Lopez Received Effective Assistance of Trial Counsel.

Lopez alleges that his trial counsel was ineffective in five instances. Fed. Writ Pet. at 6. These claims are conclusory, without merit, and should be dismissed with prejudice.

### A.    Standard of Review

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the assistance of counsel. U.S. Constitution Amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14. (1970) (emphasis added). The proper standard for evaluating the effectiveness of counsel is reasonable performance under prevailing professional norms. *Strickland*, 466 U.S. at 668.

13

To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687; *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). The Supreme Court has admonished that judicial scrutiny of counsel's performance "must be highly deferential," with every effort made to avoid "the distorting effect of hindsight," and instead "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[S]econd-guessing is not the test for ineffective assistance of counsel." *King v. Lynaugh*, 868 F.2d 1400, 1405 (5th Cir. 1989). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Strickland*, 466 U.S. at 688–89.

In *Richter* the Supreme Court described the stark limits imposed on the federal courts when reviewing a state court's Strickland determination:

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. *Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge*. It is all too tempting to second-guess counsel's assistance after conviction or adverse

sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Richter*, 131 S. Ct. at 788 (emphasis added) (internal quotations and citations omitted). The Fifth Circuit has further described the manner in which a federal court is to review a state court's *Strickland* determination under AEDPA:

It bears repeating that the test for federal habeas purposes is *not* whether [petitioner] *made* that showing. Instead, the test is whether the *state court's decision*–that [petitioner] did *not* make the *Strickland* showing–was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim. Of course, in reaching our decision, we must consider the underlying *Strickland* standards.

*Schaetzle*, 343 F.3d at 444 (emphasis added).

Generally, the burden of proof in a habeas corpus proceeding attacking the effectiveness of trial counsel is upon the petitioner, who must demonstrate that ineffectiveness by a preponderance of the evidence.

*Jernigan*, 980 F.2d at 296. A petitioner's failure to establish either prong of *Strickland* necessarily requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 687; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

*Strickland*'s first prong requires a petitioner to establish that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. The courts will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir.1992) (a reviewing court must be highly deferential to the trial attorney's conduct and presume that the assistance was reasonably effective).

Furthermore, there is a strong presumption that counsel's strategic decisions cannot amount to ineffectiveness: "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690. So too, trial counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its prospects for success at trial." *Moreno v. Estelle*, 717 F.2d 171, 177 (5th Cir. 1983).

16

**B.     Lopez Fails To Meet His Burden To Prove His Trial Counsel Was Ineffective.**

Lopez alleges that his trial counsel was ineffective for: (1) failing to file pretrial motions; (2) failing to object to the introduction of extraneous offenses; (3) failing to request a limiting instruction; (4) failing to call Lopez as a witness and preventing him from testifying; and (5) failing to object to the jury charge. Fed. Writ Pet. at 6. Because Lopez fails to provide any factual or legal support for his claims, they should be dismissed with prejudice as conclusory.

First and most importantly, Lopez has completely failed in meeting the burden of proof necessary to overcome the relitigation bar and be granted relief under AEDPA. The Texas Court of Criminal Appeals refused Lopez relief on these allegations. SHCR at cover, 141–45. To overcome AEDPA's relitigation bar, Lopez must show that this decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Lopez has merely summarized the same allegations from his state application for writ of habeas corpus in the instant petition without attempting to show an unreasonable application of federal law as determined by the Supreme Court. This is a mandatory predicate that cannot be ignored and must be satisfied in order to warrant relief. As such, because Lopez has failed to meet his burden of proof and overcome the relitigation bar, this court must deny relief.

In any event, although Lopez has failed to meet his burden of proof under AEDPA, his allegations do not entitle him to relief. Under Rule 2(c) of

the Rules Governing Section 2254 cases, a petitioner is required to plead facts in support of his claims. Lopez fails to do so here. Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103, 104 (5th Cir. 1971)). A mere conclusory allegation does not raise a constitutional issue in a habeas proceeding. *Id.* at 1012 (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982)). A conclusory allegation does not state a claim for federal habeas corpus relief and is subject to summary dismissal. *See Koch v. Puckett*, 907 F.2d 524, 529 (5th Cir. 1990). Lopez provides only his own conclusory statements as proof that he is entitled to relief. He fails to meet his burden of proof under AEDPA, and his claims should be dismissed with prejudice.

Moreover, Lopez has not overcome the presumption that the "challenged action 'might be considered sound trial strategy,'" *Strickland*, 466 U.S. at 689; thus, he cannot satisfy his burden of proof. Reasonable strategic decisions can never be a basis for constitutionally ineffective assistance of counsel. *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) ("[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.") (citations omitted); *see also Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("[g]iven the almost infinite variety of possible trial techniques and tactics available to

18

counsel, this Circuit [Fifth Circuit] will not second guess legitimate strategic choices."). Lopez has failed to show he is entitled to relief on his claims.

Lopez's trial counsel addressed these claims in an affidavit to the state habeas court:

## FAILURE TO OBJECT TO JURY CHARGE

Trial counsel reviewed the jury charge and objected to the accomplice instruction, the court granted the request. See, R.R. Vol. 8 at p. 229. Moreover, the application paragraph correctly charges the crime of Attempted Capital Murder. In the Charge, the Court defined the crime of attempted capital murder in paragraph one and thereafter the application paragraph was precisely tapered to the facts of this case.

A general verdict of "guilty" to the charge of Attempted Capital Murder was returned by the jury thereby finding all of the elements of the crime having been proven beyond a reasonable doubt to there (sic) satisfaction. Also, see the Reporter's Record Vol. 10 States' Exhibits #5, #6, #7, and #8 which depict the bullet holes in the police unit that Deputy Fuentes was driving at the time of the crime in question.

## NOT CALLING THE DEFENDANT TO TESTIFY

The Defendant's election not to testify was his own choice. He knew that the State would impeach him by the use of his prior convictions. Trial counsel has over 24 years of criminal trial experience and it was part of sound trial strategy for the defendant not to testify if he has prior convictions. Moreover, the following transpired in connection with this issue:

*"Counsel approach: How many witnesses do you have?*
*MR. SOSA: May I just have a brief five-minute talk with my client, Your Honor? To be quite honest, Your Honor, I would love for him to testify. He has a lot of convictions. And let me see if I can talk to - - talk some sense into him because I really need to come up clarify some issues. But he does have those priors."*
(R.R. Vol. 8 p. 228)

## FAILING TO FILE A MOTION IN LIMINE

Pursuant to the Webb County District Attorney Official "Open File Policy" an entire copy of the Prosecutor's file was made available to defense counsel. In tum, defense counsel made a copy of the same and delivered it to Defendant, Gonzalo Artemio Lopez. In connection with this matter, the following colloquially appears of record in open court:

*"THE COURT: And you are also known as Gonzalo Artemio:*

*THE DEFENDANT: That's my first name, Gonzalo Artemio Lopez*

*THE COURT: Okay.*

*MR. SOSA: This is an arraignment.*

*THE COURT: Do you want the indictment read?*

*MR. SOSA: No, Your Honor. At this time we enter a plea of not guilty to each and every allegation contained in the indictment, Your Honor. Request trial by jury and we'll waive the formal reading of the same. **This morning I made copies of the entire file, Your Honor, and I gave it to mv client. He's got everything inside."***

*(R.R. Vol. 4 p.4)*

Since trial counsel and Defendant were aware of all of the evidence that could be used to be against said Defendant there was no need to file any pre-trial motions including a Motion in-Limine.

## FAILURE TO OBJECT TO EXTRANEOUS ACTS EVIDENCE

Applicant states in his Writ that trial counsel did not object to extraneous acts specifically his gang/cartel· affiliations. A review of the Reporter's Record demonstrates that this claim is without merit and wholly untrue. In Vol. 8 pps. 92-104, the trial record confirms, that there was a long and rigorous objection, outside the presence of the jury, to the matters raised by Gonzalo Artemio Lopez herein which said objection was DENIED and OVERRULED.

## FAILED TO REQUEST LIMITING INSTRUCTIONS ON THE JURY CHARGE

> Applicant states in his Writ that trial counsel did not request limiting instructions on the extraneous acts concerning his gang/cartel affiliations. A review of the record shows that trial counsel in fact did request a limiting instruction contemporaneously with the objection which was denied and overruled by the court. See, R.R. Vol. 8 p. 101-102 and p. 103-104.

SHCR 137–39. In rejecting these claims, the state habeas court made a credibility choice in favor of counsel and thus counsel's statements in his affidavit are presumptively correct facts under 28 U.S.C. §2254(e). The presumption of correctness must be rebutted by a presentation of clear and convincing evidence. 28 U.S.C. § 2254(e); *Neal v. Puckett*, 239 F.3d at 696. Lopez fails to rebut the presumption of correctness with clear and convincing evidence, and thus is not entitled to relief on these grounds.

The state court has already considered these claims and declined to provide the relief sought, finding:

> 7. Ground Three: 6th Amendment right to effective assistance of counsel.
>
> a. State's theory of Applicant's involvement in the commission of the offense was as a party.
>
> b. The trial record is clear that defense counsel asked for a recess to discuss with applicant whether he would testify citing on the reco1d that it would be helpful to have him testify to clear up some issues but that applicant had prior convictions that could be used to impeach him.
>
> c. Trial counsel did not call applicant to the stand after the discussion held in private during the recess.
>
> d. Trial counsel in his affidavit states that the applicant chose not to testify of his own accord.

e. The trial record is clear that a copy of the entire district attorney's file was made available to defense counsel at the time of the initial appearance.

f. The trial record is clear that defense counsel did make objections and requested limiting instructions to applicant's gang/cartel affiliations.

g. Applicant's status in the Mexican Mafia was relevant connecting him to the murder.

h. Even if the gang evidence was erroneously admitted, counsel would not have been held ineffective if the gang membership evidence is overshadowed by other evidence that connects Applicant to the crime.

i. The Fourth Court of Appeals noted in Appellant's case at Lopez, 2010 Tex. App. LEXIS 8226 that there is sufficient evidence in the record that applicant participated in the commission of the offense citing the testimony of the witness, "Ramirez testified that appellant retrieved the firearm from the trunk of the car and handed it to Mares, who then shot at the deputies. . ."

j. Applicant tails to show how trial counsel's performance fell below an objective standard of reasonableness and that but for the alleged counsel's unprofessional errors, the result would have been different.

SHCR at 144–45.

Lopez has not shown that the state court's decision was an unreasonable application of clearly existing federal law as established by the United States Supreme Court. Lopez also has not shown that "that the state court's ruling on the claim being presented in federal court [is] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,

22

131 S. Ct. at 786–87. His claims should be dismissed with prejudice.

## IV. Lopez Received Effective Assistance of Appellate Counsel.

Lopez alleges his appellate counsel was ineffective for failing to raise a legal sufficiency of the evidence ground on appeal. Fed. Writ. Pet. at 7. Lopez fails to meet his burden to prove that his appellate counsel was ineffective, and his claims should be dismissed with prejudice.

The *Strickland* standard set forth above applies to claims of appellate counsel error. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). In considering the deficient performance prong, an attorney's decision not to pursue a certain claim on appeal after considering the claim and believing it to be without merit falls within the "wide range of professionally competent assistance" demanded by Strickland. *Smith v. Murray*, 477 U.S. 527, 536 (1986). Indeed, the process of "winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)) (internal quotations omitted); *see also Robbins*, 528 U.S. at 288 (noting that notwithstanding *Jones v. Barnes*, "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."); *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) ("[t]he Constitution does not require appellate counsel to raise every non–frivolous ground that might be pressed upon appeal"); *U.S. v. Williamson*, 183 F.3d 458, 462–63, n.7 (5th Cir. 1999) (holding that "[s]olid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's

attention" by appellate counsel; however, because "factual differences will make authority easily distinguishable, whether persuasively or not . . . it is not necessarily providing ineffective assistance of counsel to fail to construct an argument that may or may not succeed.").

Prejudice in the context of appellate counsel error requires the petitioner to demonstrate a reasonable probability that he would have prevailed on appeal, *Robbins*, 528 U.S. at 285–86, and the prejudice inquiry is determined under the current state of the law, as opposed to the state of law in effect at the time of the underlying state court direct appeal. *Briseno v. Cockrell*, 274 F.3d 204, 211 (5th Cir. 2001); *Westley v. Johnson*, 83 F.3d 714, 723 (5th Cir. 1996).

Here, Lopez alleges that his appellate counsel should have raised a legal sufficiency of the evidence claim on direct appeal. Fed. Writ Pet. at 7. However, the state habeas courts' implicit rejection of Lopez's separate and substantive claims similarly compel rejection of this claim of attorney error. SHCR 142–43; *see Vega v. Johnson*, 149 F.3d 354, 362 (5th Cir. 1998) (". . . given the Court of Criminal Appeals' finding that the estoppel issue was without merit, Vega's counsel could hardly have committed an egregious error in failing to make the argument before the trial court."); *Cantu v. Collins*, 967 F.2d 1006, 1017 (5th Cir. 1992) (holding that where issues petitioner faults appellate counsel for failing to raise on direct appeal were rejected by state and federal habeas courts, claim of appellate attorney error was "frivolous").

The state court has already considered and rejected this claim, finding:

5. Ground One: 6th and 14th Amendment due process violations. The State failed to present evidence on an essential element of the offense.

a. There was sufficient evidence presented at trial to support the fact that the victim was a peace officer.

b. Applicant admits in his application that there was testimony that the victim was a sheriff's deputy.

c. There was communication between Applicant and appellate counsel to explain why appellate counsel was not raising the "no evidence" issue because appellate counsel deemed it frivolous given there was testimony by a number of witnesses establishing by inference that the victim was a deputy sheriff.

d. Applicant has failed to show that counsel's performance fell below an objective standard of reasonableness and that but for the alleged counsel's unprofessional errors, the result would have been different.

e. There is a strong presumption that the actions of counsel fell within the wide range of reasonable professional behavior and discretion.

f. Applicant has not shown how the result would have been different but for appellate counsel's unprofessional errors.

6. Ground Two: 6th and 14th Amendment right to effective assistance of counsel on appeal.

a. There was sufficient evidence presented at trial to support the fact that the victim was a peace officer.

b. Applicant admits that there was testimony that the victim was a sheriff's deputy.

c. Appellate counsel argued legal insufficiency.

d. There was communication between Applicant and appellate counsel to explain why appellate counsel was not raising "no evidence" issue because appellate counsel deemed it frivolous given there was testimony by a number of witnesses establishing by inference that the victim was a deputy sheriff.

e. Appellate counsel also explained in a letter to Applicant that although there were many references to Applicant's gang membership and his purpose of his trip, they were held outside the hearing of the jury.

f. Appellate counsel also explained in a letter to Applicant that there was only one reference in front of the jury and that was in the context of being a former member.

g. Appellate counsel also explained that reference was not strong enough to raise a point of error because errors in the admission of evidence a.re considered under a lenient standard and are very rarely the basis of reversal.

h. Applicant has failed to establish a claim of ineffective assistance of counsel.

i. Applicant has failed to show that counsel's performance: fell below an objective standard of reasonableness and that but for the alleged counsel's unprofessional errors, the resu1t would have been different.

j. There is a strong presumption that the actions of counsel fell within the wide range of reasonable professional behavior and discretion.

k. Applicant his not shown how the result would have been different but for appellate counsel's unprofessional errors.

SHCR 142–43.

Lopez has not shown that the state court's decision regarding his claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor has he

shown that the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Further, the state habeas court's rejection of this claim means Lopez cannot show prejudice. *See Schaetzle*, 343 F.3d at 443–44. Therefore, Lopez's claim does not merit federal habeas corpus relief and should be dismissed with prejudice.

## CONCLUSION

The Director respectfully requests that the petition for writ of habeas corpus be denied and dismissed with prejudice, and that no certificate of appealability issue.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Melissa L. Hargis
MELISSA L. HARGIS*
*Lead Counsel              Assistant Attorney General
State Bar No. 24055766
Southern District No. 685892

P. O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 936–1400
Facsimile No. (512) 936–1280

ATTORNEYS FOR RESPONDENT

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the foregoing pleading was served by placing same in the United States Mail, postage prepaid, on this the 12th day of February, 2014, addressed to:

Gonzalo Artemio Lopez
TDCJ No. 1349706
Ellis Unit
1697 FM 980
Huntsville, Texas 77343

 s/ Melissa L. Hargis
MELISSA L. HARGIS
Assistant Attorney General